1   KAMALA D. HARRIS, State Bar No. 146672
    Attorney General of California
2   ALBERTO L. GONZALEZ, State Bar No. 117605
    Supervising Deputy Attorney General
3   CATHERINE WOODBRIDGE GUESS, State Bar No.
    186186
4   Deputy Attorney General
    1300 I Street, Suite 125
5   P.O. Box 944255
    Sacramento, CA 94244-2550
6   Telephone: (916) 445-8216
    Fax: (916) 322-8288
7   E-mail: Catherine.Woodbridge@doj.ca.gov
    *Attorneys for Defendant Kimberly Granger*

8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE EASTERN DISTRICT OF CALIFORNIA

11                      FRESNO DIVISION

12

13

| **SCOTT R. JAMES,** | 1:13-CV-0983 AWI SKO |
|---|---|
| Plaintiff, | **REQUEST FOR JUDICIAL NOTICE** |
| **v.** | Date: October 28, 2013 |
| | Time: 1:30 p.m. |
| **KIMBERLY GRANGER,** | Courtroom: 2 (8th Floor) |
| | Judge: Anthony W. Ishii (AWI) |
| | Trial Date: TBD |
| Defendant. | Action Filed: June 26, 2013 |

19

20

21         Pursuant to Federal Rules of Evidence 201(b), Defendant Kimberly Granger requests that

22   the Court take judicial notice of the following:

23         1.    California Fifth District Court of Appeal, Case No. F065003, *Scott R. James v. State*

24   *of California, et al.,* Opinion filed September 24, 2013. Attached as Exhibit 1.

25   / / /

26   / / /

27   / / /

28   / / /

                                        1

1    Dated:  September 26, 2013                          Respectfully submitted,

2                                                        KAMALA D. HARRIS
                                                         Attorney General of California
3                                                        ALBERTO L. GONZALEZ
                                                         Supervising Deputy Attorney General
4

5                                                        *s/ Catherine Woodbridge Guess*

6                                                        CATHERINE WOODBRIDGE GUESS
7                                                        Deputy Attorney General
                                                         *Attorneys for Defendant Kimberly Granger*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   SA2013309877
     31791480.doc
28

2

Request for Judicial Notice  (1:13-CV-0983 AWI SKO)

# _Scott R. James v. Kimberly Granger_

## USDC Eastern District

## Case No. 1:13-cv-0983 AWI SKO

# <u>EXHIBIT 1</u>

Filed 9/24/13

## CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SCOTT R. JAMES,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>STATE OF CALIFORNIA et al.,<br><br>　　Defendants and Appellants. | F065003<br><br>(Super. Ct. No. VCU241117)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County. Lloyd L. Hicks, Judge.

Kamala D. Harris, Attorney General, Douglas J. Woods, Assistant Attorney General, Peter A. Krause, Kimberly J. Granger and Benjamin M. Glickman, Deputy Attorneys General, for Defendants and Appellants.

Dooley, Herr, Pedersen & Berglund Bailey, Leonard C. Herr and Ron Statler for Plaintiff and Respondent.

-ooOoo-

1.

Title 18 United States Code section 922(g)(9)[1] prohibits the possession of firearms by those convicted of "a misdemeanor crime of domestic violence." Section 921(a)(33)(A)(ii) defines "misdemeanor crime of domestic violence," in pertinent part, as an offense that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon ...." Penal Code section 242 defines battery as "any willful and unlawful use of force or violence upon the person of another." We conclude that a Penal Code section 242 misdemeanor conviction has, as an element, the use of physical force for purposes of the prohibition dictated by section 922(g)(9). Accordingly we reverse the trial court's contrary finding.

## BACKGROUND AND PROCEDURAL HISTORY

The federal Gun Control Act of 1968 (§ 921 et seq; (the Act)) has long prohibited possession of a firearm by any person convicted of a felony. (*United States v. Hayes* (2009) 555 U.S. 415, 418.) In 1996, Congress amended the Act to extend the prohibition to include any person "who has been convicted in any court of a misdemeanor crime of domestic violence." (§ 922(g)(9); *United States v. Hayes, supra*, at p. 418.) As pertinent here, the Act defines "misdemeanor crime of domestic violence" (MCDV) as an offense that (1) is a misdemeanor under state law, (2) "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon," and (3) is committed by the victim's current or former spouse. (§ 921(a)(33)(A).)

In October 1996, Scott R. James was arrested and charged with inflicting corporal injury on his (then) wife in violation of Penal Code section 273.5. Approximately two months later, James pled nolo contendere to battery, a misdemeanor violation of Penal Code section 242, and was placed on two years' probation.[2] In 2008, James applied to be

---

[1]    Further undesignated statutory references are to title 18 of the United States Code.

[2]    The parties agree no court records exist concerning the charge or the factual basis for the plea although James expressly "does not dispute that he was in a domestic relationship with the person he was accused of battering."

2.

a reserve deputy sheriff. A background check was performed and James learned the State of California considered his 1996 conviction to be an MCDV. In 2011, James attempted to purchase a firearm, but his application was denied on the same ground: he had been convicted of an MCDV.

James filed a petition for writ of mandamus in superior court seeking an order directing defendants, State of California, Office of the Attorney General of the State of California, and Kamala Harris, in her official capacity as Attorney General of the State of California (collectively, the State), to review the records of his conviction and determine whether any facts admitted in his plea included a domestic relationship with the victim, and, if not, to order the State to recognize James as a person not convicted of an MCDV. By the time of the hearing on the petition, however, the sole issue before the trial court was whether a conviction for violation of Penal Code section 242 was a valid categorical predicate offense for an MCDV.

