# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SCOTT R. JAMES,** | **CASE NO. 1:13-CV-0983 AWI SKO** |
| **Plaintiff** | **ORDER RE: DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| **v.** | |
| **KIMBERLY GRANGER,** | (Doc. 23) |
| **Defendant** | |

Plaintiff Scott R. James ("Plaintiff") alleges a violation of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983 against Defendant Kimberly Granger ("Defendant"). This action arises from Defendant's involvement in a search of Plaintiff's home and the resulting criminal action, now dismissed. The Court considers Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") filed March 13, 2014.

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges that Defendant unlawfully exceeded the scope of her position as the attorney assigned to Plaintiff's civil matter by ordering and directing a search of Plaintiff's home and seizure of his firearms. Plaintiff was convicted of a misdemeanor in 1996 and the conviction was expunged in 2008. Doc. 22, 2:24-28.  Plaintiff then passed a background check and purchased a firearm. Doc. 22, 3:2-3. In the same year he was denied the purchase of a firearm because the State believed he had been convicted of a misdemeanor crime of domestic violence ("MCDV") and, after appealing to government agencies, Plaintiff brought a suit of mandamus in the California State Court seeking judicial determination of his right to purchase firearms in February

2011. Doc. 22, 3:5-15. Defendant was the attorney representing the State in that action. Doc. 22, 3:16.

Plaintiff admitted in his deposition that he possessed firearms in his home. Doc. 22, 3:24-25. Defendant sought a warrant to search Plaintiff's home, and, two months after it was issued, Defendant led State agents in a search of Plaintiff's home in or about October 2011. Doc. 22, 4:9-17. Firearms were confiscated and Plaintiff was charged with the crime of unlawful possession of an assault weapon. Doc. 22, 4:24-26. Plaintiff alleges that Defendant's actions were taken to gain an advantage in the underlying litigation, in which Plaintiff had a pending motion for summary judgment. Doc. 22, 4:8-11, 6:14-16.

At a hearing in the criminal matter in February 2013, it was revealed that the normal practice of the State of California toward those not currently under investigation for another crime who may not be permitted to possess firearms based on a potential prior MCDV is to notify the person by letter asking to have the weapons stored by a licensed third party during the pendency of the proceedings. Doc. 22, 5:10-18. Plaintiff alleges that Defendant intentionally singled him out for different treatment without basis; and, to his knowledge, no other similarly situated person has been subject to a search of their home and subsequent criminal prosecution. Doc. 22, 6:16-18, 7:23-27. The criminal matter was dropped and dismissed. Doc. 22, 5:12.

Plaintiff filed his original Complaint on June 26, 2013. Doc. 1. The parties stipulated to dismissal and amendment. Doc. 8. Plaintiff filed the First Amended Complaint ("FAC"), which the Court dismissed with leave to amend. Docs. 10; 20, 8:7-9. In that order, the Court noted that the FAC failed to allege facts sufficient to show that Defendant acted intentionally and that others were treated differently. Doc. 20, 6:10-12. Plaintiff filed the SAC on March 13, 2014. Doc. 22. The Court considers Defendant's Motion to Dismiss, Plaintiff's Opposition, and Defendant's Reply under submission. Docs. 23, 26, 27, 28. Upon reconsideration of the allegations in the SAC, and for the following reasons, Defendant's Motion will be denied.

II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A

1  dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

2  absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar,

3  646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121

4  (9th Cir. 2008). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are

5  taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT

6  Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013); Johnson, 534 F.3d at 1121.

7      To avoid a Rule 12(b)(6) dismissal, a complaint must contain sufficient factual matter,

8  accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S.

9  662 (2009); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). The allegations must

10  be factual in nature. See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the

11  'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

12  recitation of the elements of a cause of action will not do"). "A claim has facial plausibility when

13  the plaintiff pleads factual content that allows the court draw the reasonable inference that the

14  defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

15      Alleging on information and belief that other unnamed individuals received opposite

16  treatment is alone not enough to state a plausible claim for relief under a class-of-one Equal

17  Protection theory.  Solis v. City of Fresno, 2012 U.S. Dist. LEXIS 33548, *23-24 (E.D. Cal. Mar.

18  12, 2012)(10th Cir. and 2d Cir. cases dismissed the plaintiffs' claims for failure to identify another

19  similarly-situated person). Other circuit courts have found that conclusory and speculative

20  allegations fail to state a class-of-one claim. Scocca v. Smith, 2012 U.S. Dist. LEXIS 87025, *14-

21  16, fn. 1 (N.D. Cal. June 22, 2012)(noting three cases in the 6th, 3rd, and 5th Circuits from 2011

