1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  ALBERTO L. GONZALEZ , State Bar No. 117605
   Supervising Deputy Attorney General
3  CATHERINE WOODBRIDGE GUESS, State Bar No.
   186186
4  Deputy Attorney General
    1300 I Street, Suite 125
5   P.O. Box 944255
    Sacramento, CA 94244-2550
6   Telephone:  (916) 445-8216
    Fax:  (916) 322-8288
7   E-mail:  Catherine.Woodbridge@doj.ca.gov
   *Attorneys for Defendants Stephen Lindley and*
8  *Kimberly Granger*

9                IN THE UNITED STATES DISTRICT COURT

10             FOR THE EASTERN DISTRICT OF CALIFORNIA

11                        FRESNO DIVISION

12

13

14 **SCOTT R. JAMES,**                 1:13-CV-0983 AWI SKO

15                        Plaintiff,   **NOTICE OF MOTION AND MOTION
                                        FOR SANCTIONS; MEMORANDUM OF**
16        v.                           **POINTS AND AUTHORITIES IN
                                        SUPPORT THEREOF; DECLARATION**
17                                     **OF CATHERINE GUESS**
   **KIMBERLY GRANGER,**
18                        Defendant.   **Fed. R. Civ. P. 11**

19                                     Date:         August 3, 2015
                                       Time:         1:30 p.m.
20                                     Courtroom:    2
                                       Judge:        The Honorable Anthony W.
21                                                   Ishii
                                       Trial Date:   May 17, 2016
22                                     Action Filed: June 26, 2013

23        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

24        PLEASE TAKE NOTICE that on August 3, 2015 at 1:30 p.m. or as soon thereafter as the

25 matter may be heard in Courtroom 2 the above-entitled court, located 2500 Tulare Street, Fresno,

26 CA 93721, CA, Defendants Stephen Lindley and Kimberly Granger will and hereby do move,

27 pursuant to Federal Rule of Civil Procedure 11, for an order: imposing monetary sanctions of

28

---

                                    1

1   $3,230 against Plaintiff and his attorney and for such other and further relief as the Court may

2   deem proper.

3          This motion is based on this notice of motion, the attached memorandum of points and

4   authorities and declaration of Catherine Guess, all matters of which this Court must or may take

5   judicial notice, including those in the accompanying request for judicial notice, all pleadings and

6   records on file in this action and on such further authority, evidence or argument as may be

7   presented at or before the hearing on this motion.  Proper notice was given.  A copy of this

8   motion and its accompanying materials was served on Plaintiff's counsel via mail on June 11,

9   2015.

10  Dated:  July 3, 2015                                    Respectfully submitted,

11                                                          KAMALA D. HARRIS
                                                            Attorney General of California
12                                                          ALBERTO L. GONZALEZ
                                                            Supervising Deputy Attorney General
13

14                                                          /s/ Catherine Woodbridge Guess

15                                                          CATHERINE WOODBRIDGE GUESS
                                                            Deputy Attorney General
16                                                          Attorneys for Defendant Kimberly Granger

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **INTRODUCTION**

Plaintiff files a Third Amended Complaint alleging facts that contradict his testimony as well as other evidence in this matter. This lawsuit is nothing more than Plaintiff's personal vendetta against Deputy Attorney General Kimberly Granger who defended the State of California/Bureau of Firearms in a mandamus action initiated by Plaintiff in the Superior Court of California, Tulare County. Plaintiff did not prevail in the writ of mandamus matter and now seeks to harass Deputy Attorney General Granger and Bureau of Firearms Chief Lindley with a meritless lawsuit.

Because of his battery conviction, Plaintiff was prohibited from owing or purchasing firearms. 18 U.S.C. § 992(g)(9). After being denied the ability to purchase a firearm, Plaintiff initiated a mandamus action to challenge the State's determination of his misdemeanor crime of domestic violence (MCDV) status. As part of the discovery process in the mandamus action, Deputy Attorney General Granger took Plaintiff's deposition. Plaintiff admitted possessing firearms. Plaintiff was in violation of the law because of his MCDV status. 18 U.S.C. § 992(g)(9). Deputy Attorney General Granger then reported to Bureau of Firearms Chief Lindley about Plaintiff's deposition testimony, including the admission that Plaintiff owned firearms.

Plaintiff alleges in the Third Amended Complaint that Deputy Attorney General Granger unlawfully exceeded the scope of her position as the attorney assigned to Plaintiff's civil matter by ordering and directing a search of Plaintiff's home and seizure of his firearms following Plaintiff's admission that he possessed firearms, a violation of 18 U.S.C. § 992(g)(9). However, Plaintiff testified at deposition that Deputy Attorney General  Granger did not prepare the search warrant, and at the time of the search, Plaintiff could not hear anything Ms. Granger said nor did he communicate with her. Deposition of James at 53:11-16; 56:2-7; 77:16-25; 81:17-20 88:23-89:20. As a result, the factual allegations in the Third Amended Complaint are without merit.

Not only are the allegations contradicted by Plaintiff's own testimony, but his sole cause of action is barred by qualified immunity. As a result, sanctions in the sum of $3,230 are warranted based on Plaintiff and his attorney's conduct in violation of Rule 11. Plaintiff's Third Amended

3

1   Complaint is brought for he sole purpose of harassing Defendants Deputy Attorney General

2   Granger and Bureau of Firearms Chief Lindley.  Because Plaintiff has filed a lawsuit in violation

3   of Rule 11(b) (1), (2) and (3), and has failed, despite a request to do so, to withdraw the lawsuit or

4   appropriately correct it during the 21 day safe-harbor period set forth in Rule 11 (c) (2), sanctions,

5   including an award of attorneys fees, are warranted.

6   **II.  ISSUES**

7       Monetary sanctions are appropriate against Plaintiff and his attorney who have violated

8   Federal Rules of Civil Procedure, Rule 11.  After engaging in discovery, including depositions of

9   Plaintiff and Defendant Granger, Plaintiff filed a Third Amended Complaint that alleges facts

10  contradicted by his own testimony as well as testimony of Deputy Attorney General Granger.

11  The discovery in this case reveals there is no evidentiary support for Plaintiff's claim and no legal

12  basis.

13  **III.  HISTORY OF STATE COURT PROCEEDINGS**

14      **A.  Civil Writ of Mandamus.**

15      In February 2011, Plaintiff filed a writ of mandamus in the Superior Court of California,

16  Tulare County to determine whether he was prohibited from owning or possessing firearms.

17  Plaintiff's writ of mandamus was initially granted by the Tulare County Superior Court.  The

18  State of California appealed the trial court's order, and on September 24, 2013, California's Fifth

19  District Court of Appeal reversed the trial court's decision.  Plaintiff then filed a petition for

20  review with the California Supreme Court.

21      The California Supreme Court  granted review but stayed the petition pending the outcome

22  of a United States Supreme Court case addressing the definition of MCDV.  In *United States v.*

23  *Castleman*, 134 S. Ct. 1405, 88 L. Ed. 2d 426 (2014), the Supreme Court held that a MCDV

24  includes battery if physical force is an element of battery.  California Penal Code  § 242 defines

25  battery as "any willful and unlawful use of force or violence upon the person of another."  Thus a

26  person convicted of battery in California meets the criteria for a lifetime ban on ownership of

27  firearms under the MDCV prohibition. Following the decision in *Castleman*, the California

28  Supreme Court remanded the matter to the Fifth District Court of Appeal.  On August 26, 2014,

4

1  the Fifth District Court of Appeal affirmed its 2013 order reversing the Tulare County Superior

2  Court and denying Plaintiff's request for relief.  Plaintiff filed another petition for review with the

3  California Supreme Court, but on November 19, 2014, the Court denied Plaintiff's request for

4  review.

5      **B.**    **State Court Criminal Case.**

6        As part of the civil mandamus action, Deputy Attorney General Granger asked Plaintiff at

7  deposition whether he possessed any firearms.  Although prohibited by federal law from owning

8  or possessing firearms, Plaintiff admitted that he owns firearms.  As a result of his admission, the

9  Bureau of Firearms obtained a search warrant for Plaintiff's home.  Deputy Attorney General

10  Granger did not prepare or obtain the search warrant.  Deposition of James at 81:17-20.

11        In October 2011, the search of Plaintiff's home uncovered one unregistered assault weapon,

12  fourteen rifles, eight shotguns, seven handguns, twenty-nine handgun and rifle magazines and

13  four thousand thirty-three rounds of various caliber ammunition.  Plaintiff was arrested and

14  charged with violation of California Penal Code § 12280(b) (unlawful possession of assault

15  weapon).  Plaintiff was prosecuted by the Tulare County District Attorney.  Ultimately, the

16  charge was dismissed.

