KAMALA D. HARRIS, State Bar No. 146672
Attorney General of California
ALBERTO L. GONZALEZ, State Bar No. 117605
Supervising Deputy Attorney General
CATHERINE WOODBRIDGE GUESS, State Bar No. 186186
Deputy Attorney General
　1300 I Street, Suite 125
　P.O. Box 944255
　Sacramento, CA 94244-2550
　Telephone: (916) 445-8216
　Fax: (916) 322-8288
　E-mail: Catherine.Woodbridge@doj.ca.gov
*Attorneys for Defendants Stephen Lindley and Kimberly Granger*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| SCOTT R. JAMES,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>KIMBERLY GRANGER,<br><br>　　　　　　　　　　Defendant. | 1:13-CV-0983 AWI SKO<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:　　　　December 7, 2015<br>Time:　　　　1:30 p.m.<br>Courtroom:　　2<br>Judge:　　　　The Honorable Anthony W. Ishii<br>Trial Date:　　May 17, 2016<br>Action Filed:　June 26, 2013 |

**TO PLAINTIFF AND HIS ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on December 7, 2015 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 2 the above-entitled court, located at 2500 Tulare Street, Fresno, California, Defendants Stephen Lindley and Kimberly Granger will and hereby do move for summary judgment pursuant to Federal Rules of Civil Procedure 56, on the grounds that there is no evidence to support Plaintiff's sole cause of action for violation of the Equal Protection Clause. In addition, Plaintiff's claim fails because Defendants are entitled to immunity.

///

Defendants' motion is based upon this Notice of Motion and Motion, Memorandum of Points and Authorities, the Request for Judicial Notice, the declarations of Luke Powell, Kimberly Granger, Stephen Lindley, and Catherine Guess, all papers and pleadings on file in this matter, and such oral and written material as may be presented at the hearing of this motion or any other additional evidence as may be considered at the hearing.

Dated: November 3, 2015

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
ALBERTO L. GONZALEZ
Supervising Deputy Attorney General

s/ *Catherine Woodbridge Guess*

CATHERINE WOODBRIDGE GUESS
Deputy Attorney General
*Attorneys for Defendants Stephen Lindley and Kimberly Granger*

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

In October 1996, Plaintiff was arrested and charged with inflicting corporal injury on his wife in violation of California Penal Code § 273.5. Thereafter, Plaintiff was convicted of battery (California Penal Code § 242). Under federal law, Plaintiff's battery conviction a misdemeanor crime of domestic violence (MCDV) for which there is a life-time ban from owning or possessing a firearm. 18 U.S.C. § 992(g)(9). Between his 1996 battery conviction and January 2011, Plaintiff attempted to purchase firearms on numerous occasions.

In 2011, Plaintiff filed a mandamus action in the Superior Court of California, Tulare Count, challenging the State of California/Bureau of Firearms ("Department") determination that Plaintiff is prohibited from owning or possessing firearms. Deputy Attorney General Kimberly Granger was assigned to represent the Department in that lawsuit. During his deposition in the mandamus action, Plaintiff admitted owning and possessing firearms in violation of the law. Ms. Granger reported the deposition proceedings to her client. When advised that a prohibited person was in possession of firearms, Stephen Lindley, Chief of the Department, directed his agents to investigate. Special Agent Luke Powell investigated, obtained a search warrant, and uncovered more than 30 firearms and over 4,000 rounds of ammunition in Plaintiff's home. Plaintiff was arrested and criminally prosecuted by the Tulare County District Attorney.

Plaintiff sues Ms. Granger and Chief Lindley claiming the arrest that resulted from his admission to being a prohibited person in possession of firearms violated the Equal Protection Clause because he was singled out for disparate treatment. Summary judgment is proper because there is no evidence to support Plaintiff's claim that Defendants treated Plaintiff differently than those similarly situated. Moreover, immunity bars Plaintiff's claim.

