1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  ALBERTO L. GONZALEZ , State Bar No. 117605
   Supervising Deputy Attorney General
3  CATHERINE WOODBRIDGE GUESS, State Bar No. 186186
   Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone:  (916) 445-8216
6    Fax:  (916) 322-8288
     E-mail:  Catherine.Woodbridge@doj.ca.gov
7  *Attorneys for Defendants Stephen Lindley and Kimberly
   Granger*

8

9                IN THE UNITED STATES DISTRICT COURT

10          FOR THE EASTERN DISTRICT OF CALIFORNIA

11                        FRESNO DIVISION

12

| 13 | SCOTT R. JAMES, | 1:13-CV-0983 AWI SKO |
|---|---|---|
| 14 | | |
| 15 | Plaintiff, | **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| 16 | v. | |
| 17 | KIMBERLY GRANGER, | Date:        December 7, 2015 |
| 18 | Defendant. | Time:        1:30 p.m.<br>Courtroom:  2 |
| 19 | | Judge:       The Honorable Anthony W. Ishii |
| 20 | | Trial Date:  May 17, 2016<br>Action Filed:  June 26, 2013 |

21

22      Pursuant to Federal Rules of Evidence 201, Defendants Chief Stephen Lindley and

23  Kimberly Granger request the Court take judicial notice of the following:

24      1.    *James v. State of California*, 229 Cal.App.4th 130, 176 Cal. Rptr. 3d 806 (Cal. App.

25  5th Dist. 2014). A true and correct copy of the opinion is attached as DX 9.

26  / / /

27  / / /

28  / / /

1

1     Dated:  November 3, 2015                     Respectfully submitted,

2                                        KAMALA D. HARRIS
                                         Attorney General of California

3                                        ALBERTO L. GONZALEZ
                                         Supervising Deputy Attorney General

4

5                                     s/ *Catherine Woodbridge Guess*

6

7                                      CATHERINE WOODBRIDGE GUESS
                                       Deputy Attorney General
                                       *Attorneys for Defendants Stephen Lindley*

8                                          *and Kimberly Granger*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    SA2013309877
      32264556.doc.doc
28

2

# *James v. Granger, et al.*

# USDC, Eastern District
# Case No. 1:13-cv-0983-AWI-SKO

# EXHIBIT DX9



SCOTT R. JAMES, Plaintiff and Respondent, v. THE STATE OF CALIFORNIA et al., Defendants and Appellants.

F065003

COURT OF APPEAL OF CALIFORNIA, FIFTH APPELLATE DISTRICT

*229 Cal. App. 4th 130; 176 Cal. Rptr. 3d 806; 2014 Cal. App. LEXIS 773*

August 26, 2014, Opinion Filed

**SUBSEQUENT HISTORY:** Review denied by *James v. State, 2014 Cal. LEXIS 10863 (Cal., Nov. 19, 2014)*

**PRIOR HISTORY:**      [***1] APPEAL from a judgment of the Superior Court of Tulare County, No. VCU241117, Lloyd L. Hicks, Judge.
*James v. State, 171 Cal. Rptr. 3d 453, 324 P.3d 273, 2014 Cal. LEXIS 3315 (Cal., 2014)*

**SUMMARY:**

CALIFORNIA OFFICIAL REPORTS SUMMARY

The trial court granted mandate relief (*Code Civ. Proc., § 1085*) directing state officials to reconsider their denial of an application by a man with a misdemeanor conviction for domestic violence to purchase a firearm. (Superior Court of Tulare County, No. VCU241117, Lloyd L. Hicks, Judge.)

The Court of Appeal reversed, holding that the applicant's conviction under California's battery statute (*Pen. Code, § 242*) was a misdemeanor crime of domestic violence that precluded the applicant from purchasing a firearm (*18 U.S.C. §§ 921(a)(33)(A), 922(g)(9)*) because physical force is an element of the offense of battery, satisfied by even the slightest offensive touching with the requisite willfulness (*Pen. Code, § 7, subd. 1*), and the victim was the applicant's spouse. (Opinion by Detjen, J., with Gomes, Acting P. J., and Kane, J., concurring.)

**HEADNOTES** [*131]

CALIFORNIA OFFICIAL REPORTS HEADNOTES

**(1)  Weapons  §  3--Federal  Gun  Control Act--Misdemeanor  Crime  of  Domestic  Violence--What Constitutes.**--The federal Gun Control Act of 1968 (*18 U.S.C. § 921 et seq.*) prohibits possession of a firearm by any person convicted of a felony. Congress has extended the prohibition to include any person who has been convicted in any court of a misdemeanor crime of domestic violence (*18 U.S.C. § 922(g)(9)*). The act defines "misdemeanor crime of domestic violence" as an offense that (1) is a misdemeanor under state law, (2) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, and (3) is committed by the victim's current or former spouse (*§ 921(a)(33)(A)*).