Relying principally on *U.S. v. Belless* (9th Cir. 2003) 338 F.3d 1063 (*Belless*) and CALCRIM No. 960 (Simple Battery), the trial court concluded it was not, saying the federal statute (§ 921(a)(33)(A)(ii)) requires "'the violent use of force against the body of another'" — physical force that "'is not de minim[i]s'" — while the state battery statute (Pen. Code, § 242) can be violated by "'the slightest touching.'" (Underscoring omitted.) The trial court found the State "failed to follow the mandate of the law by improperly construing a §242 P.C. conviction as categorically constituting a predicate offense under federal law for the purpose of finding a[n] MCDV." The trial court issued a writ of mandate and prohibition directing the State "to follow California law regarding the elements of Penal Code section 242 in evaluating Section 242 as a predicate offense, and not to act based on the conclusion that Section 242 is a categorical predicate offense under a Federal law finding of misdemeanor crime of domestic violence (MCDV)."

The State appealed, asserting the trial court erred.

3.

## DISCUSSION

James filed his petition in the superior court pursuant to Code of Civil Procedure section 1085. A writ of mandate lies under that statute "to compel the performance of a legal duty imposed on a government official. [Citation.]" (*Environmental Protection Information Center, Inc. v. Maxxam Corp.* (1992) 4 Cal.App.4th 1373, 1380.) A writ may be issued against a public body. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 593.) "To obtain writ relief under Code of Civil Procedure section 1085, the petitioner must show there is no other plain, speedy, and adequate remedy; the respondent has a clear, present, and ministerial duty to act in a particular way; and the petitioner has a clear, present and beneficial right to performance of that duty. [Citation.] A ministerial duty is one that is required to be performed in a prescribed manner under the mandate of legal authority without the exercise of discretion or judgment." (*Ibid.*)

The standard of review is settled. "In reviewing a judgment granting a writ of mandate, we apply the substantial evidence standard of review to the court's factual findings, but independently review its findings on legal issues. [Citation.]" (*City of San Diego v. San Diego City Employees' Retirement System* (2010) 186 Cal.App.4th 69, 78.) "Where, as here, the facts are undisputed and the issue involves statutory interpretation, we exercise our independent judgment and review the matter de novo. [Citation.]" (*Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 129.)

The issue in this case is whether battery, as proscribed by Penal Code section 242, "has, as an element, the use or attempted use of physical force," so as to render it an MCDV within the meaning of section 921(a)(33)(A)(ii).[3]  In making this determination,

---

[3]  Although the existence of a domestic relationship must be established beyond a reasonable doubt in a firearms possession prosecution under the Act, it "need not be a defining element of the predicate offense." (*United States v. Hayes, supra,* 555 U.S. at p. 418.)

4.

we employ the categorical approach established in *Taylor v. United States* (1990) 495 U.S. 575, 602. Under that approach, "when a statute dictates that the predicate offense have enumerated elements, [the] court must 'look only to the predicate offense rather than to the defendant's underlying acts to determine whether the required elements are present.' [Citation.]" (*U.S. v. Howell* (8th Cir. 2008) 531 F.3d 621, 622.) In other words, "courts determine the elements to which a defendant pleaded guilty by analyzing the statutory definition of the offense, not the defendant's underlying conduct. [Citations.]" (*U.S. v. Bonilla-Mungia* (5th Cir. 2005) 422 F.3d 316, 320.)[4]

Penal Code section 242 defines a battery as "any willful and unlawful use of force or violence upon the person of another." "[W]hen applied to the intent with which an act is done or omitted, ['willful'] implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." (*Id.*, § 7, subd. 1.)

""It has long been established, both in tort and criminal law, that 'the least touching' may constitute battery. In other words, *force* against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark." [Citation.] [¶] "The 'violent injury' here mentioned is not synonymous with 'bodily harm,' but includes any wrongful act committed by means of physical force against the person of another, even although only the feelings of such person are injured by the act." [Citation.]' [Citation.]" (*People v. Colantuono* (1994) 7

---

4       Only if the prior conviction is for violating a statute containing alternative elements may the so-called modified categorical approach be used. (*Descamps v. United States* (2013) 570 U.S. ___ [133 S.Ct. 2276, 2281-2282, 2284-2285].) Under that approach, "courts may look beyond the statute to certain 'conclusive records made or used in adjudicating guilt' in order to determine which particular statutory alternative applies to the defendant's conviction. [Citation.]" (*U.S. v. Bonilla-Mungia, supra,* 422 F.3d at p. 320.) Even under this approach, the record materials may not be used "to determine 'what the defendant and state judge must have understood as the factual basis of the prior plea' ...." (*Descamps v. United States, supra,* at p. 2284.)

Cal.4th 206, 214, fn. 4, quoting *People v. Rocha* (1971) 3 Cal.3d 893, 899-900, fn. 12.)
Thus, "[a]ny harmful or offensive touching constitutes an unlawful use of force or
violence" for purposes of Penal Code section 242. (*People v. Martinez* (1970) 3
Cal.App.3d 886, 889; accord, *People v. Pinholster* (1992) 1 Cal.4th 865, 961,
disapproved on another ground in *People v. Williams* (2010) 49 Cal.4th 405, 459.) "Even
a slight touching may constitute a battery, 'if it is done in a rude or angry way.'
[Citation.]" (*People v. Hernandez* (2011) 200 Cal.App.4th 1000, 1006, quoting
CALCRIM No. 960.)

The State contends that, because Penal Code section 242 "specifically identifies
'violence' as an element of" battery under California law, said crime "necessarily
includes the level of force required for an MCDV." Although the definition of "use of
physical force" in the federal statute is a question of federal law, federal courts are bound
by the California Supreme Court's "interpretation of state law, including its
determination of the elements of" Penal Code section 242. (*Johnson v. United States*
(2010) 559 U.S. 133, 138 (*Johnson*).) Thus, a determination of the categorical reach of a
state crime takes into consideration not only the state statute's language, but also the
interpretation of that language in state judicial opinions. (See, e.g., *Johnson*, *supra*, at
p. 138; *James v. United States* (2007) 550 U.S. 192, 202-203; *Ortega-Mendez v.
Gonzales* (9th Cir. 2006) 450 F.3d 1010, 1016.) Accordingly, we cannot ignore the long-
settled judicial interpretation of the elements of Penal Code section 242 in favor of
reliance on the single statutory word "violence," as the State would have us do.[5]

The question, then, is whether any harmful or offensive touching, constituting as it
does an element of battery under Penal Code section 242, is sufficient to constitute the
"use of physical force" required under section 921(a)(33)(A)(ii) to render James's prior

---

[5]     Accordingly, we reject the State's argument that the trial court improperly
considered CALCRIM No. 960.

battery conviction an MCDV. The Act does not contain a definition of "physical force." Accordingly, we must determine whether Congress employed that term in such a manner as to require a particular quantum of force.