22  indicating that the plaintiff need to substantiate conclusory allegations that he or she was similarly

23  situated and/or of the different treatment). In Scocca, the Northern District found that the

24  plaintiff's blanket assertion that he and the favored third parties were similarly situated was

25  questionable because the criteria for granting a permit to carry a concealed weapon were

26  subjective and qualitative in nature, as opposed to cases in which the regulatory decision were a

27  simple, one-dimensional inquiry, resolved with a tape measure. Id. at *16 (citing Kansas Penn

28  Gaming, LLC v. Collins, No. 10-3002, 656 F.3d 1210, 2011 U.S. App. LEXIS 18187 (10th Cir.

1  Sept. 1, 2011)(internal quotations omitted).

2      Similarly, allegations of a "pattern and practice" lacking any factual support are not

3  sufficient to state an Equal Protection claim –the allegations are nothing more than speculation and

4  are insufficient to meet plaintiff's obligation to state the grounds for his claim. Garber v.

5  Mohammadi, 2013 U.S. Dist. LEXIS 110725, *35-36 (C.D. Cal. Aug. 6, 2013)(citing Twombly,

6  127 S. Ct. at 1964-65).

7      III.    DISCUSSION

8          A.  Equal Protection Claim

9      To state a claim for a violation of the Equal Protection Clause as a "class of one," the

10  plaintiff must allege facts to show: (1) that the defendant acted intentionally, (2) that the defendant

11  treated the plaintiff differently than others similarly situated, and (3) that there was no rational

12  basis for the differential treatment. Gerhart v. Lake County, Montana, 637 F.3d 1013, 1022 (9th

13  Cir. 2011).

14          1.  *Defendant Acted Intentionally*

15      "The class of one plaintiff must show that the discriminatory treatment 'was intentionally

16  directed just at him, as opposed… to being an accident or random act.' [Citation.]" North Pacifica,

17  LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008). The requirement that the defendant

18  acted intentionally does not require that the defendant acted out of ill-will, but that the defendant

19  intended to treat the plaintiff differently from others similarly situated. Gerhart, 637 F.3d at 1022.

20      The SAC adds allegations that Defendant acted intentionally as opposed to randomly in her

21  having an active role in the search and the criminal prosecution. Doc. 22, 7:18-22. The SAC also

22  makes several allegations as to Defendant's ill-will towards Plaintiff and Defendant's improper

23  motive in taking the alleged actions. Plaintiff alleges that Defendant's actions were wrong and that

24  she acted in retaliation and for personal gain. Doc. 22, 6:15, 6:23-25, 7:5-8. Plaintiff also alleges

25  that Defendant's actions were intentional in that she took affirmative steps in her actions. Doc. 22,

26  7:18-22. The alleged ill-will may support an inference of motive driving the conduct, but is not

27  sufficient to sustain a claim that Defendant intended to treat Plaintiff differently than others

28  similarly situated.

4

However, Plaintiff also alleged that the State's normal practice for those persons who may not be permitted to possess firearms because of a potential prior conviction of a MCDV, is to notify the person by letter and ask to have the weapons stored by a licensed third party pending the determination of the person's status. Doc. 10, 5:10-16, Doc. 22, 5:13-18. This allegation of a normal practice is more than a speculative allegation lacking factual support. Plaintiff alleged that during an official proceeding in the criminal matter, the practice of the State of California was revealed during questioning. Doc. 22, 5:12-13. This indicates that a representative of the State spoke as to the State's normal practice. Taking the allegations as true and in the light most favorable to Plaintiff, it is plausible that such a practice existed.

As to the "similarly situated" allegation, Plaintiff identifies those persons who may not be permitted to possess firearms because of a potential prior conviction of a misdemeanor crime of domestic violence as those who are similarly situated. Doc. 22, 5:13-16. He states, "On information and belief, no other person who has invited review of their right to possess a firearm under the Gun Control Act has been subject to a search of their home and subsequent prosecution." Doc. 22, 6:16-18.

If the State had a normal practice as alleged, it is plausible then that Defendant, as a State representative in mandamus cases against the State, was aware of the practice and, considering her alleged ill-will toward Plaintiff and underlying personal motives, intentionally treated Plaintiff in a manner inconsistent with that practice, whereas no other person had been treated in that way. Hence, Plaintiff has met his burden to allege that Defendant intended to treat Plaintiff differently than other individuals not currently under investigation for a crime who may not be permitted to own or possess firearms based on a prior MCDV.