17      **C.**    **Federal Case.**

18        Plaintiff filed this matter June 26, 2013, alleging a single cause of action against Deputy

19  Attorney General Kimberly Granger for violation of 42 U.S.C. § 1983.  Because the Complaint

20  failed to state sufficient facts to support his claim, Defendant moved to dismiss the Complaint.

21  Docket No. 7.  Prior to hearing on the motion, Plaintiff amended his Complaint to allege a § 1983

22  claim against Deputy Attorney General Granger based on a class of one argument.  Docket No.

23  10.  Again, Deputy Attorney General Granger was forced to file a motion to dismiss the First

24  Amended Complaint.  Her motion to dismiss was based on qualified immunity.  Docket No. 12.

25  On February 14, 2014, the Court granted the motion with leave to amend.  Docket No. 20.

26        On March 28, 2014, Plaintiff filed a Second Amended Complaint again asserting a § 1983

27  claim based on class of one.  Docket No. 22.  Although Deputy Attorney General Granger filed a

28  motion to dismiss based on qualified immunity, the Court denied Ms. Granger's motion finding

1   that the facts alleged in the Second Amended Complaint, if true, stated a § 1983 claim.  Docket

2   No. 29.

3        On April 15, 2015, Plaintiff moved to amend his complaint a third time.  Docket No. 43.

4   Plaintiff sought to add Bureau of Firearms Chief Stephen Lindley and allege different facts

5   regarding the basis for his § 1983 claim.  Deputy Attorney General Granger opposed the motion.

6   Docket No. 45.  On May 26, 2015, the Court granted Plaintiff's motion to amend.  Docket No. 50.

7   The Third Amended Complaint alleges a single cause of action for violation of 42 U.S.C. § 1983

8   based on a class of one argument against Deputy Attorney General Granger and Chief Lindley.

9   Docket No. 51.

10       In addition to seeking sanctions, Defendants filed a motion to dismiss Third Amended

11   Complaint.  The hearing on Motion to Dismiss Third Amended Complaint is July 13, 2015.

12   **IV.  FACTUAL ALLEGATIONS**

13       Plaintiff admits that he was convicted of battery in 1996.  Third Amended Complaint ¶ 8.

14   Under California law, he was prohibited from owning or possessing a firearm for 10 years.  Third

15   Amended Complaint ¶ 9.  In 2008, he attempted to purchase a firearm, but was informed that his

16   battery conviction is considered a MCDV and thus prohibited from owning or possessing

17   firearms.  Third Amended Complaint ¶10.

18       In February 2011, Plaintiff filed a writ petition regarding his right to own or possess

19   firearms.  Third Amended Complaint ¶ 11.  Deputy Attorney General Granger was assigned to

20   handle the defense of the matter on half of the State of California/Bureau of Firearms.  Third

21   Amended Complaint ¶ 12.  At his deposition in the mandamus matter, Plaintiff admitted that he

22   owns firearms.  Third Amended Complaint ¶ 13.  Deputy Attorney General Granger then notified

23   her client of Plaintiff's admission.  Third Amended Complaint ¶ 14.

24       A search warrant was issued for Plaintiff's residence.  Third Amended Complaint ¶ 14.  It is

25   the policy of Bureau of Firearms Chief Lindley to subject those persons challenging MCDV

26   status to search and seizure.  Third Amended Complaint ¶ 15.

27       Plaintiff's asserts that others similarly situated are provided a letter asking that prohibited

28   person to voluntarily relinquish their weapons.  Third Amended Complaint ¶ 19.  Plaintiff also

6

1    alleges that Ms. Granger "directed agents where to search and when." Third Amended Complaint

2    ¶ 17; see also ¶ 24.  Plaintiff alleges that Ms. Granger "advised officers to undertake a criminal

3    investigation of Mr. James." Third Amended Complaint ¶ 21; see also ¶ 27. Additionally,

4    Plaintiff contends that "Ms. Granger advised officers to arrest and question him after having

5    refused to allow Mr. James to be accompanied by his attorney." Third Amended Complaint ¶ 22.

6    **V.    SANCTIONS ARE NECESSARY TO STOP THIS REPETITIVE, FRIVOLOUS LITIGATION**

7    Federal Rules of Civil Procedure, Rule 11 provides, in part:

8    (b) [b]y presenting to the court a pleading, written motion, or other paper -- whether
9    by signing, filing, submitting, or later advocating it -- an attorney or unrepresented
     party certifies that to the best of the person's knowledge, information and belief,
10   formed after an inquiry reasonable under the circumstances,

11   (1) it is not being presented for any improper purpose, such as to harass, cause
     unnecessary delay, or needlessly increase the cost of litigation;
12

13   (2) the claims, defenses, and other legal contentions are warranted by existing law or
     by a nonfrivolous argument for extending, modifying, or reversing existing law or for
14   establishing new law . . .

15   (3) the factual contentions have evidentiary support . . .

16   "[T]he central purpose of Rule 11 is to deter baseless filings . . . . Rule 11 imposes a duty

17   on attorneys to certify that they have conducted a reasonable inquiry and have determined that

18   any papers filed with the court are well-grounded in fact, legally tenable, and 'not interposed for

19   any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S. Ct. 2447,

20   110 L. Ed. 2d 359 (1990) (citation omitted); see also *Townsend v. Holman Consulting Corp.*, 929

21   F.2d 1358, 1362 (9th Cir. 1990).  The test for improper purpose is objective. *Id.* at 1366.  When a

22   complaint is the focus of a Rule 11 proceeding, "a district court must conduct a two-prong inquiry

23   to determine (1) whether the complaint is legally or factually baseless from an objective

24   perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before

25   signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (citation omitted).

26   Rule 11 sanctions may be imposed if a document is either frivolous or filed for an improper

27   purpose, but "a determination of improper purpose must be supported by a determination of

28   frivolousness when a complaint is at issue." *Townsend*, 929 F.2d at 1362.

7

1     The filing of a federal complaint is "no trifling undertaking." *Christian v. Mattel, Inc.*, 286

2 F.3d 1118, 1127 (9th Cir. 2002).

3     The attorney has a duty prior to filing a complaint not only to conduct a reasonable
factual investigation, but also to perform adequate legal research that confirms

4 whether the theoretical underpinnings of the complaint are 'warranted by existing law
or a good faith argument for an extension, modification or reversal of existing law.'

5

6 *Id.*

7     When counsel represent that something clearly rejected by the Supreme Court is
governing law, then it is appropriate to conclude that counsel are not engaged in

8 trying to change the law; counsel either are trying to buffalo the court or have not
done their homework. Either way, Rule 11 *requires* the court to impose a sanction. . .

9

10 *Szabo Food Service, Inc. v. Canteen Corporation*, 823 F.2d 1073, 1082 (7th Cir. 1987)

11 (emphasis added).

12     Plaintiff's counsel sat through the depositions and is aware of the testimony provided.

13 Plaintiff admitted he has no information, in fact "no proof" to support his claims. Deposition of

14 James at 91:5-9; 85:9-13.

15 **VI.   PLAINTIFF'S MOTION AND THIRD AMENDED COMPLAINT VIOLATE RULE 11.**

16     Monetary sanctions are appropriate against Plaintiff and his attorney who have violated

17 Rule 11. They violated Rule 11 (b)(2) because their legal contentions are not warranted by

18 existing law. Likewise, they violate Rule 11 (b)(3) because the factual allegations have no

19 evidentiary support and in fact contradict Plaintiff's testimony.

20     **A.   Plaintiff's Testimony Contradicts Factual Allegations.**

21     The allegations contained in the Third Amended Complaint are contradicted by testimony

22 from both Plaintiff and Deputy Attorney General Granger. Deputy Attorney General Granger was

23 working in her capacity as an attorney for the Bureau of Firearms. Third Amended Complaint ¶

24 13. Deputy Attorney General Granger took the deposition of Plaintiff and reported the testimony

25 of Plaintiff to her client. Deposition of Granger at 16:12-18; 37:14-23. Plaintiff's alleges in the

26 Third Amended Complaint that Deputy Attorney General Granger was responsible for obtaining

27 the search warrant of his home, directed agents where and when to search, denied legal

28 representation to Plaintiff, arrested Plaintiff, and confiscated his weapons. Third Am. Compl. ¶¶

8

1  17, 23.  But, Plaintiff admitted that the Bureau of Firearms, not Ms. Granger then obtained a

2  search warrant for Plaintiff's residence.  Deposition of James at 81:17-20.