## II. PROCEDURAL HISTORY

### A. State Court Civil Writ of Mandamus.

Because Plaintiff was convicted of battery on his wife, he is prohibited from owning or possessing firearms. 18 U.S.C. § 992(g)(9). Despite his life-time prohibition, Plaintiff attempted

3

on numerous occasions to purchase firearms. Plaintiff was continually denied because of his prohibited status.

In 2011, Plaintiff filed a writ of mandamus in the Superior Court of California, Tulare County challenging the Department's determination that Plaintiff is prohibited from owning or possessing firearms. Plaintiff's writ of mandamus was initially granted by the Tulare County Superior Court. The State of California appealed the trial court's order, and on September 24, 2013, California's Fifth District Court of Appeal reversed the trial court's decision. Plaintiff then filed a petition for review with the California Supreme Court.

The California Supreme Court granted review but stayed the petition pending the outcome of a United States Supreme Court case dealing with whether a conviction for battery meets the criteria for a MCDV. In *United States v. Castleman*, 134 S. Ct. 1405, 88 L. Ed. 2d 426 (2014), the Supreme Court held that a MCDV includes battery if physical force is an element of battery. California Penal Code § 242 defines battery as "any willful and unlawful use of force or violence upon the person of another." Thus a battery conviction under California Penal Code § 242 meets the criteria for a lifetime ban on ownership of firearms under the MCDV prohibition.

Following the decision in *United States v. Castleman*, the California Supreme Court remanded the matter to the Fifth District Court of Appeal. On August 26, 2014, the Fifth District Court of Appeal affirmed its 2013 order reversing the Tulare County Superior Court and denying Plaintiff's request for relief. *James v. State of California*, 229 Cal.App.4th 130, 176 Cal. Rptr. 3d 806 (Cal. App. 5th Dist. 2014). Plaintiff filed another petition for review with the California Supreme Court, but on November 19, 2014, the California Supreme Court denied Plaintiff's request for review. Thus, Plaintiff did not prevail in his mandamus action.

**B.    State Court Criminal Case.**

In October 2011, after Plaintiff admitted under oath that he knew he was considered a prohibited person and that he was in possession of numerous firearms, the Department obtained a search warrant for Plaintiff's home. The search uncovered one unregistered assault weapon, fourteen rifles, eight shotguns, seven handguns, twenty-nine handgun and rifle magazines and four thousand thirty-three rounds of various caliber ammunition. Plaintiff was arrested and

4

charged with violation of California Penal Code § 12280(b) (unlawful possession of assault weapon). Plaintiff was prosecuted by the Tulare County District Attorney. Following a motion to suppress, the criminal case against Plaintiff was dismissed[1].

C.  **Federal Case.**

Plaintiff filed this matter June 26, 2013, alleging a single cause of action against Deputy Attorney General Kimberly Granger for violation of 42 U.S.C. § 1983. Because the Complaint failed to state sufficient facts to support his claim, Ms. Granger moved to dismiss the Complaint. Docket No. 7. Prior to hearing on the motion, Plaintiff amended his Complaint to allege an equal protection claim against Deputy Attorney General Granger based on a class of one argument. Docket No. 10. Deputy Attorney General Granger filed a motion to dismiss the First Amended Complaint for failure to state a claim. Docket No. 12. On February 14, 2014, the Court granted the motion with leave to amend. Docket No. 20.

On March 28, 2014, Plaintiff filed a Second Amended Complaint again asserting an equal protection claim based on a class of one argument. Docket No. 22. The Court denied Ms. Granger's motion to dismiss on the basis that the facts alleged in the Second Amended Complaint, if true, state an equal protection claim. Docket No. 29.

On April 15, 2015, Plaintiff moved to amend his complaint a third time. Docket No. 43. On May 26, 2015, the Court granted Plaintiff's motion to amend. Docket No. 50. The Third Amended Complaint alleges a single cause of action for violation of the Equal Protection Clause based on a class of one argument against Deputy Attorney General Granger and Chief Lindley. Docket No. 51. The Court has construed Plaintiff's class of one claim to include "those persons who may not be permitted to possess firearms because of a potential conviction of a misdemeanor crime of domestic violence." Docket No. 65.