**(2)  Mandamus  and  Prohibition  §ction 6--Mandamus--Conditions  Affecting  Issuance--Acts and Duties Enforceable--Clear, Present, and Ministerial Duty.**--A writ of mandate lies under *Code Civ. Proc., § 1085*, to compel the performance of a legal duty imposed on a government official. A writ may be issued against a public body. To obtain writ relief under *§ 1085*, the petitioner must show there is no other plain, speedy, and adequate remedy; the respondent has a clear, present, and ministerial duty to act in a particular way; and the petitioner has a clear, present and beneficial right to performance of that duty. A ministerial duty is one that is required to be performed in a prescribed manner under the mandate of legal authority without the exercise of discretion or judgment.

**(3)  Weapons  §  3--Federal  Gun  Control Act--Misdemeanor  Crime  of  Domestic  Violence--What Constitutes--Element of Force.**--Under the categorical approach, when a statute dictates that the predicate offense have enumerated elements, the court

must look only to the predicate offense rather than to the defendant's underlying acts to determine whether the required elements are present. In other words, courts determine the elements to which a defendant pleaded guilty by analyzing the statutory definition of the offense, not the defendant's underlying conduct. Accordingly, a court determining whether a person has been convicted of a misdemeanor crime of domestic violence under *18 U.S.C. § 921(a)(33)(A)(ii)* looks to the statute of the person's conviction to determine whether that conviction necessarily had, as an element, the use or attempted use of physical force.

**(4)   Criminal   Law   §   8--Mental State--Willfulness.**--When applied to the intent with which an act is done or omitted, "willful" implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage (*Pen. Code, § 7, subd. 1*). [*132]

**(5)   Assault   and   Battery   § 2--Criminal--Elements--Force.**--Both in tort and criminal law, the least touching may constitute battery. In other words, force against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark. The violent injury is not synonymous with bodily harm, but includes any wrongful act committed by means of physical force against the person of another, even though only the feelings of such person are injured by the act. Thus, any harmful or offensive touching constitutes an unlawful use of force or violence for purposes of *Pen. Code, § 242*. Even a slight touching may constitute a battery, if it is done in a rude or angry way.

**(6)   Weapons   §   3--Federal   Gun   Control Act--Misdemeanor   Crime   of   Domestic   Violence--What Constitutes--Element of Force.**--Although the definition of "use of physical force" in *18 U.S.C. § 921(a)(33)(A)(ii)* is a question of federal law, federal courts are bound by the California Supreme Court's interpretation of state law, including its determination of the elements of a state crime. A determination of the categorical reach of a state crime takes into consideration not only the state statute's language, but also the interpretation of that language in state judicial opinions.

**(7)   Statutes   § 29--Construction--Language--Legislative   Intent--Effectuating Purpose.**--A court's fundamental role in construing a statute is to ascertain the Legislature's intent, in order to effectuate the statute's purpose. Courts look first to the language of the statute, according the words their usual, ordinary meaning. The language is construed in the context of the statute as a whole and the overall statutory scheme, and courts give significance to every word, phrase, sentence and part of an act in pursuing the legislative purpose. If the language is clear and unambiguous, courts follow the plain meaning of the statute. The plain meaning rule, however, does not prohibit courts from determining whether the literal meaning of a statute comports with the statute's purpose as reflected by its express language. Courts should not give language of a statute its literal meaning if doing so would result in absurd consequences unintended by the Legislature. In that case, the intent of the law prevails over the letter, and the letter, if possible, will be read so as to conform to the spirit of the act. The same principles apply when construing a federal statute and ascertaining Congress's intent.

**(8)   Weapons   §   3--Federal   Gun   Control Act--Misdemeanor   Crime   of   Domestic   Violence--What   Constitutes--Element   of Force--Battery.**--Federal case law requires courts to attribute the common law meaning of "force" to the definition of a misdemeanor crime of domestic violence in [*133]   *18 U.S.C. § 921(a)(33)(A)* as an offense that has, as an element, the use or attempted use of physical force. Therefore, the requirement of physical force is satisfied, for purposes of *18 U.S.C. § 922(g)(9)*, by the degree of force that supports a common law battery conviction. At common law, the element of force in the crime of battery was satisfied by even the slightest offensive touching.

**(9)   Weapons   §   3--Federal   Gun   Control Act--Misdemeanor   Crime   of   Domestic   Violence--What   Constitutes--Element   of   Force.**--The knowing or intentional application of force is a use of force within the meaning of *18 U.S.C. § 921(a)(33)(A)*.

**(10)   Assault   and   Battery   § 2--Criminal--Elements--Mental State.**--Battery, under California law, is a general intent crime. This necessarily excludes criminal liability when the force or violence is accomplished with a lesser state of mind, i.e., criminal negligence. As with all general intent crimes, the required mental state entails only an intent to do the act that causes the harm. Thus, the crime of battery requires that the defendant actually intend to commit a willful and unlawful use of force or violence upon the person of another.