"A court's fundamental role in construing a statute is to ascertain the Legislature's intent, in order to effectuate the statute's purpose. [Citation.] Courts look first to the language of the statute, according the words their usual, ordinary meaning. [Citations.] The language is construed in the context of the statute as a whole and the overall statutory scheme, and courts give significance to every word, phrase, sentence and part of an act in pursuing the legislative purpose. [Citation.] If the language is clear and unambiguous, courts follow the plain meaning of the statute. [Citation.] [¶] The 'plain meaning' rule, however, does not prohibit courts from determining whether the literal meaning of a statute comports with the statute's purpose as reflected by its express language. [Citation.] Courts should not give language of a statute its literal meaning if doing so would result in absurd consequences unintended by the Legislature. [Citation.] In that case, the intent of the law prevails over the letter, and the letter, if possible, will be read so as to conform to the spirit of the act. [Citation.]" (*In re David S.* (2005) 133 Cal.App.4th 1160, 1164.) The same principles apply when construing a federal statute and ascertaining Congress's intent. (See, e.g., *Leocal v. Ashcroft* (2004) 543 U.S. 1, 9; *U.S. v. Castleman* (6th Cir. 2012) 695 F.3d 582, 585-586.)

The Act "reflects a ... concern with keeping firearms out of the hands of categories of potentially irresponsible persons, including convicted felons. Its broadly stated principal purpose was 'to make it possible to keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.' [Citations.]" (*Barrett v. United States* (1976) 423 U.S. 212, 220.) The 1996 amendment, often referred to as the Lautenberg Amendment, "sought to 'close [the] dangerous loophole'" that Congress recognized arose from the fact "[e]xisting felon-in-possession laws ... were not keeping firearms out of the hands of domestic abusers,

7.

because 'many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies.' [Citation.]" (*United States v. Hayes, supra,* 555 U.S. at p. 426.)

The United States Supreme Court has recognized that "[f]irearms and domestic strife are a potentially deadly combination nationwide. [Citations.]" (*United States v. Hayes, supra,* 555 U.S. at p. 427.) In his remarks on the Senate floor urging passage of the amendment bearing his name, Senator Lautenberg stated the amendment "would establish a policy of zero tolerance when it comes to guns and domestic violence." (Remarks of Sen. Lautenberg, 142 Cong. Rec. S10377 (daily ed. Sept. 12, 1996).) While the senator mentioned "wife beat[ing]" and "serious spousal or child abuse" (*ibid.*), nothing in his remarks, or the remarks of his colleagues who spoke in support of the amendment, suggested the proposed "zero tolerance" policy hinged on the quantum of force or violence used against a spouse or other specified victim. As Senator Lautenberg recognized: "The people who commit these crimes often have a history of violence or threatening behavior, and, yet, frequently they are permitted to possess firearms with no legal restrictions. [¶] The statistics and the data are clear. Domestic violence, no matter how it is labeled, leads to more domestic violence, and guns in the hands of convicted wife beaters leads to death." (*Id.,* S10378.)

Although "[t]he remarks of a single Senator are 'not controlling,' [citation]," we may properly take them into consideration. (*United States v. Hayes, supra,* 555 U.S. at p. 429.) We find nothing in the legislative record to suggest Congress intended to ban from firearm possession only those abusers who applied a specific quantum of force against their victims. A zero tolerance policy is not furthered by requiring agencies (and ultimately courts) charged with determining whether a firearm should be in the hands of a batterer to differentiate between, for example, a slap and a punch, or a poke to the chest and a poke in the eye.

8.

Additionally, Congress included, in the definition of an MCDV, a misdemeanor that "has, as an element, the ... *attempted* use of physical force ...." (§ 921(a)(33)(A)(ii), italics added.) This provision means *no touching at all is required.* It would be illogical to bring within the provisions of the Act an unsuccessful *attempt* to apply physical force, while excluding an offensive, nonconsensual touching.

Based on the foregoing, we conclude that James's prior conviction for violating Penal Code section 242 constituted an MCDV under the Act.

Opinions from the First, Eighth, and Eleventh federal circuits support our conclusion. We summarize these opinions in chronological order.

In *U.S. v. Smith* (8th Cir. 1999) 171 F.3d 617 (*Smith*), Smith was convicted, under Iowa's assault statute, of simple misdemeanor assault against the mother of his child. (*Id.* at p. 619.) Smith subsequently claimed, inter alia, that the Iowa statute did not contain the required element of the use or attempted use of physical force. (*Ibid.*) The federal court determined the statute could be violated by commission of an act intended to cause pain or injury to, or intended to result in physical contact that would be insulting or offensive to, another; or an act intended to place another in fear of immediate physical contact that would be painful, injurious, insulting, or offensive. The first prong had, as an element, the use or attempted use of force; the second prong did not. (*Id.* at pp. 620-621.) The court rejected Smith's argument that the first prong did not contain an element of physical force within the meaning of section 921(a)(33)(A)(ii) because it only required physical contact that was merely insulting or offensive: "[S]uch physical contact, by necessity, requires physical force to complete." (*Smith, supra,* 171 F.3d at p. 621, fn. 2.)