## 2. *Different Treatment*

While bare unsupported allegations of different treatment are insufficient to allege this element of the cause of action, Plaintiff has alleged sufficient facts to support the allegation that different treatment in fact was plausible. Other cases have insisted that the plaintiff provide specific instances of others similarly situated who were treated differently. However, the SAC sufficiently alleges that the State of California's practice for a person in Plaintiff's situation is to

1  notify the individual by letter and ask to have the weapons stored by a licensed third party pending

2  the individual's status. Doc. 22, 5:13-18. Plaintiff also alleges that no such letter was delivered to

3  him, nor any oral request made. Doc. 22, 5:19-20. These allegations taken as true and in a light

4  most favorable to Plaintiff support a plausible claim that Plaintiff was treated differently than

5  those similarly situated.

6      Further, unlike in <u>Scocca</u>, in which the plaintiff alleged that he was treated differently in a

7  matter that is inherently subjective and individualized, Plaintiff has alleged that the State's practice

8  was uniformly applied.

9      Plaintiff alleges that peace officers under investigation for domestic violence offenses

10  (Plaintiff was investigated for the same) were reassigned to positions that did not require a firearm

11  or dismissed, but not charged with a criminal investigation. Doc. 22:19-22. Assuming this

12  additional allegation is true for the purpose of this motion, it is not probative or relevant to the

13  present action because Plaintiff is not similarly situated to the peace officers. Peace officers who

14  are required to carry a firearm for their position, and whose employer has a procedure in place for

15  MCDV investigations, are not similarly situated to Plaintiff, an individual whose status regarding

16  his possession of firearms is under determination by the California Superior Court. To illustrate

17  using Plaintiff's example, Plaintiff cannot be similarly situated to peace officers because the

18  remedies mentioned cannot be applied to Plaintiff –the Superior Court could not have Plaintiff

19  "reassigned to [a] non-firearm-carrying position" or "dismissed" from his employment.

20      Plaintiff alleged that there existed a normal practice to those in Plaintiff's situation

21  deviation from which never occurred, except as to Plaintiff. Hence, Plaintiff has met his burden to

22  allege that Defendant treated him differently than others similarly situated.

23          *3.  No Rational Basis*

24      A class of one claim requires plaintiff to show that there is no rational basis for the

25  *difference* in treatment, not that there is no rational basis for the treatment itself. <u>Gerhard</u>, <u>supra</u>,

26  637 F.3d at 1023 (italics added).

27      Plaintiff alleges that there was no rational basis for singling him out for a search. Plaintiff

28  asserts that he was cooperative and forthcoming in his admission of gun possession, which was the

6

1    subject of the mandamus action. Doc. 22, 5:20-22. Plaintiff alleges that the different treatment that

2    he suffered (from similarly situated possessors of firearms who may not be permitted to own or

3    possess firearms because of an MCDV) was due to his filing of a petition for writ of mandamus.

4    Plaintiff alleges that Defendant did not have a legitimate reason to conduct the search as opposed

5    to sending a letter according to the State's practice. The only reason that the search was conducted

6    was to against Plaintiff for his filing a mandamus action and to gain an advantage in the summary

7    judgment proceeding. Doc. 22, 6:4-16.

8        Taking the alleged facts as true in the light most favorable to Plaintiff, Plaintiff has met his

9    burden to allege that there was no rational basis for the difference in treatment.

10       B.  Absolute Immunity

11       Prosecutors have absolute immunity under Section 1983 for a decision to initiate a criminal

12   prosecution. Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976). This provision was extended to

13   administrative enforcement proceedings and civil claims with "functions analogous to those of a

14   prosecutor." Butz v. Economou, 438 U.S. 478, 511-14, 15 (1978), Fry v. Melaragno, 939 F.2d

15   832, 838 (9th Cir. 1991). When considering immunity for government officials, qualified

16   immunity is the norm, except in "exceptional situations where it is demonstrated that absolute

17   immunity is essential for the conduct of the public business." Butz, 438 U.S. at 507. Fry stated that

18   government attorneys are entitled to absolute immunity in all litigation contexts, but it is not

19   required in all civil suits; specifically in cases where the prosecutor has side-stepped the judicial

20   process. Stapley v. Pestalozzi, 733 F.3d 804, 810 (9th Cir. 2013). Prosecutors are not necessarily

21   immune for actions taken outside of the judicial process, including actions "logically—though not

22   necessarily temporally—prior to advocacy, such as those 'normally performed by a detective or

23   police officer,' like gathering evidence, and those separate from the process, like providing legal

24   advice to the police." Lacey v. Maricopa County, 693 F.3d 896, 913 (9th Cir. 2012).