3       Deputy Attorney General Granger attended the search in her capacity as an attorney for the

4  Bureau of Firearms. Deposition of Granger at 39:24-40:3; 46:14-18.  Plaintiff admits that he has

5  no information that Ms. Granger directed agents where and when to search. Deposition of James

6  at 88:6-8; see also Deposition of Granger at 46:22-25.  Thus, the evidence obtained in discovery

7  establishes that Ms. Granger did not obtain the search warrant, Plaintiff did not hear Deputy

8  Attorney General Granger direct any agents during the search, and she is not part of the Tulare

9  County District Attorney's office who prosecuted Plaintiff.  Deposition of James at 53:11-16;

10  56:2-7; 77:16-25; 88:23-89:20.  Despite these admissions, Plaintiff filed a Third Amended

11  Complaint with factual allegations directly contradicting his deposition testimony.  The only

12  conclusion that can be drawn from the factual disparities between the Third Amended Complaint

13  and the evidence established in discovery is that Plaintiff filed the Third Amended Complaint for

14  the purpose of harassing Deputy Attorney General Granger and Chief Lindley.

15       **B.    No Valid Equal Protection Claim Alleged.**

16       The Equal Protection Clause ensures that "all persons similarly situated should be treated

17  alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S.

18  Ct. 3249 (1985).  Where state action does not implicate a fundamental right or a suspect

19  classification, the plaintiff can establish a "class of one" equal protection claim by demonstrating

20  that he "has been intentionally treated differently from others similarly situated and that there is

21  no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564, 120

22  S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).

23       Plaintiff's Equal Protection claim is premised on a class of one.  Third Am. Compl. ¶ 28.

24  However, Plaintiff alleges that his criminal prosecution was done pursuant to policy developed by

25  Chief Lindley against anyone "who challenge[d] the State's determination of whether that person

26  has been convicted of MCDV, and subjecting them to searches and seizures…" Third Am.

27  Compl. ¶ 15.  Thus, the Third Amended Complaint does not allege a class of one claim.  Rather,

28  Plaintiff contends that he is among a group of people subject to searches because they challenge

9

1  their MCDV status.  Allegations of a pattern and practice lacking any factual support are not

2  sufficient to state an Equal Protection claim.  *Garber v. Mohammadi*, 2013 U.S. Dist. LEXIS

3  110725, *35-36 (C.D. Cal. Aug. 6, 2013)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.

4  Ct. 1955, 1964-1965, 167 L. Ed. 2d 929 (2007).

5        If Plaintiff's class of one claim is based on the allegation that the State of California sends a

6  letter to MCDV persons asking for voluntary relinquishment of weapons (Third Am. Compl. ¶

7  19), this allegation is refuted by Plaintiff's testimony in this case.  At deposition, Plaintiff testified

8  that he has "no proof" that the State of California has a practice of sending people a letter to

9  relinquish their weapons.  Deposition of James at 91:5-9.  In fact, Plaintiff admits he is not aware

10  of anyone similarly situated who was subject to the alleged disparate treatment.  Deposition of

11  James at 85:9-13.  Thus, Plaintiff admits he has no class of one basis for his lawsuit. .

12       **C.**    **Qualified Immunity Bars Plaintiff's Claim.**

13        Qualified immunity protects government officials from liability for civil damages insofar as

14  their conduct does not violate clearly established statutory or constitutional rights that a

15  reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  A two-step

16  process exists for determining whether qualified immunity exists: 1) whether the facts that a

17  plaintiff has alleged make out a violation of a constitutional right that a reasonable person would

18  have known, and 2) whether the right at issue was "clearly established" at the time of defendant's

19  alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223 (2009).

20        If the court concludes a right is not clearly established, the official is entitled to qualified

21  immunity.  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  If a right is clearly established, an official

22  is not entitled to qualified immunity unless a reasonable official would not have known that his

23  conduct violated the clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

24  But if the state actor could have reasonably, albeit mistakenly, believed that his conduct did not

25  violate a clearly established constitutional right, then the action will receive qualified immunity.

26  *Saucier,* at 205-06, *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001).

27        To determine whether qualified immunity applies, the court must consider the application

28  of the right in the specific context in question. *Brewster v. Bd. of Educ. Of Lynwood Unified Sch.*

1    *Dist.*, 149 F.3d 971, 977 (9th Cir. 1998). In so doing, the court considers the "information

2    possessed" by the state actor at the time of his or her conduct. *Hunter v. Bryant*, 502 U.S. 224,

3    227 (1991). Qualified immunity analysis is deferential to the government official: "[a court] must

4    look at the situation as a reasonable officer in [the defendant's] position could have perceived it."

5    *Marquez v. Gutierrez*, 322 F.3d 689, 693 (9th Cir. 2003).

6         The Third Amended Complaint alleges that Deputy Attorney General Granger's alleged

7    disparate treatment was failing to advise agents with the Bureau of Firearms that Plaintiff was

8    contesting his MCDV status. Third. Am. Compl. ¶¶ 21, 28, 31. 18 U.S.C. § 992(g)(9) prohibits

9    Plaintiff from owning, purchasing or possessing firearms. Therefore, at issue is whether Deputy

10   Attorney General Granger was reasonable in her belief that Plaintiff's battery conviction is a

11   MCDV precluding Plaintiff from owing, possessing or purchasing firearms. Similarly, at issue is

12   whether is was appropriate for an attorney representing the Bureau of Firearms to notify the

13   Bureau of Firearms of the testimony of a Plaintiff in an action against the Bureau.

14        The Gun Control Act of 1968 was enacted to "keep firearms out of the hands of those not

15   legally entitled to possess them because of age, criminal background or incompetency." *Barrett v.*

16   *United States,* 423 U.S. 212, 220 (1976). The Lautenberg Amendment to the Gun Control Act of

17   1968 extends the prohibition to include any person "who has been convicted in any court of a

18   misdemeanor crime of domestic violence." 18 U.S.C. § 992(g)(9). The United States Supreme

19   Court opined that a MCDV includes battery if physical force is an element of battery. *United*

20   *States v. Castleman*, 134 S. Ct. 1405. California Penal Code  § 242 defines battery as "any willful

21   and unlawful use of force or violence upon the person of another." Thus, Deputy Attorney

22   General Granger's belief that Plaintiff's battery conviction is a MCDV is reasonable.

23        Deputy Attorney General Granger reasonably believed that her conduct did not violate a

24   clearly established right. Plaintiff admits he was convicted of battery. The battery was against

25   his wife. Given the Fifth District Court of Appeal's decision to deny mandamus relief and the

26   United States Supreme Court's decision on the definition of battery, it cannot be found that a

27   reasonable official would have known that Deputy Attorney General Granger's conduct violated a

28   clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Likewise, notifying

1   the Bureau of Firearms that Plaintiff possessed firearms in violation of federal law is also

2   reasonable. The Bureau of Firearms was the client for whom Deputy Attorney General Granger

3   was working when she took Plaintiff's deposition. Deposition of Granger at 16:12-18; 37:14-23.

4   Because her conduct was reasonable, Deputy Attorney General Granger is entitled to qualified

5   immunity.

6        There are no allegations that Chief Lindley treated Plaintiff differently from those similarly

7   situated. Third Am. Compl. ¶ 15. Plaintiff admits that Chief Lindley had a policy on how to treat

8   anyone who contested MCDV status. Third Am. Compl. ¶ 15. Plaintiff was not singled out.

9   Like Deputy Attorney General Granger, Chief Lindley is also entitled to qualified immunity.

10  Plaintiff is prohibited from owning or possessing a firearm. 18 U.S.C. § 992(g)(9). When Chief

11  Lindley was advised that Plaintiff was in violation of the law, a search warrant was obtained. The

12  search uncovered a cache of weapons, including an assault rifle. It cannot be found that Chief

13  Lindley knew he was violating a clearly established right when Plaintiff is a MCDV prohibited

14  from owning or possessing firearms.

15       **D.   Sanctions Are Proper Because Plaintiff Filed Third Amended Complaint
              To Harass Defendants.**

16

17       Sanctions should be imposed against Plaintiff, including Plaintiff's attorney. Pursuant to

18  Rule 11(c), "the court may impose an appropriate sanction upon any attorney, law firm, or party

19  that has violated the rule or is responsible for the violation." The Ninth Circuit has found that

20  when an experienced attorney knew or should have known that there was neither a cause of action

21  nor any claim to invoke federal court jurisdiction, "a strong inference arises that their bringing of

22  an action such as this was for an improper purpose." *Huetting & Schromm, Inc. v. Landscape*

23  *Contractors Council of Northern Cal.*, 790 F.2d 1421, 1426-7 (9th Cir. 1986); accord *Worrell v.*

24  *Uniforms to You & Co.*, 673 F. Supp. 1461, 1465 (N.D. Cal. 1987).