---

[1] Plaintiff's initial motion to suppress was denied by Tulare County Superior Court Judge Hillman. Judge Hillman is the judge who issued the search warrant. On February 8, 2012, Plaintiff moved for reconsideration of his prior motion to suppress. Tulare Superior Court Judge Kalashian heard the matter and granted Plaintiff's motion for reconsideration. Judge Kalashian opined that there is a "clear conflict" between the *Brady* law and California law.

### III. UNDISPUTED FACTS

In 1996, Plaintiff was convicted of violation of California Penal Code § 242 (battery) on his wife. Undisputed Fact No. 1 hereinafter "UDF". The State of California/Bureau of Firearms ("Department") considers Plaintiff's battery conviction a misdemeanor crime of domestic violence (MCDV). UDF No. 2. Federal law prohibits anyone convicted of a MCDV from owning or possessing a firearm. UDF No. 3.

Between his 1996 conviction and January 2011, Plaintiff attempted to purchase firearms on at least eight occasions. UDF No. 4. Plaintiff was denied purchase on seven occasions because of his battery conviction. UDF No. 5. On each occasion that Plaintiff was denied purchase, he was issued a letter from the Department informing Plaintiff that he is a prohibited person. UDF No. 5. On January 30, 2011, the Department again notified Plaintiff that he was a prohibited person and not allowed to purchase or possess firearms. UDF No. 7.

At all times relevant to this action, Stephen Lindley was acting Chief and Chief of the State of the Department. UDF No. 8. At all times relevant to this action, Kimberly Granger was a Deputy Attorney General for the State of California. UDF No. 9. Beginning in 2010, Ms. Granger was assigned to the Department to act as legal counsel, including defending the Department in any lawsuits. UDF No. 10. As part of her job, Ms. Granger reported to Chief Lindley on the status of litigation against the Department, including providing any reports or summaries regarding law and motion and discovery. UDF No. 11. Ms. Granger's job duties also include providing legal advise to agents with the Department when questions arise during execution of a search warrant. UDF No. 12.

On February 15, 2011, Plaintiff filed a writ of mandamus in the Superior Court of California, County of Tulare challenging his prohibited status. UDF N. 13. Deputy Attorney General Granger was assigned to handle the defense of the writ on behalf of the Department. UDF No. 14. The Department considers Plaintiff a prohibited person unless and until a court deems otherwise. UDF No. 15.

As part of the litigation process, Ms. Granger took the deposition of Plaintiff on July 25, 2011. UDF No. 16. During the deposition, Plaintiff admitted possession of firearms. UDF No.

17. Ms. Granger provided a summary of the information obtained from Plaintiff's deposition to Chief Lindley, her client, including Plaintiff's admission that he possessed firearms in violation of federal law. UDF No. 18.

When the Department learns that a prohibited person is in possession of firearms, it investigates. UDF No. 19. If the prohibited person admits possession of firearms in violation of the law, the Department seeks a search warrant. UDF No. 20. It has never been the policy of the Department to send a letter to a prohibited person known to be in possession of firearms that asks the person to voluntarily relinquish his or her firearms and ammunition. UDF No. 21.

When Chief Lindley learned that a prohibited person admitted possessing firearms, he notified Special Agent in Charge John Marsh, who is in charge of operation and enforcement for the Northern California area for the Department, that a prohibited person admitted being in possession of firearms. UDF No. 22. Department Supervisor Lee Carega requested that Special Agent Luke Powell investigate the matter. UDF No. 23. Neither Chief Lindley nor Ms. Granger investigated the matter. UDF No. 24.

Agent Luke Powell investigated the matter using the Automated Firearms Systems (AFS), Armed Prohibited System (APS), Domestic Violence Restraining Order System (DVROS), Assault Weapons Registry (AWR), Automated Criminal History System (ACHS), Wanted Persons System (WPS), and Mental Health Firearms Prohibited System (MHPS), and obtained copies of the 1996 criminal matter, including the police report regarding Plaintiff's 1996 arrest. UDF No. 25. Agent Powell also obtained a part of the civil deposition transcript in the mandamus case in which Plaintiff admitted owning firearms. UDF No. 26. Agent Powell obtained Plaintiff's application for purchase of firearms in January 2011. UDF No. 27. In that application, Plaintiff failed to identify his residence as required and failed to identify his prior criminal convictions. UDF No. 28.