**(11) Courts § 39--Decisions and Orders--Doctrine of Stare Decisis--Opinions of United States Supreme Court--Interpretations   of   Federal   Statutes.**--California's courts are bound by the United States Supreme Court's interpretations of federal statutes.

**(12) Weapons § 3--Federal Gun Control Act--Misdemeanor Crime of Domestic Violence--What Constitutes--Battery.--**A conviction under California's battery statute (*Pen. Code, § 242*) was a misdemeanor crime of domestic violence within the meaning of *18 U.S.C. § 922(g)(9)*. The trial court erred in concluding otherwise.

[*Erwin et al., Cal. Criminal Defense Practice (2014) ch. 142, § 142.12;* 2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Public Peace and Welfare, § 239.]

**COUNSEL:** Kamala D. Harris, Attorney General, Douglas J. Woods, Assistant Attorney General, Peter A. Krause, Kimberly J. Granger and Benjamin M. Glickman, Deputy Attorneys General, for Defendants and Appellants.

Dooley, Herr, Pedersen & Berglund Bailey, Leonard C. Herr and Ron Statler for Plaintiff and Respondent.

**JUDGES:** Opinion by Detjen, J., with Gomes, Acting P. J., and Kane, J., concurring.

**OPINION BY:** Detjen, J.

**OPINION**
[*134] [**808]

**DETJEN, J.**--*Title 18 United States Code section 922(g)(9)*[1] prohibits the possession of firearms by those convicted of a "misdemeanor crime of domestic violence." *Section 921(a)(33)(A)(ii)* defines " 'misdemeanor crime of domestic violence,'" in pertinent part, as an offense that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon." *Penal Code section 242* defines battery as "any willful and unlawful use of force or violence upon the person of another." We conclude that a *Penal Code section 242* misdemeanor conviction has, as an element, the use of physical force for purposes of the prohibition dictated by [**809] *section 922(g)(9)*. Accordingly, we reverse the trial court's contrary finding.

1   Further undesignated statutory references are to title 18 of the United States Code.

**BACKGROUND AND [***2] PROCEDURAL HISTORY**

**(1)** The federal Gun Control Act of 1968 (*§ 921 et seq.;* the Act) has long prohibited possession of a firearm by any person convicted of a felony. (*United States v. Hayes (2009) 555 U.S. 415, 418 [172 L. Ed. 2d 816, 129 S. Ct. 1079].*) In 1996, Congress amended the Act to extend the prohibition to include any person "who has

been convicted in any court of a misdemeanor crime of domestic violence." (*§ 922(g)(9);* see *United States v. Hayes, supra, at p. 418.*) As pertinent here, the Act defines "misdemeanor crime of domestic violence" (MCDV) as an offense that (1) is a misdemeanor under state law, (2) "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon," and (3) is committed by the victim's current or former spouse. (*§ 921(a)(33)(A).*)[2]

2   *Section 921(a)(33)(A)(ii)* extends coverage to offenses meeting the statutory definition that are "committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim."

In October 1996, Scott R. James was arrested and charged with inflicting corporal injury on his (then) wife in violation of *Penal Code section 273.5.* Approximately two months later, James pled [***3] nolo contendere to battery, a misdemeanor violation of *Penal Code section 242,* and was placed on two years' probation. In 2008, James applied to be a reserve deputy sheriff. A background check was performed and James learned the State of California considered his 1996 conviction to be an MCDV. In 2011, James attempted to purchase a firearm, but his application was denied on the same ground: he had been convicted of an MCDV.

James filed a petition for writ of mandamus in the superior court seeking an order directing defendants, State of California, Office of the Attorney [*135] General of the State of California, and Kamala Harris, in her official capacity as Attorney General of the State of California (collectively, the State), to review the records of his conviction and determine whether any facts admitted in his plea included a domestic relationship with the victim, and, if not, to order the State to recognize James as a person not convicted of an MCDV. By the time of the hearing on the petition, however, the sole issue before the trial court was whether a conviction for violating *Penal Code section 242* was a valid categorical predicate offense for an MCDV.[3]

3   The parties agree no court records exist concerning the charge or the factual [***4] basis for the plea, although James expressly "does not dispute that he was in a domestic relationship with the person he was accused of battering."

Relying principally on *U.S. v. Belless (9th Cir. 2003) 338 F.3d 1063 (Belless)* and *CALCRIM No. 960* (Simple Battery), the trial court concluded it was not,

saying the federal statute (*§ 921(a)(33)(A)(ii)*) requires "'the violent use of force against the body of another'"--physical force that "'is not de minim[i]s'"--while the state battery statute (*Pen. Code, § 242*) can be violated by "'the slightest touching.'" The trial court found the State "failed to follow the mandate of the law by improperly construing a *§242 P.C.* conviction as categorically constituting a predicate offense under federal law for the purpose of finding a[n] MCDV." The trial court issued a writ of mandate and prohibition directing the [**810] State "to follow California law regarding the elements of *Penal Code section 242* in evaluating *Section 242* as a predicate offense, and not to act based on the conclusion that *Section 242* is a categorical predicate offense under a Federal law finding of misdemeanor crime of domestic violence (MCDV)."