In *U.S. v. Nason* (1st Cir. 2001) 269 F.3d 10 (*Nason*), the First Circuit considered Maine's assault statute, which could be violated by intentionally, knowingly, or recklessly causing bodily injury *or* offensive physical contact to another, and whether a conviction under the "'offensive physical contact'" variant could qualify as an MCDV. (*Id.* at pp. 11-12.) The court concluded "Congress intended the federal law to cover all

persons who have been convicted of assaulting domestic partners in circumstances similar to those delineated by both strains of the Maine statute." (*Id.* at p. 12.) The court first examined the federal statute and assumed that, in requiring the use or attempted use of physical force, "Congress knew and adopted the widely accepted legal definitions of meanings associated with the specific words enshrined in the statute. [Citations.]" (*Id.* at p. 16.) It synthesized various definitions of "physical force," and concluded it "may be characterized as power, violence, or pressure directed against another person's body." (*Ibid.*) The court concluded that, so understood, "physical force" has a plain and unambiguous meaning: "Physical force is an elementary concept, readily understood. And from a policy perspective, proscribing gun possession by individuals convicted of misdemeanor crimes characterized by the application of physical force advances Congress's evident purpose — curbing the escalating societal problems associated with domestic violence. [Citation.]" (*Ibid.*)

The *Nason* court found its conclusion bolstered by two additional facts: (1) the Legislature's inclusion of a quantum of force measurement to the section of the amended statute that precedes the section at issue here; and (2) the Legislature's decision to change the language of section 922(g)(9) from "'crimes of violence'" to "use or attempted use of physical force, or the threatened use of a deadly weapon." It explained:

> "The subsection immediately preceding 18 U.S.C. § 922(g)(9) precludes the 'use, attempted use, or threatened use of physical force ... that would reasonably be expected to cause bodily injury.' 18 U.S.C. § 922(g)(8)(C)(ii). This qualifying clause limits the reach of section 922(g)(8) to a specific subset of physical force: physical force that is reasonably expected to generate physical injury. Following the 'settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect,' [citation], the modifying clause in section 922(g)(8) cannot be dismissed as mere surplusage. This means that we must read the unqualified use of the term 'physical force' in section 922(g)(9) as a clear signal of Congress's intent that section 922(g)(9) encompass misdemeanor crimes involving *all* types of physical force, regardless of whether they could reasonably be expected to cause bodily

injury. After all, when Congress inserts limiting language in one section of a statute but abjures that language in another, closely related section, the usual presumption is that Congress acted deliberately and purposefully in the disparate omission. [Citations.]

"The legislative history of section 922(g)(9) further suggests that Congress did not intend to import an injury requirement into section 922(g)(9). On this point, we find particularly instructive the comments of Senator Lautenberg (the statute's principal architect). Discussing section 922(g)(9) on the Senate floor shortly before its passage, Senator Lautenberg observed:

"[T]he revised language includes a new definition of the crimes for which the gun ban will be imposed. Under the original version, these were defined as crimes of violence against certain individuals, essentially family members. Some argued that the term crime of violence was too broad, and could be interpreted to include an act such as cutting up a credit card with a pair of scissors. Although this concern seemed far-fetched to me, I did agree to a new definition of covered crimes that is more precise, and probably broader.

"Under the final agreement, the ban applies to crimes that have, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon. This is an improvement over the earlier version, which did not explicitly include within the ban crimes involving an attempt to use force, or the threatened use of a weapon, if such an attempt or threat did not also involve actual physical violence. [Citation.]" (*Nason, supra,* 269 F.3d at pp. 16-17.)

The court further reasoned that "[a] comparison of the plain meanings of 'crimes of violence' and 'physical force' highlights the consonance between the purpose and effect of the revised language. 'Violence' is essentially a subset of physical force involving injury or risk of harm. [Citations.] The substitution of 'physical force' as the operative mode of aggression element effectively expanded the coverage of section 922(g)(9) to include predicate offenses whose formal statutory definitions contemplated the use of any physical force, regardless of whether that force resulted in bodily injury or risk of harm. [¶] To summarize, the usual and customary meaning of the phrase 'physical force' persuades us that Congress intended section 922(g)(9) to encompass

11.

crimes characterized by the application of *any* physical force. The additional signposts point unerringly in the same direction." (*Nason, supra,* 269 F.3d at pp. 17-18.)

The *Nason* court then examined Maine's assault statute and determined that, as construed by state courts, the "offensive physical contact" prong "entail[ed] 'something less than bodily injury ... but require[d] more than a mere touching of another.'" (*Nason, supra,* 269 F.3d at p. 19.) The federal court concluded: "[C]ontacts of this sort invariably emanate from the application of some quantum of physical force, that is, physical pressure exerted against a victim. [Citation.] Therefore, offensive physical contacts with another person's body categorically involve the use of physical force (and, hence, qualify as misdemeanor crimes of domestic violence under section 922(g)(9) if perpetrated against domestic partners)." (*Id.* at p. 20.)[6]

In *U.S. v. Griffith* (11th Cir. 2006) 455 F.3d 1339 (*Griffith*), Griffith was convicted under Georgia's simple battery statute, which made it a misdemeanor to "'[i]ntentionally make[] physical contact of an insulting or provoking nature with the person of another ....' [Citation.]" (*Id.* at pp. 1340, 1341.) The federal court framed the issue as follows: "If 'physical contact of an insulting or provoking nature,' as described in the Georgia statute, necessarily involves 'physical force,' a conviction in the courts of that state for simple battery is enough to satisfy the requirements of § 922(g)(9); if not, then not." (*Id.* at p. 1341.) Relying primarily on *Nason* and *Smith,* the court reasoned that the plain meaning of "'physical force,'" as used in the federal statute, "is '[p]ower, violence, or pressure directed against a person' 'consisting in a physical act.' [Citations.] As we have noted, the Georgia statute has as an element 'physical contact of an insulting or provoking nature.' [Citation.] A person cannot make physical contact — particularly of

---

[6]     As shown by our previous discussion, Penal Code section 242 is not violated by any and all touchings; rather, the touching — although it can be slight — must be willful and unlawful, i.e., harmful or offensive.

an insulting or provoking nature — with another without exerting some level of physical force. [Citations.] Therefore, under the plain meaning rule, the 'physical contact of an insulting or provoking nature' made illegal by the Georgia battery statute satisfies the 'physical force' requirement of § 921(a)(33)(A)(ii), which is defined into § 921(g)(9)."
(*Griffith, supra,* at p. 1342.)