25       The Supreme Court has emphasized a functional approach for determining when public

26   officials may claim absolute immunity under Section 1983, stating, "An official must be

27   performing a duty functionally comparable to one for which officials were rendered immune at

28   common law, and it is only the specific function performed, and not the role or title of the official,

7

1    that is the touchstone of absolute immunity." <u>Engebretson v. Mahoney</u>, 724 F.3d 1034, 1039 (9th

2    Cir. 2013)(internal citations and quotations omitted). For example, prison officials were found to

3    enjoy absolute immunity from Section 1983 liability for enforcing court orders because they are

4    performing functions necessary to the judicial process. <u>Id</u>. at 1039-40. However, the prison

5    officials are still limited to act within their authority. <u>Id</u>. at 1041. Parole officials enjoyed absolute

6    immunity for the imposition of parole conditions, "a quasi-judicial function," but not to the

7    enforcement of the conditions in an unconstitutionally arbitrary or discriminatory manner.

8    <u>Thornton v. Brown</u>, 2014 U.S. App. LEXIS 3037, *8-10 (9th Cir. Cal. Feb. 18, 2014). Conduct

9    arising from their duty to supervise would be subject to qualified immunity. <u>Id</u>. at *10. This

10   Circuit also found that prosecutors were not entitled to absolute immunity in their actions of

11   initiating a civil RICO suit because their doing so was not acting in a uniquely governmental role,

12   and the court found that the civil suit was "essentially a harassing public-relations ploy." <u>Stapley</u>,

13   733 F.3d at 811-12. The prosecutors in <u>Stapley</u> filed the civil suit for the purpose of holding a

14   press conference, and subsequently withdrew the suit prior to it being heard. <u>Id</u>. at 812. These

15   cases demonstrate that certain officials are entitled to absolute immunity for certain actions, those

16   *necessary* or *integrally related* to the judicial process, and not others, those not necessary to or

17   taken outside of the judicial process.

18         To determine whether a defendant is entitled to absolute immunity on a motion to dismiss,

19   the court considers the facts as alleged in the complaint, and then applies the law to those alleged

20   facts. <u>Stapley</u>, at 809. The standards of a motion to dismiss –to take all allegations of material fact

21   as true and construed in the light most favorable to the nonmoving party, but not to accept as true

22   legal conclusions couched as factual allegations- apply to this absolute immunity analysis. <u>See</u> <u>Id</u>.

23   at 809. Defendants have the burden of showing that they are entitled to absolute immunity. <u>Id</u>. at

24   811.

25         Based on the pleadings, taking them as true and construing them in a light most favorable

26   to Plaintiff, the Court finds that Defendant has not met her burden to demonstrate entitlement to

27   absolute immunity. Defendant's brief discussion on absolute immunity does not indicate what

28   makes this case so exceptional as to deviate from the standard afforded to government officials of

1  qualified immunity. She only states that because Plaintiff admits that Defendant's conduct was

2  one done to ensure victory in the mandamus case, her actions are "based entirely on her official

3  conduct as an attorney for the government." Doc. 23, 7:25-28. Her position as a government

4  attorney does not alone qualify her for absolute immunity; the specific actions performed must be

5  those necessary to the judicial process.

6          Plaintiff has alleged that Defendant's actions were unconstitutional in intentionally

7  singling him out for different treatment without a rational basis. He has also alleged that

8  Defendant "side-stepped" the judicial process by acting beyond the scope of her duties as the

9  attorney assigned to the mandamus action and leading a search and criminal prosecution. As in

10 Stapley, in which it the prosecutors were not entitled to absolute immunity for filing a civil action

11 for the purpose of holding a public hearing and subsequently withdrawing the action, Plaintiff has

12 alleged that Defendant only pursued the search and encouraged the criminal action by abusing her

13 position to gain an unfair advantage over Plaintiff. Plaintiff refers to Defendant's actions as a

14 "misuse of power" and with the purpose to "intimidate and publicly vilify" Plaintiff. Doc 22, 6:2,

15 5-7. Plaintiff alleged that Defendant obtained the search warrant under false pretenses. Doc. 22,

16 4:6-7. Plaintiff also alleged that Defendant accompanied officers in the search of his home,

17 directed the police where to search, and "advised the officers to undertake a criminal

18 investigation" of Plaintiff. Doc. 22, 6:1-3. These are actions considered in Lacey that may be

19 outside of the judicial process as actions normally performed by a detective or police officer and

20 giving legal advice to the police. Plaintiff alleges that Defendant did not serve as the prosecutor in

21 the criminal action, and her actions related to the search were outside of the realm of her role as

22 the attorney in the mandamus case, for which there was a normal practice regarding the storage of

23 firearms that she failed to follow. These are not the type of exceptional circumstances that must be

24 protected by absolute immunity, as opposed to qualified immunity.