25       Sanctions imposed may include "an order directing payment to the movant of part or all of

26  the reasonable attorney's fees and other expenses directly resulting from the violation." Rule

27  11(c)(4). Sanctions may be awarded to the government for time spent defending frivolous

28

1   lawsuits. *Wisconsin v. Hotline Industries, Inc.,* 236 F.3d 363, 365-366 (7th Cir. 2000); *Napier v.*

2   *Thirty or More Unidentified Federal Agents,* 855 F.2d 1080, 1092 (3rd Cir. 1988).

3          Defendant Deputy Attorney General Granger and Chief Stephen Lindley are represented by

4   the Attorney General's office. Guess Dec. ¶1. Monetary sanctions of $3,230 payable to the

5   Attorney General's office for litigation fees and costs directly resulting from the filing of the

6   Motion to Dismiss Third Amended Complaint should be imposed. Guess Dec. ¶¶4-5. This

7   amount represents Defendant's costs incurred as a result of the Motion to Dismiss Third

8   Amended Complaint.

9   **VII.  CONCLUSION**

10          For reasons stated herein, this motion should be granted. Rule 11 monetary sanctions and

11   attorneys fees should be assessed against Plaintiff, including Plaintiff's attorney.

12   Dated: July 3, 2015                                    Respectfully submitted,

13                                                           KAMALA D. HARRIS
                                                             Attorney General of California
14                                                           ALBERTO L. GONZALEZ
                                                             Supervising Deputy Attorney General
15

16                                                           */s/ Catherine Woodbridge Guess*

17                                                           CATHERINE WOODBRIDGE GUESS
                                                             Deputy Attorney General
18                                                           *Attorneys for Defendants Stephen Lindley*
                                                             *and Kimberly Granger*
19

20

21

22

23

24

25

26

27

28

Motion for Sanctions – Rule 11  (1:13-CV-0983 AWI SKO)

## DECLARATION OF CATHERINE GUESS IN SUPPORT OF MOTION FOR SANCTIONS

I, Catherine Guess, declare:

1.     I am a Deputy Attorney General employed by the California Department of Justice, attorneys for Defendant Kimberly Granger.

2.     I am the only Deputy Attorney General working on behalf of Defendant Granger in the matter known as *James v. Granger,* Case No. 1:13-CV-0983 AWI SKO.

3.     The billing rate for a Deputy Attorney General is $170/hour.

4.     I spent over 4 hours performing research and preparing an Defendants' Motion to Dismiss Third Amended Complaint.  I spent over 8 hours preparing this Rule 11 motion.  I anticipate spending 4 hours reviewing any opposition and preparing a reply to the motion to dismiss, if an opposition to the motion to dismiss is filed.  I also anticipate spending 3 hours reviewing any opposition and preparing a reply to this motion, if an opposition is filed.  I anticipate spending an additional 3 hours preparing for and attending hearings on these motions.

5.     The total time spent and anticipated to be spent is 19 hours.  Therefore, attorneys fees of $3,2300 are claimed (15 hours  x $170 per hour).

6.     On April 20, 2015, I sent a letter to Plaintiffs' counsel requesting that he withdraw the motion for leave to amend to file Third Amended Complaint.  The letter also acknowledges that a Rule 11 motion for sanctions will be served unless Plaintiff withdraws his motion.  A copy of the letter is attached as Exhibit 1.

7.     On June 11, 2015, this office served Plaintiff's counsel with Defendant's Motion for Sanctions, but did not file the motion as required by Fed. R. Civ. P. 11(c)(2).  A copy of the proof of service is attached hereto as Exhibit 2.

8.     A true and correct copy of relevant portions of Plaintiff Scott James deposition transcript is attached as Exhibit 3.

9.     A true and correct copy of relevant portions of Kimberly Granger's deposition transcript is attached as Exhibit 4.

/ / /

1       10.    A true and correct copy of the Third Amended Complaint is attached as Exhibit 4.

2      I declare under penalty of perjury that the foregoing is true and correct.  Dated this 3rd day

3  of July, 2015.

*/s/ Catherine Woodbridge Guess*

Catherine Woodbridge Guess

SA2013309877
32104553.doc

Motion for Sanctions – Rule 11  (1:13-CV-0983 AWI SKO)

**James, Scott R. v. Kimberly Granger**

**USDC – EASTERN DISTRICT COURT**

**CASE NO.  1:13-CV-0983 AWI SKO**

# EXHIBIT 1



KAMALA D. HARRIS
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public: (916) 445-9555
Telephone: (916) 445-8216
Facsimile: (916) 322-8288
E-Mail: Catherine.Woodbridge@doj.ca.gov

April 20, 2015

Ronald Statler
Dooley & Herr, LLP
100 Willow Plaza, Suite 300
Visalia, California 93291

RE:   Kimberly Granger v. Scott R. James
      United States District Court, Eastern District of California, Case No. 1:13-CV-0983 AWI
      SKO

Dear Mr. Statler:

Please accept this meet and confer letter in an effort to resolve the issues arising out of Plaintiff's Motion for Leave to File Third Amended Complaint and the Third Amended Complaint. As you are no doubt aware, Federal Rules of Civil Procedure, Rule 11 provides a vehicle for seeking sanctions when an attorney or party has violated Rule 11(b).

The Third Amended Complaint alleges facts that have no evidentiary basis and are at odds with discovery obtained. Specifically, paragraphs 14, 15, 17, 19, 21, 22, 23, 24, 26, 27, and 31 allege facts that are contradicted by the deposition testimony of Ms. Granger and Plaintiff. Ms. Granger testified that she notified Special Agent Powell that Plaintiff had filed a writ of mandamus action. (Granger 31:5-18). Ms. Granger testified that she did not advise the agents where and when to search. (Granger 46:22-25). Moreover, Plaintiff testified that he did not hear anything Ms. Granger said at the time of the search. (James 53:11-17). Thus, the allegations in paragraph 17, 21, 22, 24, 26, 27, and 31 are contradicted by the evidence in this case. Likewise, there is no evidentiary support for the allegations in paragraph 19 that the State of California has a policy of notifying prohibited persons by letter to request voluntary relinquishment of weapons. In fact, Ms. Granger testified that has never been the policy to her knowledge. Both Mr. James and Ms. Granger testified that they are unaware of any other person similarly situated to Mr. James who were treated differently. Consequently, Plaintiff cannot establish the essential elements of his claims.

Finally, it must be noted that Ms. Granger testified that all actions taken in Mr. James' mandamus case were as the attorney of record for the Bureau of Firearms. Likewise, she was acting as the attorney for the Bureau when the agents executed a search warrant. Ms. Granger's

Ronald Statler
April 20, 2015
Page 2

actions relating to Mr. James are immune from liability.  Plaintiff's claims have no evidentiary basis and no legal basis.

Thus, it appears that the motion for leave is presented for the improper purposes of needless increase in costs of litigation, to delay this matter, and to harass Ms. Granger. As a result, I request that you dismiss this action and at a minimum withdraw the Motion for Leave to Amend.  Should Plaintiff continue to pursue this motion and the filing of the Third Amended Complaint, I will be forced to file a motion for sanctions under Rule 11.

Sincerely,

CATHERINE WOODBRIDGE GUESS
Deputy Attorney General

For    KAMALA D. HARRIS
Attorney General

CWG:cw

SA2013309877
32049321

**James, Scott R. v. Kimberly Granger**

**USDC – EASTERN DISTRICT COURT**

**CASE NO.  1:13-CV-0983 AWI SKO**

# EXHIBIT 2



*KAMALA D. HARRIS*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public: (916) 445-9555
Telephone: (916) 445-8216
Facsimile: (916) 322-8288
E-Mail: Catherine.Woodbridge@doj.ca.gov

June 11, 2015

Ronald Statler
Dooley & Herr, LLP
100 Willow Plaza, Suite 300
Visalia, California 93291

RE:   Kimberly Granger v. Scott R. James
      <u>United States District Court, Eastern District of California, Case No. 1:13-CV-0983 AWI
      SKO</u>

Dear Mr. Statler:

Pursuant to Federal Rules of Civil Procedure Rule 11, enclosed please find Defendants' Motion for Sanctions. Rule 11 allows a 21 day safe harbor period in which to withdrawal or dismiss the offending pleading. The proposed date for the Rule 11 Motion for Sanctions is August 3, 2015 which allows Plaintiff ample time to dismiss the Third Amended Complaint.

Defendants request that you dismiss the Third Amended Complaint with prejudice. As you know, on April 20, 2015, I requested that you withdrawal Third Amended Complaint because the Third Amended Complaint alleges facts that have no evidentiary basis and are at odds with discovery obtained, including Plaintiffs deposition testimony. Defendants Granger and Lindley will also file a Motion to Dismiss Third Amended Complaint which is scheduled to be heard July 13, 2015.