Agent Powell prepared a request for search warrant of Plaintiff's residence and vehicles. UDF No. 29. Ms. Granger did not assist in preparing nor prepare the search warrant. UDF No. 30. Ms. Granger did not review the request for search warrant. UDF No. 31. Chief Lindley did not assist in preparing, prepare or review the request for search warrant. UDF No. 32.

7

On October 4, 2011, Tulare County Judge Hillman issued the search warrant. UDF No. 33. On October 13, 2011, the search warrant of Plaintiff's residence and vehicles was executed. UDF No. 34. Ms. Granger did not order or direct the search of Plaintiff's home or seizure of his firearms. UDF No. 35.

The search of Plaintiff's home uncovered more than 30 firearms and over 4,000 rounds of ammunition. UDF No. 36. In addition, a January 30, 2011 letter from the Department to Plaintiff notifying him that he was prohibited from owning or purchasing firearms was found in Plaintiff's gun safe. UDF No. 37.

Following the search, Agent Powell arrested Plaintiff. UDF No. 38. At no time did Ms. Granger direct Department agents to arrest Plaintiff. UDF No. 39. At no time did Chief Lindley direct Department agents to arrest Plaintiff. UDF No. 40. The Tulare County District Attorney prosecuted Plaintiff for violation of Penal Code § 12280(b) (assault weapon). UDF No. 41. At no time did Chief Linley or Ms. Granger single out Plaintiff for disparate treatment. UDF No. 42.

## IV. LEGAL STANDARD

Summary judgment procedure is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327; 106 S. Ct. 2548; 91 L. Ed. 2d 265 (1986). Summary judgment is appropriate when it is demonstrated that there exists no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 586; 106 S. Ct. 1348; 89 L. Ed. 2d 538 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(c); *Matsushita*, 475 U.S. at 586, n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might effect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248; 106 S. Ct. 2505; 91 L. Ed. 2d 202 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). Inferences cannot be drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-1245 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902, (9th Cir. 1987). The opposing party "must do more than simply show there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

V. **SUMMARY JUDGMENT IS PROPER**

    A. **There is No Evidence to Support Plaintiff's Sole Cause of Action for Violation of the Equal Protection Clause.**

The Equal Protection Clause ensures that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985). Where state action does not implicate a fundamental right or a suspect classification, the plaintiff can establish a "class of one" equal protection claim by demonstrating that he "has been intentionally treated differently from others similarly situated and that there is

no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).

Plaintiff's equal protection claim is premised on a class of one. Third Am. Compl. ¶ 28. It is undisputed that Plaintiff was not singled out for disparate treatment by Defendants. UDF No. 42. Rather, Defendants treated Plaintiff is a manner consistent with California law and federal law as well as normal law enforcement practices.

Under federal law, anyone convicted of a MCDV is prohibited for life from owning or possessing firearms. UDF No. 3. Plaintiff was convicted of a MCDV. UDF Nos. 1, 2. Plaintiff admitted possessing firearms. UDF No. 17. Thus, Plaintiff was committing a crime. 18 U.S.C. § 992(g)(9).

When the Department learns that a prohibited person is in possession of firearms, it investigates. UDF No. 19. Where the prohibited person admits possession of firearms, the Department seeks a search warrant. UDF No. 20. Here, the Department learned that a prohibited person was in possession of firearms. UDF No. 18. Chief Lindley therefore requested an investigation. UDF Nos. 19, 22. After investigating Plaintiff for possible violation of 18 U.S.C. § 992(g)(9), Agent Powell obtained a search warrant. UDF Nos. 25-29, 33. Neither Ms. Granger nor Chief Lindley were involved in obtaining the search warrant. UDF Nos. 30-32. Nor did they direct Agent Powell to arrest Plaintiff following the search. UDF Nos. 38-40. The undisputed facts establish Plaintiff was not singled out for disparate treatment. UDF Nos. 19, 20 ,22, 30-32, 38-40 ,42.