The State appealed, asserting the trial court erred.

In our original opinion, the majority held that any harmful or offensive touching, as constitutes an element of battery [***5] under *Penal Code section 242*, is sufficient to constitute the "use of physical force" required to establish an MCDV under *section 921(a)(33)(A)(ii)*. Accordingly, we concluded James's conviction under the state statute was an MCDV within the meaning of *section 922(g)(9)*, and we reversed the judgment.[4]

> 4  The dissent disagreed, reasoning that to qualify as an MCDV, the state statute at issue must require more than de minimis force; it must have, as an element, a violent use of force capable of causing physical pain or injury to another person.

After our opinion was filed, the United States Supreme Court granted certiorari in *U.S. v. Castleman (6th Cir. 2012) 695 F.3d 582* (*Castleman I*), a case dealing with the interpretation of *sections 921(a)(33)(A)(ii)* and *922(g)(9)*. The California Supreme Court in turn granted review in the instant case and deferred further action pending the United States Supreme Court's [*136] consideration and disposition of *Castleman I*. On March 26, 2014, the United States Supreme Court issued its decision in *United States v. Castleman (2014) 572 U.S. ___ [188 L. Ed. 2d 426, 134 S.Ct. 1405]* (*Castleman II*)), whereupon the California Supreme Court transferred the present case back to us with directions to vacate our decision and reconsider the cause in light of *Castleman II*. Having reviewed the case in the context of that opinion, we again conclude James's conviction constitutes an MCDV within the [***6] meaning of *section 922(g)(9)*, and the trial court's contrary finding must be reversed.

## DISCUSSION

**(2)** James filed his petition in the superior court pursuant to *Code of Civil Procedure section 1085*. A writ of mandate lies under that statute "to compel the performance of a legal duty imposed on a government official. [Citation.]" (*Environmental Protection Information Center, Inc. v. Maxxam Corp. (1992) 4 Cal.App.4th 1373, 1380 [6 Cal. Rptr. 2d 665]*.) A writ may be issued against a public body. (*County of San Diego v. State of California (2008) 164 Cal.App.4th 580, 593 [79 Cal. Rptr. 3d 489]*.) "To obtain writ relief under *Code of Civil Procedure section 1085*, the petitioner must show there is no other plain, speedy, and adequate remedy; the respondent has a clear, present, and ministerial duty to act in a particular way; and the petitioner has a clear, present and beneficial right to performance of that duty. [Citation.] A ministerial duty is one that is required to be performed in a prescribed manner under the mandate of legal authority without the exercise of discretion or judgment." (*Ibid.*)

The standard of review is settled. "In reviewing a judgment granting a writ of mandate, we apply the substantial evidence standard of review to the court's factual findings, but independently review its findings on legal issues. [Citation.]" (*City of San Diego v. San Diego City Employees' Retirement System (2010) 186 Cal.App.4th 69, 78 [111 Cal. Rptr. 3d 418]*.) "Where, as here, the facts are undisputed and the issue involves statutory interpretation, we exercise our independent judgment [**811] and review the matter de novo. [***7] [Citation.]" (*Alliance for a Better Downtown Millbrae v. Wade (2003) 108 Cal.App.4th 123, 129 [133 Cal. Rptr. 2d 249]*.)

**(3)** The issue in this case is whether battery, as proscribed by *Penal Code section 242*, "has, as an element, the use or attempted use of physical force," so as to render it an MCDV within the meaning of *section 921(a)(33)(A)(ii)*.[5] In making this determination, we employ the categorical approach established [*137] in *Taylor v. United States (1990) 495 U.S. 575, 602 [109 L. Ed. 2d 607, 110 S. Ct. 2143]*. Under that approach, "when a statute dictates that the predicate offense have enumerated elements, [the] court must 'look only to the predicate offense rather than to the defendant's underlying acts to determine whether the required elements are present.' [Citation.]" (*U.S. v. Howell (8th Cir. 2008) 531 F.3d 621, 622*.) In other words, "courts determine the elements to which a defendant pleaded guilty by analyzing the statutory definition of the offense, not the defendant's underlying conduct. [Citation.]" (*U.S. v. Bonilla-Mungia (5th Cir. 2005) 422 F.3d 316, 320*.) Accordingly, "we look to the statute of [James's] conviction to determine whether that conviction *necessarily* 'ha[d], as an element, the use or attempted use of physical force ... .'" (*Castleman II, supra, 572 U.S. at p. ___ [134 S.Ct. at p. 1413]*, italics added.)[6]

5    Although the existence of a domestic relationship must be established beyond a reasonable doubt in a firearms possession prosecution under the Act, it "need not be a defining element of the predicate offense." (*United States v. Hayes, supra, 555 U.S. at p. 418*.)