The First Circuit revisited the issue in *U.S. v. Booker* (1st Cir. 2011) 644 F.3d 12 (*Booker*), which again involved Maine's simple assault statute. (*Id.* at p. 13.) Booker and Wyman both contended their state convictions under that statute did not constitute convictions for an MCDV, because the Maine assault statute could be violated recklessly, knowingly, or intentionally and, they argued, only an intentional offense could qualify as a predicate MCDV. (*Id.* at pp. 16-17.) This argument rested on case law interpreting two statutory provisions that were not part of the Lautenberg Amendment — the definition of "'crime of violence'" under section 16, and the definition of "'violent felony'" under the Armed Career Criminal Act, section 924(e) (the ACCA). The *Booker* court "declined to give determinative weight in [its] construction of § 922(g)(9) and § 921(a)(33)(A) to decisions interpreting similar language in other statutes, including both § 16 and the ACCA. [Citation.] … [Section] 922(g)(9) 'has a distinct, focused, and singular purpose that is not covered by any of the other statutes,' and 'precedent teaches that the case for construing one statute in a manner similar to another is weakest when the two have significant differences.' [Citations.]" (*Booker, supra,* 644 F.3d at p. 19.)

Significantly, the *Booker* court rejected the claim *Nason* was no longer good law, or at least must be reconsidered, in light of the then-recent United States Supreme Court opinion in *Johnson, supra,* 559 U.S. 133. (*Booker, supra,* 644 F.3d at pp. 17-18.) The *Booker* court stated:

> "In *Johnson*, the Supreme Court held that a Florida felony conviction for '[a]ctually and intentionally touch[ing]' did not qualify as a 'violent felony' under the [ACCA], [citation], because it did not necessarily involve the 'use … of physical force against the person of another.' [Citation.] The

13.

Court read the reference to 'physical force,' in the context of the ACCA's definition of 'violent felony,' to mean 'force capable of causing physical pain or injury to another.' [Citation.] Because Florida's highest court had interpreted 'actually and intentionally touching' to be met by '*any* intentional physical contact, "no matter how slight,"' [citations], the Court held that a conviction under the state statute could not categorically qualify as a violent felony.

"[Booker and Wyman] argue that this reasoning repudiates *Nason*'s holding that 'offensive physical contact' involves the 'use of physical force' within the meaning of § 922(g)(9). *However, the Court expressly rejected the suggestion that its analysis in Johnson would have any effect on interpretation of § 922(g)(9), stating:*

"*We have interpreted the phrase 'physical force' only in the context of a statutory definition of 'violent felony.' We do not decide that the phrase has the same meaning in the context of defining a misdemeanor crime of domestic violence.* [Citation.]" (*Booker, supra*, 644 F.3d at p. 18, fn. omitted, italics added.)

Recently, in *U.S. v. Armstrong* (1st Cir. 2013) 706 F.3d 1, the First Circuit declined to reconsider *Nason* and *Booker*, and reaffirmed the reasoning and result reached in those opinions. (*Armstrong, supra*, at pp. 2, 4-6.) Armstrong conceded engaging in offensive physical contact with his wife, but argued that a misdemeanor conviction for that assault could not constitute a predicate offense for a charge under the Act. In response to his claim "that the language and history of the misdemeanor violence prohibition's incorporation into § 922(g)(9) indicates that Congress never intended the proscription to apply to *non-violent* battery convictions which encompass non-violent offensive physical contact at common law," the court stated: "A cursory interpretation of §§ 921(a)(33)(A) and 922(g)(9), in light of *Nason* and *Booker*, clearly indicates otherwise." (*Armstrong, supra*, at p. 5.) "[T]he statute on its face, its legislative history and this court's precedent do not distinguish between 'violent' or 'non-violent' misdemeanor convictions when they involve the kind of conviction at issue here, and in any case, the court fails to see how a conviction for an offensive touching such as the offensive physical contact for which Armstrong was convicted fails to constitute a

predicate offense based on our prior interpretation of § 922(g)(9) predicate offense requirements of 'physical force.'" (*Id.* at p. 6.)

There are cases that support James's position. (E.g., *Shirey v. Los Angeles County Civil Service Com.* (2013) 216 Cal.App.4th 1, 10-14; *U.S. v. Castleman, supra,* 695 F.3d at pp. 586-588; *U.S. v. White* (4th Cir. 2010) 606 F.3d 144, 149-153; *U.S. v. Hays* (10th Cir. 2008) 526 F.3d 674, 677-681; *Belless, supra,* 338 F.3d at pp. 1067-1069.) However, to the extent these cases analogize the phrase "use or attempted use of physical force," as contained in the definition of an MCDV under section 921(a)(33)(A)(ii), to similar phrases used in other, unrelated statutes, they are unpersuasive for the reasons set out in *Nason* and *Booker.*

To the extent the cases supporting James's position follow the Ninth Circuit's reasoning in *Belless, supra,* 338 F.3d 1063, we find them unconvincing.[7]

In *Belless,* the issue was whether Wyoming's battery statute, which made it a misdemeanor to "'unlawfully touch[] another in a rude, insolent or angry manner or intentionally, knowingly or recklessly cause[] bodily injury to another,'" contained the "'use or attempted use of physical force'" element necessary to make it an MCDV. (*Belless, supra,* 338 F.3d at pp. 1064-1065, fn. omitted.) The Ninth Circuit agreed with Belless that the first means by which the statute could be violated — touching in a rude, insolent, or angry manner — did not constitute "'use or attempted use of physical force.'" (*Id.* at p. 1067.) The court reasoned:

---

[7]     Although *Belless* is an opinion from the court that decides appeals from federal courts in California, we are not bound to follow it. "'[T]he decisions of the lower federal courts, although entitled to great weight, are not binding on state courts. "[T]he decisions of the lower federal courts on federal questions are merely persuasive. ... Where lower federal court precedents are divided or lacking, state courts must necessarily make an independent determination of federal law." [Citations.]' [Citation.] Where the federal circuits are in conflict, the authority of the Ninth Circuit ... is entitled to no greater weight than decisions from other circuits. [Citations.]" (*Elliott v. Albright* (1989) 209 Cal.App.3d 1028, 1034.)