25         Defendant's actions, as alleged, are not analogous to the prosecutorial function, and are not

26 necessary to or integrally related to the judicial process. Hence, the Court does not find that

27 Defendant is entitled to absolute immunity at this stage.

28 ///

1    C. Qualified Immunity

2    To determine whether qualified immunity applies, the threshold question is whether, in the

3    light most favorable to the party asserting injury, the facts show an officer's conduct violated a

4    constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001); Robinson v. Solano County, 278

5    F.3d 1007, 1012 (9th Cir. 2002) (en banc). If the violation could be established, the next question

6    is whether the right was clearly established, given the specific context of the case. Saucier, at 201.

7    "In order to determine whether it the constitutional violation was clearly established, the violation

8    must be sufficiently clear that a reasonable official would understand that what he is doing violates

9    that right. In other words, the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739,

10   (2002)(citing Anderson v. Creighton, 483 U.S. 635, 640 (1987))(internal citations omitted). If an

11   official could have reasonably but mistakenly believed that her conduct did not violate a clearly

12   established constitutional right, she is entitled to qualified immunity. Hunt v. County of Orange,

13   672 F.3d 606, 615 (9th Cir. 2012).

14   Government employees are not entitled to qualified immunity on judicial deception claims.

15   Chism v. Washington, 661 F.3d 380, 393 (9th Cir. 2011). If an officer submitted an affidavit that

16   contained statements known to be false he cannot be said to have acted in a reasonable manner,

17   and the shield of qualified immunity is lost. Id. (citing Branch v. Tunnell, 937 F.2d 1382, 1387

18   (9th Cir. 1991).

19   Here, Plaintiff has sufficiently alleged a constitutional violation. Defendant's Motion

20   frames the issue as whether or not Defendant "was reasonable in her belief that Plaintiff's battery

21   conviction is a MCDV thus precluding Plaintiff from owning, possessing or purchasing firearms."

22   Doc. 23, 9:4-6. She asserts that she was. Doc. 23, 9:24-25. Plaintiff has framed the issue as

23   whether "a reasonable attorney, similarly situated, would have believed that the United States

24   Constitution allows for state actors to retaliate against civil litigants for having filed a suit in

25   mandamus." Doc. 26, 8:15-17. The Court understands the constitutional violation at hand to be

26   Defendant's *different treatment* of Plaintiff, giving rise to a cause of action under the Equal

27   Protection Clause. Defendant's papers do not assert that the class-of-one principle of the Equal

28   Protection Clause was unclear, but bases her claim to entitlement of qualified immunity on the

1   factual claim of reasonableness of her actions based on the circumstances. Therefore, the

2   reasonableness inquiry for purposes of finding qualified immunity would be whether or not a

3   reasonable attorney in a mandamus action regarding Plaintiff's right to possess firearms, would

4   have believed, under the circumstances, that departing from the normal practice and obtaining a

5   warrant to search and conducting a search of Plaintiff's home was a constitutional violation.

6          As discussed, Plaintiff has alleged that there was a normal practice for individuals not

7   under a criminal investigation at the time, but may not be able to possess firearms based on a prior

8   MCDV. Plaintiff alleges that he was fully cooperative and forthcoming during the process, even

9   admitting in his first filing that he possessed firearms. He alleged that he lawfully purchased the

10  guns that in his possession and set forth the same in the mandamus pleadings. He alleged that

11  Defendant conducted the search two months after obtaining a warrant under false pretenses.

12  Taking theses allegation as true, qualified immunity is inapplicable to Defendant's actions because

13  she allegedly provided false and/or incomplete information when obtaining the warrant. It is also

14  likely that a reasonable official would have understood the State's normal practice. The Court

15  construes the facts in the light most favorable to Plaintiff, and finds that a reasonable attorney

16  would not have submitted false information to obtain a warrant and would have known that

17  obtaining a warrant and conducting a search was different treatment in violation of Plaintiff's

18  constitutional rights.

19         Hence, Defendant has not demonstrated that she is entitled to qualified immunity at this

20  stage.

21     IV.    ORDER

22         For the foregoing reasons, Defendant's Motion to Dismiss the Second Amended

23  Complaint is hereby DENIED.

24

25  IT IS SO ORDERED.

26  Dated:   May 28, 2014                    _____

27                                            SENIOR  DISTRICT  JUDGE

28