Sincerely,

CATHERINE WOODBRIDGE GUESS
Deputy Attorney General

For   KAMALA D. HARRIS
      Attorney General

CWG:cw
Enclosure

**James, Scott R. v. Kimberly Granger**

**USDC – EASTERN DISTRICT COURT**

**CASE NO.  1:13-CV-0983 AWI SKO**

# EXHIBIT 3

Certified Copy

## In the Matter Of:

## JAMES vs. GRANGER

1:13-CV-0983 AWI SKO

## SCOTT RAY JAMES

*January 26, 2015*



door and --

Q     Luke Powell?

A     Luke Powell -- and sat me on the couch, and
Ms. Granger was right there.

Q     Did you have any conversation with Ms. Granger
at that time?

A     When I saw her, I just took my head and said, I
can't believe it came to this.

Q     And did she respond?

A     She just had a smile on her face.

Q     Did you have any conversation with her at any
time that day?

A     No.

Q     Did you hear her have a conversation with
anyone else that day?

A     I heard her talking, but I couldn't hear what
she was saying.

Q     Did you observe her while she was inside your
house?

A     I couldn't really see what was going on because
they had me in the living room, and I just knew there
was at least eight different faces coming and going and
searching the house or doing everything, doing what they
were doing.

Q     Well, you indicated that once you got inside



1        A     No.

2        Q     And you couldn't hear her speak to anyone else

3    at your house?

4        A     They were loud.  There was a lot going on and

5    people walking around back and forth.  So I couldn't

6    really hear nothing.  And my dogs were going berzerk in

7    the backyard.

8        Q     What -- were you asked to do anything while the

9    agents were searching your house?

10       A     To stay there, sit there, and then at one point

11   they took me in a guest bedroom and tried to question

12   me.

13       Q     Who tried to question you?

14       A     Agent Powell.  And then there was another

15   agent, but I don't know what his name was.

16       Q     Was Ms. Granger present?

17       A     Not that I can recall.

18       Q     Anything else that occurred?

19       A     They tried to video -- or audiotape it, and I

20   just politely said, sorry, I can't give any statement.

21       Q     Okay.  And anything else that occurred while

22   you were at the house and the agents were there

23   searching?

24       A     They asked if I could open up the safe.

25       Q     Who asked you?

1    A    My belief --

2         MR. STATLER:  Objection.  Because I think we're

3    getting into confusing combinations of legal conclusions

4    and factual bases for the litigation.

5         MS. GUESS:  All right.

6    Q    Let me back up and finish out another line of

7    questioning.  Let's go back to the search itself.

8         Were you arrested following the search?

9    A    Yes.

10   Q    By whom?

11   A    Agent Luke Powell.

12   Q    Was Ms. Granger present when you were arrested?

13   A    I always had the handcuffs on, so I don't know

14   if they made that decision when I was actually arrested,

15   but when I walked outside, I don't recall seeing her.

16   Q    Okay.  So the answer is no, she wasn't present

17   when you were put under arrest?

18   A    I don't know, because I wasn't really looking

19   around who was really around.  I kind of -- I was really

20   embarrassed because a lot of my neighbors were outside,

21   and I just -- just didn't pay attention.  I kind of --

22   Q    Did you see Ms. Granger?

23   A    I didn't see her.

24   Q    Did she tell you you were under arrest?

25   A    No.

your criminal appearances?

A    Not that I can recall.

Q    Did you ever --

A    She was under subpoena.

Q    Did you ever hear her testify in your criminal matter?

A    No.

Q    Do you have any information that she applied for the search warrant of your home that occurred back in October of 2011?

A    All of the information on the search warrant, it's all black and white.  All it states basically is that Agent Luke Powell got the information the following day or two days later after my deposition in July from Ms. Granger.  He had testified that he had gotten parts of the transcript like two days after my deposition.

Q    Is it your understanding that Ms. Granger prepared the search warrant?

A    Prepared it for a magistrate, no.  That was all done by Luke Powell.

Q    Have you seen a copy of your transcript from July of 2011?

A    Yes.

Q    And during that deposition in July of 2011, did you admit that you were in possession of firearms?



Case 1:13-cv-00983-AWI-SKO   Document 59   Filed 07/03/15   Page 27 of 51

SCOTT RAY JAMES                                    January 26, 2015
JAMES vs. GRANGER                                              85

A    I believe just the one time.  There might have
been a hearing prior to that that didn't go through.  I
think it was just the one time, and that would have been
on that February 3rd day.

Q    When you had your deposition taken in the writ
matter, who did you think that Ms. Granger was
representing?

A    The Department of Justice, Attorney General.

Q    Are you aware of any other people that have
filed a writ on the same issue that you filed your writ
on?

A    I don't know.  I'm not sure about that.  Not
really, no.

Q    Are you aware of any other people where
Ms. Granger has acted as the attorney for the Department
of Justice on a writ matter, any writ matter?

A    Yes.

Q    Who?

A    Calguns.  And I think --

Q    Is that a person or a business?

A    That's the association, Calguns.  And then also
I think there's another one with the NRA, National Rifle
Association.

Q    And it's your understanding Ms. Granger acted
as the attorney for the Department of Justice?

Case 1:13-cv-00983-AWI-SKO  Document 59  Filed 07/03/15  Page 28 of 51

SCOTT RAY JAMES                                    January 26, 2015
JAMES vs. GRANGER                                              88

1      Q     McCartney, who lived at 2505 South Johnson

2  Street, Visalia?

3      A     Yes.

4      Q     He told you he heard Ms. Granger speaking?

5      A     Yes.

6      Q     Okay.  My question is, what facts do you have

7  that she was supervising the search?

8      A     I don't really have any.

9      Q     And what facts do you have that Ms. Granger was

10  at your home to obtain statements to use in the civil

11  case?

12     A     Other than the correlation between her and

13  Agent Powell communicating to obtain the search warrant

14  and for them both to be at the summary judgment hearing

15  in November, the day he filed the return of the search

16  warrant.

17     Q     Did you ever hear Ms. Granger directing the

18  agents how or where to search your home?

19     A     I heard some talk about what to look for, what

20  they're looking for, but again, it was loud.  I had my

21  dogs going berzerk, and then my back was to a lot of

22  them.

23     Q     My question is, did you hear Ms. Granger

24  directing Agent Powell where to search your home?

25     A     At one time I saw -- no, but then at one time I



Case 1:13-cv-00983-AWI-SKO   Document 59   Filed 07/03/15   Page 29 of 51

SCOTT RAY JAMES                                    January 26, 2015
JAMES vs. GRANGER                                              91

1   a lot of these articles, on the news and videos that are

2   out there that talk about how people are not able to

3   have these -- any type of weapons, that they would send

4   agents out there and ask for them to turn them over.

5        Q    Okay.  So what I'm asking is, what information

6   do you possess that the State of California has this

7   practice of sending people a letter to relinquish their

8   weapons?

9        A    I don't have any proof.  I just know, just by

10  talking to Calguns or NRA, there's lots of different

11  people that they have said that they've received letters

12  like that or have received the, you know,

13  knock-knock-give-us-your-guns-type scenario.

14  BY MS. GUESS:

15       Q    So you didn't hear anyone testify during your

16  criminal case that it's the State of California's

17  practice to have people relinquish their guns in

18  response to a letter?

19       A    I don't know that 100 percent because I believe

20  Agent Powell did talk about that in his testimony or

21  talked about -- because we questioned, do you always get

22  a search warrant, and I think the question was brought

23  up that, no, we don't.  A lot of times we do door knocks

24  or we go out or we'll call people or we'll send a

25  letter.

Case 1:13-cv-00983-AWI-SKO   Document 59   Filed 07/03/15   Page 30 of 51

SCOTT RAY JAMES                                          January 26, 2015
JAMES vs. GRANGER                                                    121

REPORTER'S CERTIFICATION

I, Coleen Dalton, Certified Shorthand Reporter, in and for the State of California, do hereby certify:

That the foregoing witness was by me duly sworn; that the deposition was then taken before me at the time and place herein set forth; that the testimony and proceedings were reported stenographically by me and later transcribed into typewriting under my direction; that the foregoing is a true record of the testimony and proceedings taken at that time.

IN WITNESS WHEREOF, I have subscribed my name: February 2, 2015.

*Coleen Dalton*

_____

Coleen Dalton, CSR No. 5755

James, Scott R. v. Kimberly Granger

USDC – EASTERN DISTRICT COURT

CASE NO.  1:13-CV-0983 AWI SKO

# EXHIBIT 4

Certified Copy

# In the Matter Of:

## JAMES vs. GRANGER

1:13-cv-00983-AWI-SKO

---

# KIMBERLY JEAN GRANGER

*January 27, 2015*

*Volume 1*

---



800.211.DEPO (3376)
EsquireSolutions.com

Case 1:13-cv-00983-AWI-SKO   Document 59   Filed 07/03/15   Page 33 of 51

KIMBERLY JEAN GRANGER Volume 1                    January 27, 2015
JAMES vs. GRANGER                                              16

1    capital letters, it stands for a Dealer's Record of

2    Sale.  And that's the electronic process by which

3    dealers communicate to the Department of Justice that

4    someone is attempting to purchase a firearm.