In order to overcome summary judgment, Plaintiff must produce evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586, n.11. It is undisputed that the Department treated Plaintiff the way it would treat any prohibited person who admits possessing firearms in violation of the law. UDF Nos. 1, 2, 3, 17, 19, 20 ,22. Deputy Attorney General Granger, consistent with her job duties for the Department, reported Plaintiff's admissions at deposition to her client. UDF Nos. 9, 10 ,11, 14, 18. Chief Lindley, consistent with his practices, requested investigation of a prohibited person who admitted possessing firearms. UDF Nos. 19,

10

22. But neither Deputy Attorney General Granger nor Chief Lindley investigated Plaintiff. UDF No. 24. The undisputed evidence establishes that these Defendants did not single out Plaintiff for disparate treatment. UDF Nos. 11, 14, 16, 18, 19, 20 24, 30-32, 38-40, 42. Because Plaintiff has no admissible evidence to overcome the undisputed facts, summary judgment is proper.

### B. Immunity Bars Plaintiff's Claim.

#### 1. Absolute Immunity Bars Plaintiff's Claim Against Granger.

Absolute prosecutorial immunity applies to actions brought under § 1983 as long as the attorney's conduct is intimately associated with the judicial process. *See Burns v. Reed*, 500 U.S. 478, 486, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991); *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir. 2003). Absolute immunity is not limited to criminal actions. *See Torres v. Goddard*, 793 F.3d 1046 (9th Cir. 2015). Absolute immunity attaches when the attorney is performing the traditional functions of an advocate. *Kalina v. Fletcher*, 552 U.S. 118, 131, 118 S.C.t. 502, 139 L. Ed. 2d 471 (1997).

The undisputed evidence establishes that Ms. Granger's job as Deputy Attorney General encompasses reporting on the status of litigation, including providing any reports or summaries regarding law and motion and discovery. UDF Nos. 10, 11. In this case, it is undisputed that Ms. Granger was in the course and scope of her job as an attorney for the Department when she reported Plaintiff's admission to owning firearms. UDF Nos. 9, 10, 15, 16 ,17, 18. Ms. Granger did not investigate the matter nor did she prepare or seek a search warrant. UDF Nos. 24, 30, 31. Ms. Granger did not direct agents at the search or arrest Plaintiff. UDF Nos. 35, 39. Because all of Ms. Granger's actions are in her role as attorney for the Department, she is entitled to absolute immunity.

#### 2. Qualified Immunity Bars Plaintiff's Claim.

Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). A two-step process exists for determining whether qualified immunity exists: 1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right that a reasonable person would

11

have known, and 2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223 (2009).

If the court concludes a right is not clearly established, the official is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). If a right is clearly established, an official is not entitled to qualified immunity unless a reasonable official would not have known that his conduct violated the clearly established right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). But if the state actor could have reasonably, albeit mistakenly, believed that his conduct did not violate a clearly established constitutional right, then the action will receive qualified immunity. *Saucier*, at 205-06, *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001).

To determine whether qualified immunity applies, the court must consider the application of the right in the specific context in question. *Brewster v. Bd. of Educ. Of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 977 (9th Cir. 1998). In so doing, the court considers the "information possessed" by the state actor at the time of his or her conduct. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Qualified immunity analysis is deferential to the government official: "[a court] must look at the situation as a reasonable officer in [the defendant's] position could have perceived it." *Marquez v. Gutierrez*, 322 F.3d 689, 693 (9th Cir. 2003).

This Court determined that "the issue is whether the Defendants reasonably believed that the fact that Plaintiff had chosen to have his rights determined by way of mandamus action justified a treatment of Plaintiff that deviated substantially from the treatment of other similarly situated individuals." Docket No. 65 at p. 7:18-21. There is no evidence to support such a claim.