6    Only if the prior conviction is for violating [***8] a " 'divisible statute' "--a statute containing alternative elements--may the " 'modified categorical approach' " be used. (*Descamps v. United States (2013) 570 U.S. ___, ___ [186 L. Ed. 2d 438, 133 S.Ct. 2276, 2281, 2284-2285]*; see *Castleman II, supra, 572 U.S. at p. ___ [134 S.Ct. at p. 1414]*.) Under that approach, "courts may look beyond the statute to certain 'conclusive records made or used in adjudicating guilt' in order to determine which particular statutory alternative applies to the defendant's conviction. [Citation.]" (*U.S. v. Bonilla-Mungia, supra, 422 F.3d at p. 320*.) Even under this approach, the record materials may not be used "to determine 'what the defendant and state judge must have understood as the factual basis of the prior plea.'" (*Descamps v. United States, supra, at p. ___ [133 S.Ct. at p. 2284]*.)

**(4)** *Penal Code section 242* defines a battery as "any willful and unlawful use of force or violence upon the person of another." "[W]hen applied to the intent with which an act is done or omitted, ['willful'] implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." (*Id., § 7, subd. 1*.)

**(5)** " ' "It has long been established, both in tort and criminal law, that 'the least touching' may constitute battery. In other words, *force* against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, [***9] and it need not leave any mark." [Citation.] [¶] "The 'violent injury' here mentioned is not synonymous with 'bodily harm,' but includes any wrongful act committed by means of physical force against the person of another, even although [*sic*] only the feelings of such person are injured by the act." [Citation.]' [Citation.]" (*People v. Colantuono (1994) 7 Cal.4th 206, 214, fn. 4 [26 Cal. Rptr. 2d 908, 865 P.2d 704]*, quoting *People v. Rocha (1971) 3 Cal.3d 893, 899-900, fn. 12 [92 Cal. Rptr. 172, 479 P.2d 372]*.) Thus, "[a]ny harmful or offensive touching constitutes an unlawful use [**812] of force or violence" for purposes of *Penal Code section 242*. (*People v. Martinez (1970) 3 Cal.App.3d 886, 889 [83 Cal. Rptr. 914]*; accord, *People v. Pinholster (1992) 1 Cal.4th 865, 961 [4 Cal. Rptr. 2d 765, 824 P.2d 571]*, [*138] disapproved on another ground in *People v. Williams (2010) 49 Cal.4th 405, 459 [111 Cal. Rptr. 3d 589, 233 P.3d 1000]*.) "Even a slight touching may constitute a battery, 'if it is done in a rude or angry way.' [Citation.]" (*People v. Hernandez (2011) 200 Cal.App.4th 1000, 1006 [133 Cal. Rptr. 3d 229]*, quoting *CALCRIM No. 960*.)

**(6)** The State contends that, because *Penal Code section 242* "specifically identifies 'violence' as an element of" battery under California law, said crime "necessarily includes the level of force required for an MCDV." Although the definition of "use of physical force" in the federal statute is a question of federal law, federal courts are bound by the California Supreme Court's "interpretation of state law, including its determination of the elements of" *Penal Code section 242*. (*Johnson v. United States (2010) 559 U.S. 133, 138 [176 L. Ed. 2d 1, 130 S. Ct. 1265] (Johnson)*.) Thus, a determination of the categorical reach of a state crime takes into consideration not only the state statute's language, but also the [***10] interpretation of that language in state judicial opinions. (See, e.g., *Johnson, supra, at p. 138*; *James v. United States (2007) 550 U.S. 192, 202-203 [167 L. Ed. 2d 532, 127 S. Ct. 1586]*; *Ortega-Mendez v. Gonzales (9th Cir. 2006) 450 F.3d 1010, 1016*.) Accordingly, we cannot ignore the long-settled judicial interpretation of the elements of *Penal Code section 242* in favor of reliance on the single statutory word "violence," as the State would have us do.[7]

7    Accordingly, we reject the State's argument that the trial court improperly considered *CALCRIM No. 960*.

The question, then, is whether *any* harmful or offensive touching, constituting as it does an element of battery under *Penal Code section 242*, is sufficient to constitute the "use of physical force" required under *section 921(a)(33)(A)(ii)* to render James's prior battery conviction an MCDV. The Act does not contain a definition of "physical force." Accordingly, we must determine whether Congress employed that term in such a manner as to require a particular quantum of force.

**(7)** "A court's fundamental role in construing a statute is to ascertain the Legislature's intent, in order to effectuate the statute's purpose. [Citation.] Courts look first to the language of the statute, according the words their usual, ordinary meaning. [Citations.] The language is construed in the context of the statute as a whole and the overall statutory scheme, and courts give significance to every word, phrase, [***11] sentence and part of an act in pursuing the legislative purpose. [Citation.] If the language is clear and unambiguous, courts follow the plain meaning of the statute. [Citation.] [¶] The 'plain meaning' rule, however, does not prohibit courts from determining whether the literal meaning of a statute comports with the statute's purpose as reflected by its express language.