"Any touching constitutes 'physical force' in the sense of Newtonian mechanics. Mass is accelerated, and atoms are displaced. Our purpose in this statutory construction exercise, though, is to assign criminal responsibility, not to do physics. As a matter of law, we hold that the physical force to which the federal statute refers is not *de minimis*. The traditional doctrine of *noscitur a sociis*, that 'the meaning of doubtful words may be determined by reference to associated words and phrases,' guides us in our inquiry. [Fn. omitted.] In the federal definition, the associated phrase is 'threatened use of a deadly weapon.' That is a gravely serious threat to apply physical force. By contrast, the Wyoming statute criminalizes conduct that is minimally forcible, though ungentlemanly.

"In 1959, when Vice President Richard Nixon took Soviet Premier Nikita Khrushchev around an American exhibit of an $11,000 American tract house, the Soviet leader fulminated about the foolishness of having different brands of washing machines and the unlikelihood that American workers could afford such a 'Taj Mahal,' as the Soviets called the house. Nixon angrily told Khrushchev just how wrong he was, jabbing the Soviet Premier's chest with his pointed finger as he expostulated with his face inches away. Had Richard Nixon been in Wyoming instead of the Soviet Union, he might have been charged with the same crime as Belless. The ungentlemanly act of hollering in anyone's face, much less a chief of state's, may be characterized as 'insolent,' and pointing a finger at someone, much less touching him with the finger, may fairly be characterized as 'rude,' and both men, though perhaps exaggerating their affect for the crowd,[8] looked 'angry.' It may well be Wyoming's purpose to enable police to arrest people in such confrontations in order to avoid the risk that rude touchings will escalate into violence.

"But the Wyoming law against rude touchings does not meet the requirements for the federal statute that defines the predicate offense for a felony firearm conviction: 'the use or attempted use of physical force, or the threatened use of a deadly weapon.' [Fn. omitted.] That category does not include *mere impolite* behavior. More inclusive battery statutes such as Wyoming's may be drafted to embrace conduct that too often leads to the more serious violence necessary as a predicate for the federal statute, but

---

**8**    In a footnote at this point, the *Belles* court added: "*See* Richard Nixon, *The Memoirs of Richard Nixon*, 208-09 (1978); William Safire, *Before the Fall*, 3-6 (1975). Safire, who set up the exhibit as a press agent for the tract house developer, says both men, after the cameras were turned off, made it clear that they had *enjoyed themselves immensely*." (Italics added.)

they are not limited to it, so cannot supply the necessary predicate. The phrase 'physical force' in the federal definition at 18 U.S.C. § 921(a)(33)(A)(ii) means the violent use of force against the body of another individual." (*Belless, supra,* 338 F.3d at pp. 1067-1068, italics added.)

Leaving aside our strong suspicion that a person being jabbed angrily in the chest by a domestic cohabitant does not "enjoy[ him- or herself] immensely" or find such contact "merely impolite," we find *Belless* unpersuasive because it completely ignores the purpose and history of section 921(a)(33)(A)(ii): to establish a zero tolerance policy for guns and domestic violence. It also fails to take into account the problems and dangers unique to domestic violence. Battery within a domestic relationship is not perpetrated by two evenly matched adversaries who are surrounded by security personnel and other members of an entourage, and who can simply walk away from a confrontation if they so desire. We ourselves have previously recognized, albeit in a different context, "'cohabiting partners are in the high risk category for domestic violence.' [Citation.]" (*People v. Silva* (1994) 27 Cal.App.4th 1160, 1171.) The domestic relationship is "a special relationship for which society demands, and the victim may reasonably expect, stability and safety, and in which the victim, for these reasons among others, may be especially vulnerable. [Citation.]" (*People v. Vega* (1995) 33 Cal.App.4th 706, 710.) As Senator Lautenberg stated when discussing the amendment on the Senate floor, "There is no margin of error when it comes to domestic abuse and guns. A firearm in the hands of an abuser all too often means death. *By their nature, acts of domestic violence are especially dangerous and require special attention.*" (Remarks of Sen. Lautenberg, *supra,* 142 Cong. Rec. S10378 (daily ed. Sept. 12, 1996), italics added; see also *Booker, supra,* 644 F.3d at p. 21.)

We agree with the Eleventh Circuit Court of Appeals's statement in *Griffith*: "Reaching the *Belless* result in this case would alter the scope of § 922(g)(9) by effectively inserting the word 'violent' into the operative definition contained in

17.

§ 921(a)(33)(A)(ii). That modification may be an appealing improvement in some eyes, but we are not licensed to practice statutory remodeling. [Citations.] [¶] The Ninth Circuit in *Belless*, after discussing Newtonian mechanics, said that '[o]ur purpose in this statutory construction exercise, though, is to assign criminal responsibility, not to do physics.' [Citation.] We do not agree that it is the function of courts to assign criminal responsibility. That is the function of Congress. In carrying out the assignment of responsibility that Congress has decided upon, courts should be faithful to the language that it has chosen to express its will." (*Griffith, supra,* 455 F.3d at pp. 1343-1344.)

We conclude a violation of Penal Code section 242 "has, as an element, the use ... of physical force ...." (§ 921(a)(33)(A)(ii).) Accordingly, James's conviction under the state statute is a misdemeanor crime of domestic violence within the meaning of title 18 United States Code section 922(g)(9). The trial court erred in concluding otherwise.