5    BY MR. STATLER:

6        Q.  Thank you.  Did you ever contact an agent of

7    the Department of Justice and inform them that Scott

8    James had testified under oath that he owned guns?

9            MS. GUESS:  Objection, attorney-client

10   privilege.  To the extent that it is specifically

11   relevant to this lawsuit I will allow her to answer.

12           THE WITNESS:  Upon receiving Mr. James'

13   admission during his deposition that he was in

14   possession of several long guns and handguns, I did

15   report to my chain of command that Mr. James had

16   admitted to current possession of those firearms.  And

17   that would be Chief Stephen Lindley, the Chief of the

18   Bureau of Firearms.

19   BY MR. STATLER:

20       Q.  And what prompted you to do so?

21       A.  The fact that Mr. James was considered a

22   prohibited person being in possession of those firearms.

23       Q.  But you were aware that he had filed a mandamus

24   case to have that determined conclusively by a Judge,

25   were you not?

Case 1:13-cv-00983-AWI-SKO   Document 59   Filed 07/03/15   Page 34 of 51

KIMBERLY JEAN GRANGER Volume 1          January 27, 2015
JAMES vs. GRANGER                                            37

1   I'm not trying to misstate your testimony.  But you had

2   said something about attorneys would occasionally call

3   and you would speak to them about their client's ability

4   to own a firearm; is that correct?

5       A.   Yes.

6       Q.   And were any of those calls from attorneys

7   about people who had already purchased firearms and

8   gotten them and now were being denied?

9       A.   No.  At least they didn't reveal that to me.

10  They were just calling about a specific denial and

11  wanted to know why their client had been denied.

12      Q.   Okay.  Did you have an obligation to report

13  Scott James' testimony?

14      A.   As part of my duties as the attorney for the

15  Bureau of Firearms I reported my activities and what I

16  learned during the deposition to both my chain of

17  command at the Governmental Law Section and as well as

18  the Bureau of Firearms.

19      Q.   And what is the source of this duty?

20      A.   I have a chain of command that I report to so

21  they wanted to know what I had learned during the

22  deposition, what had happened during the deposition, how

23  the deposition went.

24      Q.   I see.  Were you aware at the time the search

25  warrant was executed that a Motion For Summary Judgment



Case 1:13-cv-00983-AWI-SKO   Document 59   Filed 07/03/15   Page 35 of 51

KIMBERLY JEAN GRANGER Volume 1                    January 27, 2015
JAMES vs. GRANGER                                               39

1    involved in cases where search warrants were executed.

2    There are other sections within the AG's office where

3    criminal investigations are handled, they may accompany,

4    and likely do accompany, agents on the execution of

5    search warrants, but I don't know specifically of

6    anything.

7        Q.  Did it ever bother you that a search had not

8    occurred in Mr. James' case until a couple of months

9    after you had called Agent Powell?

10       A.  No.

11       Q.  Were you aware that it hadn't happened before

12   you were invited along?  Does that make sense?

13       A.  I was told when the search was happening.  I

14   was too busy with other things to -- I did not keep tabs

15   on when the search or if a search was going to happen.

16       Q.  So did you ever inquire as to why a search had

17   not happened before it had occurred?

18       A.  No.

19       Q.  Did you ever tell anyone that a search needed

20   to happen at any time?

21       A.  No.

22       Q.  Did you ask to go on the search?

23       A.  No.

24       Q.  And what was your role as observer at the

25   search?

Case 1:13-cv-00983-AWI-SKO  Document 59  Filed 07/03/15  Page 36 of 51

KIMBERLY JEAN GRANGER Volume 1                    January 27, 2015
JAMES vs. GRANGER                                                40

1          A.   To observe the execution of a search and answer

2    any agent questions that they had during the execution

3    of the search warrant.

4          Q.   Were you asked any questions on this search?

5          A.   Yes.

6          Q.   Do you recall what they were?

7          A.   I was asked about the presence of a slot

8    machine on Mr. James' property and whether or not that

9    should be seized.  Because we weren't sure -- the agents

10   weren't sure if it was an illegal slot machine, so they

11   wanted to know whether or not that should be seized.

12          I was asked about the documents that Mr. James

13   would have signed in the context of attempting to

14   purchase firearms and where he may have purchased the

15   firearms.

16          Q.   Any other questions?

17          A.   Not that I can recall, no.

18          Q.   Now, forgive me, I'm going to have to ask you

19   some questions about the interplay between these

20   different departments to make sure I'm going down an

21   appropriate road here.

22          Because you were part of an administrative

23   mandamus section, I believe you testified, and then

24   another section of your office?  Or am I wrong?

25          A.   I don't think you are going to head down the



Case 1:13-cv-00983-AWI-SKO   Document 59   Filed 07/03/15   Page 37 of 51

KIMBERLY JEAN GRANGER Volume 1                    January 27, 2015
JAMES vs. GRANGER                                              46

1    Mr. James' mandamus case?

2        A.   No.   I had his testimony at the deposition,

3    that was all I needed.

4        Q.   So was your presence at the search part of what

5    might be called career development?   I don't know if

6    that term make sense to you, but career development with

7    AG's office?

8        A.   No.   It was just being present for what agents

9    in my section do, in my bureau do, being -- it wasn't

10   a --

11       Q.   I'm sorry, let me ask -- that may have sounded

12   pejorative.   I meant as in training and familiarization

13   with what you were doing.

14       A.   I was on site to provide advice to the agents

15   in the execution of the warrant.   That's what it was.

16   Whether it was -- usually I would be on the phone with

17   them, or whether I was in person, that's why I was

18   there.

19       Q.   So would you be considered a law enforcement

20   officer while you were there?

21       A.   I'm not a peace officer.

22       Q.   Did you advise the agents as to any parts of

23   Mr. James' house that should be searched?

24       A.   No, the search warrant was expressed to what

25   could be served.

Case 1:13-cv-00983-AWI-SKO   Document 59   Filed 07/03/15   Page 38 of 51

KIMBERLY JEAN GRANGER Volume 1                          January 27, 2015
JAMES vs. GRANGER                                                      84

1                    REPORTER'S CERTIFICATION

2

3        I, SHARON CABELLO, a Certified Shorthand Reporter

4   in and for the State of California, do hereby certify:

5

6        That the foregoing witness was by me duly sworn;

7   that the deposition was then taken before me at the time

8   and place herein set forth; that the testimony and

9   proceedings were reported stenographically by me and

10   later transcribed into typewriting under my direction;

11   that the foregoing is a true record of the testimony and

12   proceedings taken at that time.

13

14        IN WITNESS WHEREOF, I have subscribed my name this

15   February 2, 2015.

16

17

18        _Sharon Cabello_____

19        SHARON CABELLO, CSR No. 3080

20

21

22

23

24

25

**James, Scott R. v. Kimberly Granger**

**USDC – EASTERN DISTRICT COURT**

**CASE NO.  1:13-CV-0983 AWI SKO**

# EXHIBIT 5

CWC

1  Leonard C. Herr, #081896
   Ron Statler, #234277
2  HERR PEDERSEN & BERGLUND LLP
   Attorneys at Law
3  100 Willow Plaza, Suite 300
   Visalia, California 93291
4  Telephone: (559) 636-0200
   Email: lherr@dhlaw.net
5
   Attorneys for Plaintiff: SCOTT R. JAMES
6
7
8              UNITED STATES DISTRICT COURT
9            EASTERN DISTRICT OF CALIFORNIA
10
11  SCOTT R. JAMES,                  CASE NO.: 1:13-cv-00983
12       Plaintiff,                  THIRD AMENDED COMPLAINT FOR
         v.                          VIOLATION OF CIVIL RIGHTS [42
13                                   U.S.C. §1983]
    KIMBERLY GRANGER, an
14  individual; STEVE LINDLEY, an    DEMAND FOR JURY TRIAL
    individual
15
         Defendants.
16
17
18       1.    Plaintiff Scott R. James' civil rights under Article I, sections 9 & 10 of

19  the United States Constitution and the First, Third, Fourth, Fifth, and Sixth

20  Amendments to it, were violated by Defendant Kimberly Granger when she

21  directed agents and, by withholding information from those agents, caused them

22  to deny him legal counsel during an in-custody interrogation. She also caused

23  these agents to withhold information from the Court in procuring a search

24  warrant. This was done at the Direction of Steve Lindley, a person with authority

25  to make policy in the California Department of Justice, Bureau of Firearms. When

26  they agents arrived at Scott James' home, they threatened to destroy his real and

27  personal property if he did not answer questions during an in-custody

28  interrogation after having been denied the benefit of legal counsel. They also

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA 93291
(559) 636-0200

-1-

THIRD AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
[42 U.S.C. §1983]; DEMAND FOR JURY TRIAL

1  caused criminal charges to be filed when no reasonable state attorney would have
2  believed the charges to be sustainable, in retaliation for having brought suit in
3  mandamus against the Attorney General of the State of California to secure his
4  rights, and denied him his rights of equal protection before the law.