Congress enacted the Gun Control Act of 1968 to "keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background or incompetency." *Barrett v. United States,* 423 U.S. 212, 220 (1976). The Lautenberg Amendment to the Gun Control Act of 1968 extends the prohibition to include any person "who has been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 992(g)(9).

The Department considers Plaintiff prohibited unless a court determines otherwise. UDF No. 15. Therefore, Plaintiff's prohibited status was not changed simply because he filed for

mandamus relief. Plaintiff was a prohibited person for the duration of his litigation with the Department. Ultimately, Plaintiff's mandamus request was denied.

The undisputed facts establish that when the Department learns that a prohibited person is in possession of firearms it investigates and when a prohibited person admits possessing firearms a search warrant is sought. UDF Nos. 19, 20. Plaintiff may argue that instead of being arrested – as it normal practice – he should have been sent a letter asking him to voluntarily relinquish his firearms. There is no evidence that such letters have ever been sent to any prohibited person in possession of firearms. UDF No. 21. Likewise, there was no requirement or policy by the Department to make such a demand. It defies logic to ask a person who should not be in possession of firearms in the first place to voluntarily relinquish their weapons.

Plaintiff is prohibited from possessing firearms. 18 U.S.C. § 992(g)(9). Moreover, Plaintiff knew he was prohibited from possessing firearms. In addition to being denied purchase on at least seven occasions, Plaintiff was found in possession of a letter from the Department notifying him that he was prohibited. UDF Nos. 5, 37. Should Plaintiff argue that he would have voluntarily relinquished his firearms, then why didn't he simply do that? Nothing was preventing Plaintiff from complying with the law or relinquishing the weapons that should have never been in his possession.

Because Plaintiff was a prohibited person who admitted owning firearms in violation of federal law, Chief Lindley simply requested that the matter be investigated. UDF No. 22. There is no evidence that Chief Lindley or Deputy Attorney General Granger participated any further in the investigation once it was assigned out. UDF Nos. 24, 30-32. Likewise, neither Chief Lindley nor Ms. Granger were involved in arresting Plaintiff. UDF Nos. 38-40. The Tulare County District Attorney, not Chief Lindley nor Ms. Granger, was responsible for the criminal prosecution of Plaintiff. UDF No. 41. There is no evidence that Chief Lindley or Ms. Granger treated Plaintiff in a manner that deviated substantially from the treatment of any other prohibited person in possession of firearms. As a result, Defendants are entitled to qualified immunity and summary judgment is proper.

To the extent Plaintiff alleges the Defendants singled him out for disparate treatment because of his MCDV status, there is no legal support for such a claim. It is undisputed that Plaintiff was convicted of battery of his wife. UDF No. 1. Under oath, Plaintiff admitted possessing firearms in violation of the law. UDF No. 17. The United States Supreme Court opined that a MCDV includes battery if physical force is an element of battery. *United States v. Castleman*, 134 S. Ct. 1405. California Penal Code § 242 defines battery as "any willful and unlawful use of force or violence upon the person of another." Thus, Defendants' belief that Plaintiff's battery conviction constituted a MCDV was reasonable. In fact, both the California Fifth Appellate District Court and the United States Supreme Court agree that Plaintiff's battery conviction meets the criteria of MCDV and prohibits Plaintiff from owing or possessing firearms. As a result, Defendants are entitled to qualified immunity and summary judgment is proper.

## VI.  CONCLUSION

There are no facts to support Plaintiff's class of one equal protection claim against Defendants. Moreover, Defendants are immune from liability. Therefore, Defendants Kimberly Granger and Chief Lindley respectfully request that the Court grant summary judgment in their favor and against Plaintiff.

Dated: November 3, 2015

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
ALBERTO L. GONZALEZ
Supervising Deputy Attorney General

s/ *Catherine Woodbridge Guess*

CATHERINE WOODBRIDGE GUESS
Deputy Attorney General
*Attorneys for Defendants Stephen Lindley and Kimberly Granger*

SA2013309877
32261873