[Citation.] Courts should not give language [*139] of a statute its literal meaning if doing so would result in absurd consequences unintended by the Legislature. [Citation.] In that case, the intent of the law prevails over the letter, and the letter, if possible, will be read so as to conform to the spirit of the act. [Citation.]" (*In re David S.* (2005) 133 Cal.App.4th 1160, 1164 [35 Cal. Rptr. 3d 309].) The same principles apply when construing a federal statute and ascertaining Congress's [**813] intent. (See, e.g., *Leocal v. Ashcroft* (2004) 543 U.S. 1, 9 [160 L. Ed. 2d 271, 125 S. Ct. 377]; see also *Castleman II, supra,* 572 U.S. at p. ___ [134 S.Ct. at p. 1410] [settled principle of interpretation is that, absent other indication, Congress intends to incorporate well-settled meaning of common law terms it uses].)

As the United States Supreme Court has stated, "This country witnesses more than a million acts of domestic violence, and hundreds of deaths from domestic violence, each year. [Citation.] Domestic violence often escalates [***12] in severity over time, [citations], and the presence of a firearm increases the likelihood that it will escalate to homicide, [citations]. '[A]ll too often,' as one Senator noted during the debate over *§922(g)(9),* 'the only difference between a battered woman and a dead woman is the presence of a gun.' [Citation.] [¶] Congress enacted *§922(g)(9),* in light of these sobering facts, to "'close [a] dangerous loophole'" in the gun control laws: While felons had long been barred from possessing guns, many perpetrators of domestic violence are convicted only of misdemeanors. [Citation.]" (*Castleman II, supra,* 572 U.S. at pp. ___ - ___ [134 S.Ct. at pp. 1408-1409], fn. omitted.)

Before *Castleman II* was decided, the federal circuits were sharply divided concerning Congress's intent and the quantum and type of physical force required to constitute "the use ... of physical force" (*§ 921(a)(33)(A)(ii)*) required for an MCDV. The First, Eighth, and Eleventh Circuits essentially took the position the phrase encompassed the application of *any* physical force. (E.g., *U.S. v. Griffith* (11th Cir. 2006) 455 F.3d 1339, 1342 ["'physical contact of an insulting or provoking nature'" made illegal by Ga. battery statute satisfied "'physical force'" requirement of *§ 921(a)(33)(A)(ii)*]; *U.S. v. Nason* (1st Cir. 2001) 269 F.3d 10, 18, 20 [Congress intended *§ 922(g)(9)* to encompass crimes characterized by application of any physical force; "offensive physical [***13] contact" prong of Maine's assault statute involved use of physical force]; *U.S. v. Smith* (8th Cir. 1999) 171 F.3d 617, 620-621 & fn. 2 [prong of Ia. assault statute that could be violated by commission of act intended to result in insulting or offensive physical contact contained element of physical force within meaning of *§ 921(a)(33)(A)(ii)*; insulting or offensive physical contact necessarily re-

quires physical force to complete].) The Fourth, Sixth, Ninth, and Tenth Circuits essentially took the contrary position--that *violent* use of force was required. (E.g., *Castleman I, supra,* 695 F.3d at pp. 586-587 [degree of physical force required by *§ 921(a)(33)(A)(ii)* is same as that required by *§ 924(e)(2)(B)(i),* which defines "'violent felony'" and which, under *Johnson, supra,* 559 U.S. 133, [*140] requires "*violent* force"];[8] *U.S. v. White* (4th Cir. 2010) 606 F.3d 144, 153 [**814] [same]; *U.S. v. Hays* (10th Cir. 2008) 526 F.3d 674, 678-679 & fn. 3 [Wyo. battery statute forbidding "'rude, insolent or angry' touching" did not categorically satisfy MCDV definition because it encompassed de minimis physical touches not rising to level of "'physical force'" contemplated by Congress]; *Belless, supra,* 338 F.3d at pp. 1067-1068 ["'physical force,'" as used in *§ 921(a)(33)(A)(ii),* means violent use of force against body of another individual; prior conviction under Wyo. battery statute did not qualify].) The one published California decision on the subject followed this line of cases, found *Johnson* applied, and concluded a battery [***14] conviction under *Penal Code section 242,* which could be based on a mere touching, did not amount to the use of "physical force" for MCDV purposes. (*Shirey v. Los Angeles County Civil Service Com.* (2013) 216 Cal.App.4th 1, 10-14 [156 Cal. Rptr. 3d 517].)