## DISPOSITION

The judgment is reversed. The parties shall bear their own costs on appeal.

_____

DETJEN, J.

I CONCUR:

_____

KANE, J.

18.

GOMES, J., Dissenting.

I respectfully dissent.

I agree with the majority that, in determining whether Penal Code section 242 is categorically a "misdemeanor crime of domestic violence" (MCDV) (18 U.S.C. § 922(g)(9))[1] within the meaning of the federal Gun Control Act (§ 921 et seq.; (the Act)), we must look to both the statute's language and the California courts' interpretation of that language. (*Johnson v. United States* (2010) 559 U.S. 133, 138 (*Johnson*); *Ortega-Mendez v. Gonzalez* (9th Cir. 2006) 450 F.3d 1010, 1016 (*Ortega-Mendez*). I further agree that it is well settled under the judicial interpretation of the elements of Penal Code section 242, the statute can be violated by any harmful or offensive touching, and even a "slight touching may constitute a battery, 'if it is done in a rude or angry way.'" (*People v. Hernandez* (2011) 200 Cal.App.4th 1000, 1006; *People v. Martinez* (1970) 3 Cal.App.3d 886, 889; CALCRIM No. 960 [battery requires proof that the defendant "willfully touched" the victim in a "harmful and offensive manner"; "The slightest touching can be enough to commit a battery if it is done in a rude or angry way . . . The touching does not have to cause pain or injury of any kind."].)

Where I depart from the majority is on the resolution of the question of whether any harmful or offensive touching is sufficient to constitute the "use of physical force" required under section 921(a)(33)(A)(ii) to render James's Penal Code section 242 conviction an MCDV. Contrary to the majority, I find persuasive cases from the Ninth Circuit Court of Appeals and other federal circuits, as well as from Division Eight of the Court of Appeal, Second Appellate District, which held that, to qualify as an MCDV, the state statute at issue must require more than de minimis force; instead, it must have, as an element, a violent use of force that is capable of causing physical pain or injury to another person. (*Shirey v. Los Angeles County Civil Service Com.* (2013) 216

---

[1] Undesignated statutory references are to title 18 of the United States Code.

Cal.App.4th 1, review & depub. request den. Aug. 21, 2013, S211414 (*Shirey*); *U.S. v. Castleman* (6th Cir. 2012) 695 F.3d 582, 586-588 (*Castleman*); *U.S. v. White* (4th Cir. 2010) 606 F.3d 144, 149-153 (*White*); *U.S. v. Hays* (10th Cir. 2008) 526 F.3d 674, 677-681 (*Hays*); *U.S. v. Belless* (9th Cir. 2003) 338 F.3d 1063, 1067-1069 (*Belless*).)

In 1996, Congress amended the Act to extend its prohibition of possession of any firearm by any person convicted of a felony to include any person "who has been convicted in any court of a misdemeanor crime of domestic violence." (§ 922(g)(9); *U.S. v. Hayes* (2009) 555 U.S. 415, 418.) As pertinent here, the Act defines an MCDV as an offense that is (1) a misdemeanor under state law, (2) "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon," and (3) is committed by the victim's current or former spouse. (§ 921(a)(33)(A).) Thus, to qualify as an MCDV under federal law, the criminal statute the individual is convicted of violating must contain, as an element, "the *use or attempted use of physical force*, or the threatened use of a deadly weapon." (§ 921(a)(33)(A), italics added.)

The issue in this case is whether Penal Code section 242 contains the element of "use or attempted use of physical force" as required by the federal statute. In making this determination, federal courts apply the "categorical approach" from *Taylor v. United States* (1990) 495 U.S. 575, 600, which entails looking only to the statutory definition of the offense and not the particular facts underlying the conviction. (*Castleman, supra,* 695 F.3d at p. 585; *White, supra,* 606 F.3d at p. 154, fn. 5; *Hays, supra,* 526 F.3d at p. 676.)

The issue of whether Penal Code section 242 is categorically an MCDV was decided recently in *Shirey, supra,* 216 Cal.App.4th 1.[2] There, a deputy sheriff was discharged from employment on the ground the Act prohibited him from carrying a firearm because he had been convicted of misdemeanor simple battery in violation of

---

[2] *Shirey* was decided by a divided Court of Appeal. All subsequent references to the *Shirey* case are to the majority opinion.

Penal Code section 242. (*Shirey*, *supra*, 216 Cal.App.4th at pp. 4-5.) After the Los Angeles County Civil Service Commission upheld his discharge, the deputy sought a peremptory writ of mandate in the superior court for reinstatement and back pay, which the trial court denied. (*Id.* at p. 3.) The Court of Appeal reversed, finding the trial court incorrectly concluded the deputy's battery conviction qualified as an MCDV under the Act and therefore the Commission abused its discretion in determining the federal gun possession ban applied to the deputy. (*Shirey*, *supra*, 216 Cal.App.4th at p.4.)

In reaching this decision, the Court of Appeal noted that while the United States Supreme Court has not construed the phrase "use or attempted use of physical force" in defining an MCDV, it had construed the same phrase in related federal statutes as requiring "a quantum of force greater than de minimis use of force or offensive touching." (*Shirey*, *supra*, 216 Cal.App.4th at p. 9.) For example, in *Johnson*, *supra*, 559 U.S. 133, 135, the Court determined the issue of "whether the Florida felony offense of battery by '[a]ctually and intentionally touch[ing]' another person, [citation], 'has as an element the use . . . of physical force against the person of another,' [§ 924(e)(2)(B)(i)], and thus constitutes a 'violent felony' under the Armed Career Criminal Act, section 924(e)(1)." The Court held "in the context of a statutory definition of '*violent* felony' the phrase 'physical force' means *violent* force – that is, force capable of causing physical pain or injury to another person." (*Id.* at p. 140.)