5      2.      While divided into sections and subsections, this Amended
6  Complaint is to be read as a whole.  Each part incorporates each other part unless
7  otherwise noted.

## I.

## THE PARTIES

10     3.      Plaintiff, Scott R. James, is and at all times relevant to this Amended
11 Complaint was a U.S. Citizen domiciled in County of Tulare, State of California.

12     4.      Defendant, Kimberly Granger, is and at all times relevant to this
13 Amended Complaint was an adult whose citizenship is unknown.

14     5.      Defendant Steve Lindley was at the times relevant to this Amended
15 Complaint the Acting Chief of the Bureau of Firearms, a bureau within the
16 Department of Justice of the State of California.  He is now the Chief.

17     6.      It is unknown at this time if others undertook actions under color of
18 state law to violate Mr. James' civil rights.  Should other defendants come to light,
19 Mr. James will seek leave of Court to add that person or those persons as
20 defendants.

## II.

## JURISDICTION AND VENUE

23     7.      The action arises under 42 U.S.C. section 1983. Venue is proper in
24 this District because a substantial part of the events or omissions giving rise to
25 the claim occurred in Tulare County, which is in the Fresno Division of this
26 District.

27 ///
28 ///

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA 93291
(559) 636-0200

-2-

**THIRD AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**
**[42 U.S.C. §1983]; DEMAND FOR JURY TRIAL**

## III.

### FACTS UPON WHICH CLAIMS ARE BASED

8.     In 1996, Mr. James pleaded no contest to a misdemeanor violation of California Penal Code section 242.  No copy of the complaint against him, his answer, or a record of factual findings made by the Court appear in the Court's records.  His conviction was expunged under California Penal Code § 1203.4 in 2008.

9.     After ten years passed from his conviction by plea of no contest, Mr. James sought to purchase a firearm.  He passed his background check and bought it.  He was eventually issued a concealed carry permit, again passing his background check.

10.     In 2008, he was denied the purchase of a firearm and was informed, for the first time, that the State believed him to have been convicted of a misdemeanor crime of domestic violence.  Mr. James could not understand why his status had changed.  Mr. James engaged in written informal appeals through counsel with the federal and state governments hoping to clear up the misunderstanding regarding his prior conviction and, at one point, believed the matter must have been cleared and tried to purchase a gun again but was again denied.  The governmental agencies would not budge, and Mr. James filed the mandamus action.

11.     In February 2011, Scott James brought suit against the State of California in mandamus regarding his right to own/purchase/possess firearms.

12.     Ms. Granger represented the State in that action.  This Amended Complaint is not based on any actions Ms. Granger undertook in her defense of the State in that action; rather it is based on actions she undertook outside of that defense to gain unlawful and unconstitutional advantage in the mandamus action, and for other unknown reasons of personal animus, by misuse of her apparent state authority by causing another action to be brought against and

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

**THIRD AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**
**[42 U.S.C. §1983]; DEMAND FOR JURY TRIAL**

1    maintained against Mr. James.

2        13.    On July 25, 2011, as part of the mandamus action, Ms. Granger

3    took the sworn testimony of Mr. James in deposition. During questioning, Mr.

4    James was asked if he possessed any firearms at his home. He responded yes.

5    The legality of his doing so was the very question to be answered by the action

6    brought in mandamus.

7        14.    Over the next couple of days, Ms. Granger, acting outside the scope

8    of her position as legal counsel in a civil case, contacted agents for the State

9    Bureau of Firearms and informed them that Mr. James was in possession of

10    firearms despite having been convicted of a misdemeanor crime of domestic

11    violence. Ms. Granger did not inform the agents that he had brought a petition in

12    mandamus for a determination of whether his possession of those firearms was

13    lawful. The agents, in turn, did not inform the Court of that fact. The search

14    warrant was obtained under false pretenses.

15        15.    This was done as part of a policy developed by Steve Lindley, who

16    developed a policy of intimidation of those who challenge the State's determination

17    of whether that person has been convicted of MCDV, and subjecting them to

18    searches and seizures in retaliation for objecting to governmental action and

19    decisions. Mr. James' activities in the mandamus action made clear he sought to

20    operate within the law; the Office of the Attorney General, through Chief Lindley

21    developed a policy by which persons who sought to challenge the state's

22    determination in the courts would be subject to intimidation through criminal

23    prosecution and searches, warrants for which were gained by withholding

24    information from the agents responsible for procuring the warrants; specifically,

25    by withholding information that the person being searched was seeking a judicial

26    determination of their rights to own the very items they will be prosecuted for

27    having.

28        16.    At the time the warrant was sought, Mr. James had filed a motion for

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA 93291
(559) 636-0200

-4-

**THIRD AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**
**[42 U.S.C. §1983]; DEMAND FOR JURY TRIAL**

1    summary judgment in the mandamus action.  The search was done a week before

2    the State's opposition to Mr. James' summary judgment was due to be filed in

3    October 2011 – about two months had passed since the search warrant had been

4    signed by the Court.  Ms. Granger was on scene to supervise the search and

5    obtain statements and information from Mr. James to use in the civil case.

6         17.    State agents, acting at the direction and on the advice of Ms.

7    Granger, searched Mr. James' home.  Ms. Granger was present for the entire

8    search.  During this time, Ms. Granger directed agents where to search and when.

9    In Ms. Granger's presence, agents arrested Mr. James and questioned him after

10   having refused to allow Mr. James' lawyer to escort him inside the home so Mr.

11   James could be represented by counsel during that questioning.  After denying

12   Mr. James legal representation, agents, acting in concert with Ms. Granger,

13   threatened to use explosives on a safe in the middle of his home if he did not

14   answer questions.  Mr. James, frightened, tearful, and denied legal counsel, gave

15   the agents, within Ms. Granger's earshot and at her direction, the combination to

16   the safe.  Firearms were located in the safe and confiscated.  Mr. James was

17   charged with violation of California Penal Code section 12280(b) in Tulare County

18   Superior Court, Case no. VCF260879.  Ms. Granger was not the prosecutor of that

19   action.  At no time did Ms. Granger play a legitimate role in any proceeding

20   against Mr. James.

21        18.    On or about February 3, 2012, the Tulare County Superior Court

22   issued an order in the mandamus case declaring that Ms. Granger's contention

23   that Mr. James had been convicted of a misdemeanor crime of domestic violence

24   was based on an argument of law so outside the realm of reasonableness and logic

25   that, were the Court to agree, it would violate its oath of office.  This argument by

26   Ms. Granger was offered as though it was the current state of the law rather than

27   a novel interpretation of it.  The State of California appealed that decision and

28   prevailed at the intermediate appellate level.  The California Supreme Court

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA 93291
(559) 636-0200

-5-

**THIRD AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
[42 U.S.C. §1983]; DEMAND FOR JURY TRIAL**

1  granted review of the case. The opinion of the Court of Appeal is of no force.

2      19.    A hearing on a motion to suppress evidence in the criminal case was

3  held before the Hon. Joseph Kalashian on February 8, 2013, after which the

4  charges were dropped and the case dismissed. During questioning, it was

5  revealed that if the State of California comes to learn that a person not currently

6  under investigation for some other crime may not be permitted to own or possess

7  guns because federal law prohibits them based on a potential prior conviction of a

8  misdemeanor crime of domestic violence, the State notifies them by letter or

9  otherwise contacts them and asks to have the weapons stored by a licensed third

10  party or the police pending a determination of the person's status.

11      20.    No letter was delivered to Mr. James, and no oral request was made

12  to him or to his counsel, despite his cooperative admission of gun possession in a

13  lawsuit in which he sought to address the question of whether he was allowed to

14  own them.

15  **IV.**

16  **CAUSE OF ACTION**

17  **DEPRIVATION OF CIVIL RIGHTS AND CONSPIRACY – 42 U.S.C. § 1983**

18  **[Against all Defendants]**

19      21.    Ms. Granger acted under color of state law by using her office to

20  advise state agents that Scott R. James had been convicted of a misdemeanor

21  crime of domestic violence. While the opinion was not still the subject of judicial

22  interpretation, she advised the officers to undertake a criminal investigation of Mr.

23  James. No reasonable officer of the Court could have believed such an exercise of

24  the legal advice would be consistent with a civil litigant's rights.