8   *Johnson* addressed the issue of whether the Florida felony offense of battery by "'[a]ctually and intentionally touch[ing]' another person" (*Johnson, supra,* 559 U.S. at p. 135) had, as an element, "'the use ... of physical force against the person of another'" (*§ 924(e)(2)(B)(i)*) and so constituted a "'violent felony'" under the Armed Career Criminal Act of 1984 (*§ 924(e)(1)*; the ACCA). (*Johnson, supra,* 559 U.S. at p. 135.) The Supreme Court observed that, in the common-law crime of battery, the element of "force" was satisfied "by even the slightest offensive touching. [Citations.]" (*Id. at p. 139.*) It declined to apply that definition to the ACCA, however. It stated: "We think it clear that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force--that is, force capable of causing physical pain or injury to another person. [Citation.] Even by itself, the word 'violent' in *§924(e)(2)(B)* connotes a substantial degree of force. [Citations.] When the adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even clearer." (*Johnson, supra, at p. 140.*)

The United States Supreme Court granted certiorari in *Castleman I* in order to resolve this split [***15] in authority. (*Castleman II, supra,* 572 U.S. at p. ___ [134 S.Ct. at p. 1410].) Finding no contrary indication, it con-

cluded "... Congress incorporated the common-law meaning of 'force'--namely, offensive touching--in *§921(a)(33)(A)*'s definition of a 'misdemeanor crime of domestic violence.'" (*Ibid.*)

After examining *Johnson, supra, 559 U.S. 133*, the high court determined the reasons given in that case for rejecting the common law meaning of "'force'" in defining a "'violent felony'" were "reasons to embrace it in defining a 'misdemeanor crime of domestic violence.'" (*Castleman II, supra, 572 U.S. at p. ___ [134 S.Ct. at p. 1410]*, fn. omitted.) First, because perpetrators of domestic violence routinely are prosecuted under generally applicable assault or battery laws, it made sense that Congress would classify as an MCDV the type of conduct that would support a common law battery conviction. (*Id. at p. ___ [134 S.Ct. at p. 1411]*.) Second, while the word "'violent'" or "'violence'" may connote a substantial degree of force when standing alone, "that is not true of 'domestic violence.' 'Domestic violence' is [*141] not merely a type of 'violence'; it is a term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context." (*Ibid.*) Third, under *Johnson*, a determination the defendant's crime was a "'violent felony'" would have classified him as an "'armed career [***16] criminal.'" (*Id. at p. ___ [134 S.Ct. at p. 1412]*.) Section 922(g), however, "groups those convicted of 'misdemeanor crimes of domestic violence' with others whose conduct does not warrant such a designation," including anyone addicted to a controlled substance, admitted to the United States under a nonimmigrant visa, or subject to a domestic restraining order. (*Castleman II, supra, 572 U.S. at p. ___ [134 S.Ct. at p. 1412]*.) Although the United States Supreme Court had "hesitated ... to apply the [ACCA] to 'crimes which, though dangerous, are not typically committed by those whom one normally labels "armed career criminals,"' [citation]" it saw "no anomaly in grouping domestic abusers convicted of generic assault or battery offenses together with the others whom *§922(g)* disqualifies from gun ownership." (*Ibid.*) Fourth, a contrary reading would have rendered *section 922(g)(9)* inoperative in many states at the time of its enactment. (*Castleman II, supra, at p. ___ [134 S.Ct. at p. 1413]*.) Mere offensive touching does not necessarily entail violent force. (*Ibid.*) "So if offensive touching did not constitute 'force' under *§921(a)(33)(A)*, then *§922(g)(9)* would have been ineffectual in at least 10 States--home to nearly thirty percent of the Nation's population--at the time of its enactment." (*Ibid.*, fn. omitted.) California is one of these states. (*Ibid.*; see *id. at p. ___ & fn. 5 [134 S.Ct. at p. 1419 & fn. [***17] 5]* [**815] (opn. of Scalia, J., conc. in part & conc. in judg.).)

**(8)** In light of the foregoing, the United States Supreme Court concluded: "In sum, *Johnson* requires that

we attribute the common-law meaning of 'force' to *§921(a)(33)(A)*'s definition of a 'misdemeanor crime of domestic violence' as an offense that 'has, as an element, the use or attempted use of physical force.' We therefore hold that the requirement of 'physical force' is satisfied, for purposes of *§922(g)(9)*, by the degree of force that supports a common-law battery conviction." (*Castleman II, supra, 572 U.S. at p. ___ [134 S.Ct. at p. 1413]*.) At common law, "the element of force in the crime of battery was 'satisfied by even the slightest offensive touching.' [Citation.]" (*Id. at p. ___ [134 S.Ct. at p. 1410]*; accord, *Johnson, supra, 559 U.S. at p. 139*.)