As noted in *Shirey*, numerous federal circuits, including the Ninth Circuit, have analyzed statutes similar to Penal Code section 242 and found convictions under those statutes do not qualify as an MCDV within the meaning of section 921(a)(33)(A). (*Shirey*, *supra*, 216 Cal.App.4th at p. 10, 12-14.) As the *Shirey* court explained, in *Belless*, *supra*, 338 F.3d at p. 1063, the Ninth Circuit, "analyzing a Wyoming battery statute similar to Penal Code section 242, concluded the phrase 'physical force' in title 18 of the United States Code section 921(a)(33)(A)(ii) requires conduct of a more serious degree than mere offensive touching." (*Shirey*, *supra*, 216 Cal.App.4th at p. 12.)

3.

The defendant in *Belless* had been convicted of illegally possessing a firearm in violation of section 922(g)(9) based on his prior battery conviction, following a guilty plea, under a Wyoming statute which defines the crime of battery as "'unlawfully touch[ing] another in a rude, insolent or angry manner or intentionally, knowingly or recklessly cause[ing] bodily injury to another.'" (*Belless, supra,* 338 F.3d at pp. 1065, 1067.) In concluding the Wyoming battery statute did not amount to an MCDV, the Ninth Circuit held, "[a]s a matter of law," "that the physical force to which the federal statute refers is not *de minimis*." (*Id.* at p. 1068, italics in original.) Guided by the "traditional doctrine of *noscitur a sociis*," which provides that "'the meaning of doubtful words may be determined by reference to associated words and phrases,'" the court noted the associated phrase in the federal definition of MCDV, namely a "threatened use of a deadly weapon," constituted a "gravely serious threat to apply physical force[,]" whereas the Wyoming statute criminalized conduct that is minimally forcible. (*Id.* at p. 1068.)

The rationale of *Belless* has been followed in several other federal circuits. (*Shirey, supra,* 216 Cal.App.4th at p. 13.) In *Castleman, supra,* the Sixth Circuit affirmed the dismissal of an indictment under section 922(g)(9) where the underlying state assault conviction did not require the degree of force necessary to meet the "physical force" requirement of an MCDV. (*Castleman, supra,* 695 F.3d at p. 586.) In *White, supra,* the Fourth Circuit reversed a conviction under section 922(g)(9) because the Virginia battery statute of which the defendant was convicted could be violated by mere touching and therefore did not qualify as the use of "physical force" within the meaning of an MCDV. (*White, supra,* 606 F.3d at p. 153.) And in *Hays, supra,* the Tenth Circuit held that the Wyoming battery statute analyzed by the Ninth Circuit in *Belless, supra,* did not categorically satisfy the definition of an MCDV because it embraced conduct that did not involve the use of violent force. (*Hays, supra,* 526 F.3d at pp. 678-680.) Moreover, the Ninth Circuit reaffirmed the rationale of *Belless* in *Ortega-Mendez, supra,* 450 F.3d at pp. 1018-1020, in which that court found a battery conviction

4.

under Penal Code section 242 did not constitute a "crime of domestic violence" within the meaning of title 8 United States Code section 1227, which identifies grounds for deporting aliens from the United States. (*Shirey, supra,* 216 Cal.App.4th at p. 13.)

While the *Shirey* court recognized other circuits had come to the opposite conclusion in discussing similar state statutes,[3] it found *White* and *Castleman* persuasive, as they relied upon the United States Supreme Court's decision in *Johnson.* (*Shirey, supra,* 216 Cal.App.4th at p. 13.)

I agree with *Shirey* that the decisions in *White* and *Castleman* persuasively rely on *Johnson* and, under the reasoning of those decision as well as the Ninth Circuit's decision in *Belless,* to qualify as an MCDV, the state statute at issue must require more than de minimis force. Instead, the state statute must have, as an element, a violent use of force that is capable of causing physical pain or injury to another person.

Since the least touching may constitute a battery under Penal Code section 242, the statute is over-inclusive, as it may be violated in a way that does not constitute a violent use of force. As stated in *Shirey:* "*Johnson* was also faced with an 'over inclusive' statute, similar to Penal Code section 242, that could be violated in more than one way such that the court could only conclude the conviction rested upon the 'least' of the violative acts. (*Johnson, supra,* 559 U.S. at pp. 137-138.) The same logic requires a finding here that [James]'s battery conviction was based only on a mere touching, which would not amount to a use of 'physical force' within the meaning of the federal firearms statute." (*Shirey, supra,* 216 Cal.App.4th at p. 14.)

---

[3] As noted in *White, supra,* 606 F.3d 144, 149, federal courts of appeal in the First, Eighth and Eleventh Circuits "have concluded that the 'touching' element of common law battery, no matter how slight, falls within the plain meaning of the statutory term 'physical force' as intended by Congress. See *U.S. v. Griffith,* 455 F.3d 1339 (11th Cir. 2006); *U.S. v. Nason,* 269 F.3d 10 (1st Cir. 2001); *U.S. v. Smith,* 171 F.3d 617 (8th Cir. 1999)."

Because the "physical force" required to constitute an MCDV means force greater than a mere offensive touching (§ 921(a)(33)(A)(ii)), and Penal Code section 242 can be violated based only on a mere touch, James's conviction under Penal Code section 242 is not, on its face, an MCDV.

The majority astutely notes Senator Lautenberg's remarks: "By their nature, acts of domestic violence are especially dangerous and require special attention." (Remarks of Sen. Lautenberg, 142 Cong. Rec. S10378 (daily ed. Sept. 12, 1996).) Recognizing this need for special attention, the California Legislature enacted Penal Code section 273.5, an inclusive and expanding statute specifically dealing with prevention, punishment, and protection relative to interactions between spouses, former spouses, mothers, fathers and cohabitants. It is obvious that, in allowing James to enter a no-contest plea to a simple battery (Penal Code section 242), the prosecutor, defense counsel and trial court intended to forfeit and avoid domestic violence consequences. The majority opinion repudiates their meeting of the minds, whether it was a treaty, a truce, or a plea bargain. I would affirm.


_____

Gomes, Acting P.J.

6.