25      22.    Ms. Granger therefore withheld information she knew a reasonable

26  agent would include in a petition or otherwise consider important in his or her

27  own evaluation of whether to request a search warrant in order to ensure the

28  warrant would be requested and issued and Mr. James arrested. Ms. Granger

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA 93291
(559) 636-0200

-6-

1  knew Mr. James would be arrested because he had already testified that he had

2  guns – and had already purchased at least one gun with the State's full knowledge

3  – but withheld the information to which agents testified would be considerations

4  in their decision to seek or not seek a warrant.  Ms. Granger advised officers to

5  arrest and question him after having refused to allow Mr. James to be

6  accompanied by his attorney.

7       23.    On information and belief, Ms. Granger advised these officers for

8  personal gain to ensure victory in the summary judgment motion in Mr. James'

9  mandamus action.  On information and belief, no other person who has invited

10  review of their right to possess a firearm under the Gun Control Act has been

11  subject to a search of their home and subsequent criminal prosecution.  Indeed,

12  in cases involving peace officers who had spent years possessing firearms before

13  their status as potential MCDV convicts was determined have simply been

14  reassigned to non-firearm-carrying positions or dismissal.  Their challenges to the

15  state's determination did not prompt criminal investigations and threats of

16  imprisonment.  In doing the acts complained of, Ms. Granger used her position as

17  a non-prosecuting attorney in a prosecutorial office to advise criminal charges

18  against a civil litigant.

19       24.    Ms. Granger further acted under color of state law by advising agents

20  during the search of Mr. James' home.  During the search, her demeanor became

21  increasingly agitated as agents found nothing except the very firearms about

22  which Mr. James had filed a civil suit.

23       25.    Ms. Granger was able to undertake this misuse of power because she

24  was clothed with the authority of state law; so clothed by way of her employment

25  as an attorney with the state Attorney General's office.

26       26.    Ms. Granger undertook these actions under color of state law in

27  order to intimidate and publicly vilify Mr. James in retaliation for having done no

28  more than seek redress in the Courts for a declaration of his rights under the

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA 93291
(559) 636-0200

-7-

**THIRD AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
[42 U.S.C. §1983]; DEMAND FOR JURY TRIAL**

1    Second Amendment to the United State Constitution and several statutes. State
2    practice in such circumstances involved a letter asking for cooperative
3    relinquishment of firearms pending the determination. Mr. James' willingness to
4    be cooperative was patent: he had brought suit in which his purchase of a firearm
5    was alleged in the petition; he had testified under oath he had guns. Instead, Ms.
6    Granger withheld information from state agents and gave legal advice to them that
7    Mr. James had been convicted of a misdemeanor crime of domestic violence,
8    advice no reasonable attorney for the state Attorney General could believe was
9    true or, in the alternative, was deliberately indifferent to the constitutional
10   violation that occurred.

11        27.   Ms. Granger undertook these actions intentionally: she advised
12   officers to commence a criminal prosecution to gain advantage in a civil dispute in
13   which Mr. James admitted he owned guns and brought suit in an attempt to
14   confirm if that was or was not lawful; she attended the search of his home; she
15   advised officers on where to search.

16        28.   Mr. James is a member of a class of one [or a few], treated differently
17   than others without basis other than his exercise of constitutional right to
18   "petition the Government for a redress of grievances," guaranteed by the First
19   Amendment to the Constitution and made binding on the states by the Fourteenth
20   Amendment. Mr. James sought redress in mandamus in a case about his right to
21   bear arms; Ms. Granger singled him out for criminal prosecution because of it.
22   This unequal treatment was intentional and executed by design through Ms.
23   Granger's advice and participation in treatment she knew to be unequal and
24   based on Mr. James' exercise of rights.

25        29.   Ms. Granger violated Mr. James rights to redress, counsel, and to be
26   free of unreasonable search and seizure and ex post facto laws guaranteed by the
27   United States Constitution.

28        30.   Chief Lindley directed Ms. Granger to engage in this conduct. Chief

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA 93291
(559) 636-0200

-8-

**THIRD AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**
**[42 U.S.C. §1983]; DEMAND FOR JURY TRIAL**

1  Lindley was, at the time, the Acting Chief of the Bureau of Firearms. Ms. Granger

2  has testified under oath that Chief Lindley directed her to undertake these

3  actions, and that she agreed to do so.

4      31.    This agreement to violate Ms. James' civil rights was made by and

5  between Ms. Granger and Mr. Lindley, who was also acting under the color of law

6  by using his office, as Ms. Granger did.  Acts taken in furtherance of this

7  conspiracy include Ms. Granger withholding information from agents after causing

8  the search warrant to be issued, information that, when it came to light in open

9  court, led to the quashing of the search warrant and dismissal of all charges that

10 arose from it.   These acts, particularly the withholding of information, was

11 undertaken by the conspirators to further the goal of the conspiracy which was to

12 intimidate a litigant and retaliate against that litigant for having exercised his first

13 amendment rights to redress, and as alleged above.

14     32.    Mr. James has suffered general and special damages including but

15 not limited to, costs and fees for defense of the criminal matter, lost wages/profits,

16 constitutional deprivations, interference with business relations, sleepless nights,

17 ignominy, and humiliation, loss of comfort and enjoyment of his home, all in an

18 amount to be proven and found at trial.

19                                **V.**

20                             **PRAYER**

21     WHEREFORE, Scott James prays for judgment against the Defendants and

22 an award:

23     1.     For general and special damages;

24     2.     For actual and consequential damages;

25     3.     For compensatory damages;

26     4.     For attorney fees [under the Civil Rights Act, 42 U.S.C. § 1988];

27     5.     For punitive damages;

28     6.     For costs of suit;

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA 93291
(559) 636-0200

-9-

**THIRD AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
[42 U.S.C. §1983]; DEMAND FOR JURY TRIAL**

1    7.    For whatever other relief the Court deems proper.

2   Dated: May 28, 2015                HERR PEDERSEN & BERGLUND

3

4                                      By: /s/ Leonard C. Herr
                                            LEONARD C. HERR
                                            Attorneys for Plaintiff
5                                           SCOTT R. JAMES

6

7

8                               **JURY DEMAND**

9

10     Plaintiff, SCOTT R. JAMES, demands trial by jury.

11   Dated: May 28, 2015                HERR PEDERSEN & BERGLUND

12                                     By: /s/ Leonard C. Herr
                                            LEONARD C. HERR
13                                          Attorneys for Plaintiff
                                            SCOTT R. JAMES
14

15

16

17

18

19

20

21

22

23

24

25

26

27   F:\Client Files\James, Scott (1369-00)\1369.12 James v. Granger\Pleadings\Third Amended Complaint.doc

28

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

-10-

**THIRD AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
[42 U.S.C. §1983]; DEMAND FOR JURY TRIAL**

**TORT-ECF**

| | |
|---|---|
| **From:** | caed_cmecf_helpdesk@caed.uscourts.gov |
| **Sent:** | Thursday, May 28, 2015 3:47 PM |
| **To:** | CourtMail@caed.uscourts.dcn |
| **Subject:** | Activity in Case 1:13-cv-00983-AWI-SKO James v. Granger Amended Complaint. |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**Eastern District of California - Live System**

**Notice of Electronic Filing**

The following transaction was entered by Herr, Leonard on 5/28/2015 at 3:46 PM PDT and filed on 5/28/2015
**Case Name:**       James v. Granger
**Case Number:**    1:13-cv-00983-AWI-SKO
**Filer:**                Scott R. James
**Document Number:** 51

**Docket Text:**
**THIRD AMENDED COMPLAINT against Kimberly Granger by Scott R. James.(Herr, Leonard)**

**1:13-cv-00983-AWI-SKO Notice has been electronically mailed to:**

Catherine A. Woodbridge Guess     catherine.woodbridge@doj.ca.gov, alberto.gonzalez@doj.ca.gov, michelle.schoenhardt@doj.ca.gov, tort-ecf@doj.ca.gov

Leonard Charles Herr     lherr@hpblaw.net, abezera@hpblaw.net, athompson@hpblaw.net, ccurtiss@hpblaw.net, fgarcia@hpblaw.net, kpfoor@hpblaw.net, mrast@hpblaw.net, rochoa@hpblaw.net, rstatler@hpblaw.net, sflores@hpblaw.net

**1:13-cv-00983-AWI-SKO Electronically filed documents must be served conventionally by the filer to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1064943537 [Date=5/28/2015] [FileNumber=746696-0
] [16fd62d1d43bbe973a502b0e1214ce327a34bc057f71de995b7c594f585c27c2b04
2ff8515bb8b8fd3607ecb0b603790706b5f6aca7babd2b374d3880a1d09e4]]