Applying this definition of "physical force," we think it readily apparent that a violation of *Penal Code section 242* "has, as an element, the use ... of physical force." (*§ 921(a)(33)(A)(ii)*.) This statutory construction furthers Congress's intent to keep guns out of the hands of perpetrators of domestic violence. As Senator Lautenberg stated in his remarks on the Senate floor urging passage of the amendment bearing his name, the objective was to "establish a policy of zero tolerance when it comes to guns and domestic violence." (Remarks of Sen. Lautenberg, 142 [***18] Cong. Rec. S10377 (daily ed. Sept. 12, 1996).) A zero tolerance policy is not promoted by requiring [*142] agencies (and ultimately courts) to differentiate between, for example, a slap and a punch, or a poke to the chest and a poke in the eye.

Rather than concede *Castleman II* has settled the issue, James argues we should part from its holding and come to a different conclusion. James claims *Castleman II* "was argued by a party with no interest in presenting Mr. James' narrow question of whether merely 'offensive touching' satisfies the requisite showing of force for MCDV, was based on an incorrect presumption, presumes imbecility among the many lawyers serving in the Congress at the time it passed the MCDV law, and gives rise to a discriminatory law in violation of the *due process clause of the Fifth Amendment*."

We disagree with James for several reasons. First, we fail to see how *Castleman II* is discriminatory. The opinion in no way prevents states from abandoning the common law definition of battery in favor of their own definitions thereof; rather, it settles the meaning of the phrase "the use ... of physical force" as used in a *federal statute--section 921(a)(33)(A)(ii)*. Presumably, "offensive touching" will not result in a conviction under state law [***19] in those states that have adopted a different degree of force requirement than is required in, for example, California. That this may mean the same conduct would result in an MCDV in one state, but not another, does not somehow mean *Castleman II* violates due process or equal protection principles; the whole point of *Castleman II* was to define what constitutes an MCDV *for the applicable federal statute*. Any disparity is simply

the result of states' legislative prerogative to define, within limits, their own state crimes. (See, e.g., *People v. Carlson (2011) 200 Cal.App.4th 695, 707 [133 Cal. Rptr. 3d 218]*; *People v. Perez (1993) 21 Cal.App.4th 214, 220 [26 Cal. Rptr. 2d 691]*.)

(9) Second, we reject James's claim that *Castleman II* casts doubt on the sufficiency of the mens rea required to be shown under *Penal Code section 242. Castleman II* observed: "[T]he knowing or intentional application of force is a 'use' of force." (*Castleman II, supra, 572 U.S. at p. ___* [**816] *[134 S.Ct. at p. 1415]*.) (10) Battery, under California law, is a general intent crime. (*People v. Colantuono, supra, 7 Cal.4th at p. 217*; *People v. Lara (1996) 44 Cal.App.4th 102, 107 [51 Cal. Rptr. 2d 402]*.) "This necessarily excludes criminal liability when the force or violence is accomplished with a 'lesser' state of mind, i.e., 'criminal negligence.' As with all general intent crimes, 'the required mental state entails only an intent to do the act that causes the harm ... .' [Citation.] Thus, the crime of battery requires that the defendant actually intend to commit a 'willful and unlawful [***20] use of force or violence upon the person of another.' [Citations.]" (*People v. Lara, supra, at p. 107*; cf. *People v. Williams (2001) 26 Cal.4th 779, 790 [111 Cal. Rptr. 2d 114, 29 P.3d 197]*; *People v. Hayes (2006) 142 Cal.App.4th 175, 180 [47 Cal. Rptr. 3d 695]*.) [*143]

Third, James says *Castleman II*'s determination that offensive touching is sufficient to constitute physical force under the MCDV statutes was unnecessary to that case's holding and, accordingly, is dicta. Even if we were to agree *Castleman II* could have been decided on nar-rower grounds (see *Castleman II, supra, 572 U.S. at pp. ___-___ [134 S.Ct. at pp. 1416-1422]* (opn. of Scalia, J., conc. in part & conc. in judg.)), this would not mean we would--or even could--simply ignore the high court majority's opinion.

(11) Finally, James claims that if Congress had meant "common law battery," it would have said "common law battery" in the MCDV statutes. This is simply an argument *Castleman II* was wrongly decided. We are, of course, bound by the United States Supreme Court's interpretations of federal statutes. (*Rohr Aircraft Corp. v. County of San Diego (1959) 51 Cal.2d 759, 764 [336 P.2d 521]*, revd. on other grounds *(1960) 362 U.S. 628 [4 L. Ed. 2d 1002, 80 S. Ct. 1050]*; *Choate v. County of Orange (2000) 86 Cal.App.4th 312, 327 [103 Cal. Rptr. 2d 339]*.)

(12) James's conviction under California's battery statute, *Penal Code section 242*, is an MCDV within the meaning of *section 922(g)(9)*. The trial court erred in concluding otherwise.

## DISPOSITION

The judgment is reversed. The parties shall bear their own costs on appeal.

Gomes, Acting P. J., and Kane, J., concurred.

Respondent's petition for review by the Supreme Court [***21] was denied November 19, 2014, S221648.