1  Leonard C. Herr, #081896
   Ron Statler, #234277
2  HERR PEDERSEN & BERGLUND LLP
   Attorneys at Law
3  100 Willow Plaza, Suite 300
   Visalia, California  93291
4  Telephone:  (559) 636-0200
   Email:  lherr@dhlaw.net
5
   Attorneys for Plaintiff: SCOTT R. JAMES
6

7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11  SCOTT R. JAMES,                    CASE NO.: 1:13-cv-00983-AWI-SKO

12       Plaintiff,                    **DECLARATION OF LEONARD C.
                                       HERR IN OPPOSITION TO MOTION
13    v.                               FOR SUMMARY JUDGMENT**

14  KIMBERLY GRANGER, an individual;   **Date:        December 7, 2015**
    STEVE LINDLEY, an individual       **Time:        1:30 p.m.**
15                                     **Courtroom:   2**
         Defendants.
16
                                       Trial Date:   May 17, 2016
17                                     Action Filed:  June 26, 2013

18

19       I, Leonard C. Herr, declare:

20       1.     I am not a party to this action.

21       2.     I am an attorney in the law firm Herr Pedersen & Berglund LLP,

22  attorneys of record for Scott James in this matter.  The statements made in this

23  declaration are true of my own knowledge and, if called upon to do so, I could and

24  would competently testify to them.

25       3.     Attached to this declaration as Exhibit A are the relevant pages from

26  the transcript of Scott James' deposition taken on January 26, 2015, in this case

27  and certified by Coleen Dalton on February 2, 2015.  In this declaration, relevant

28  pages to a transcript of testimony shall mean the title page, the certification page,

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

1
**DECLARATION OF LEONARD C. HERR IN OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT**

1  and any pages cited my client's separate statement of facts.  It may include, as

2  necessary, additional pages the might offer context to the cited passage.

3      4.    Attached to this declaration as Exhibit B are the relevant pages from

4  the deposition of Scott James taken on July 25, 2011 in the civil case identified on

5  the title page and certified by Traci A. Roldan on August 1, 2011.

6      5.    Attached to this declaration as Exhibit C are the relevant pages from

7  the deposition of Kimberley Granger taken on January 27, 2015 in this case and

8  certified by Sharon Cabello on February 2, 2015.

9      6.    Attached to this declaration as Exhibit D are the relevant pages to the

10  transcript of Court Proceedings in Tulare County Superior Court, Department on

11  February 28, 2012, Dept. 5, the Honorable Joseph A. Kalashian presiding, and

12  certified by Lesia J. Mervin on July 20, 2015.

13      7.    Attached to this declaration as Exhibit E are the relevant pages from

14  the deposition of Luke Powell, including exhibit 2 to that transcript, which was the

15  search warrant signed by Judge Hillman and the deponent's affidavit of probable

16  cause, taken on September 22, 2015 in this case and certified by Susan C.

17  Stevenson on October 1, 2015.

18      8.    The day Scott James' home was searched by Luke Powell and other

19  state agents, a motion for summary judgment by Mr. James was pending in the

20  underlying civil case.  The state's opposition to it was due one week, or about one

21  week, later.

22      I declare under penalty of perjury under the laws of the State of California

23  that the foregoing is true and correct.

24  Executed this 23rd day of November 2015 at Visalia, California.

25

26  /s/ Leonard C. Herr
    LEONARD C. HERR

27

28

F:\Client Files\James, Scott (1369-00)\1369.12 James v. Granger\Motions\Defendants' MSJ\LCH Decl..doc

Law Offices of
HERR PEDERSEN
& BERGLUND LLP
Attorneys at Law
100 Willow Plaza
Suite 300
Visalia, CA  93291
(559) 636-0200

**DECLARATION OF LEONARD C. HERR IN OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT**

Exhibit "A"

```
 1                 IN THE UNITED STATES DISTRICT COURT

 2              FOR THE EASTERN DISTRICT OF CALIFORNIA

 3                          FRESNO DIVISION

 4

 5     SCOTT R. JAMES,

 6                 Plaintiff,

 7     vs.
                               Case No. 1:13-CV-0983 AWI SKO
 8     KIMBERLY GRANGER,

 9                 Defendants.

10     ~~~~~~~~~~~~~~~~~~~~~~~~~~

11

12

13

14

15                 VIDEOTAPED DEPOSITION OF

16                     SCOTT RAY JAMES

17

18                     January 26, 2015

19                       1:51 p.m.

20

21            2151 River Plaza Drive, Suite 300

22               Sacramento, California

23

24

25        Reported by Coleen Dalton, CSR No. 5755
```



SCOTT RAY JAMES
JAMES vs. GRANGER

January 26, 2015
114

1    A    Yes.  That question there is probably because

2    of the background for my CCW.

3    Q    Can you please tell me all the facts you're

4    claiming -- strike that.

5         Can you tell me all the ways you believe

6    Ms. Granger treated you differently during your writ

7    process and after the writ.

8    A    During my July 2011 deposition with

9    Ms. Granger, she came across easygoing in the beginning

10   of the deposition, and then when we started talking

11   about the PC 242 complaint from 1996, she just like --

12   like she took a mask off and put another one on and was

13   like a different person and jumped up in the deposition

14   and got all excited at one time, and my attorney had to

15   stop her and say, hey, settle down, settle down.

16        And it all stemmed from her asking me, well, if

17   you didn't do nothing wrong, why did you take a deal,

18   and I said, well, because the judge gave me a hand slap.

19   So you admit you slapped your wife, and she just -- we

20   had to take a break and shut it all down, and then from

21   then on, it was just like dealing with a different

22   person.

23   Q    Are you saying she physically came out of her

24   chair during the deposition?

25   A    Yes.



SCOTT RAY JAMES
JAMES vs. GRANGER

January 26, 2015
115

1    Q    Okay.  And --

2    A    And then after seeing the reports from the

3    search warrant, being able to read in there why

4    Agent Powell got this information, that he was contacted

5    personally by Ms. Granger, you know, the next day after

6    me admitting to have firearms, she was trying to gain an

7    advantage in the civil case to come after me criminally.

8    Q    Why do you think she would gain an advantage in

9    the civil case by you being prosecuted criminally?

10   A    Because she would do anything to slow me down

11   financially or any way she could hurt me so I wouldn't

12   have to continue to fight the writ.  That's why, going

13   through the process, never once did she ask my attorneys

14   or direct them or give them a letter or anything

15   stating, look, Mr. James admitted having firearms.  We

16   need a third party to hold them until this is resolved.

17   Q    Why do you believe she had to do that?

18   A    I guess she didn't.  The alternative was to get

19   the agents to get a search warrant to knock my door in.

20   Q    Did you understand that one of her -- the

21   client she was working for was the Bureau of Firearms?

22   A    Yes.

23   Q    When she was doing your writ petition?

24   A    I didn't know she was directly working with

25   those agents, but I know she was part of the Bureau of



SCOTT RAY JAMES
JAMES vs. GRANGER

January 26, 2015
121

REPORTER'S CERTIFICATION

1

2

3     I, Coleen Dalton, Certified Shorthand Reporter,

4 in and for the State of California, do hereby certify:

5

6     That the foregoing witness was by me duly

7 sworn; that the deposition was then taken before me at

8 the time and place herein set forth; that the testimony

9 and proceedings were reported stenographically by me and

10 later transcribed into typewriting under my direction;

11 that the foregoing is a true record of the testimony and

12 proceedings taken at that time.

13

14     IN WITNESS WHEREOF, I have subscribed my name:

15 February 2, 2015.

16

17

18

19

20     Coleen Dalton, CSR No. 5755

21

22

23

24

25



Exhibit "B"

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                     COUNTY OF TULARE

3                     —————————

4

5     SCOTT R. JAMES,                          No. 11-241117

6               Petitioner,

7     vs.

8     THE STATE OF CALIFORNIA; OFFICE OF THE
      ATTORNEY GENERAL OF THE STATE OF
9     CALIFORNIA; and KAMALA HARRIS, IN HER
      OFFICIAL CAPACITY AS ATTORNEY GENERAL
10    OF THE STATE OF CALIFORNIA,

11               Respondents.

12    ————————————————————————

13

               DEPOSITION OF SCOTT R. JAMES
14
                       Taken at
15
        Keleher's Certified Shorthand Reporters
16         2348 West Whitendale Avenue, Suite A
                   Visalia, California
17

18        Monday, July 25, 2011 at 9:05 A.M.

19

20                   Reported by:

21         Traci A. Roldan, CSR #7566

22

23

24

25

1    did not have the money to have a big court battle

2    within amongst our family or within the same city as

3    the police department.

4        Q.   To your knowledge, is her brother-in-law still

5    employed by the Visalia Police Department?

6        A.   I don't know, I have not talked to him.

7        Q.   Have you considered in your attempt to regain

8    your firearms eligibility filing a complaint with the

9    Visalia Police Department in order to clear the record

10   which you allege is incorrect?

11       A.   No, because I had already pled to a 242

12   battery, and I believe the statute of limitations nor

13   would that help me in any way because I already pled to

14   a 242 battery, so, no, and I live here and I have to do

15   business with the Visalia P.D. and I'm not risking any

16   of that for that.

17       Q.   Is it your contention that the Visalia Police

18   Department wrote a fraudulent report?

19       A.   Yes.

20       Q.   And is it your contention -- why haven't you

21   taken steps to address that the Visalia Police

22   Department wrote a fraudulent report?

23       A.   Because of the age, this was such a long time

24   ago, for one.  Two, I pled to a 242 battery, I took my

25   punishment from the judge.  There's no reason to hash

1    up and stir up old issues with any of the local

2    departments.

3        Q.   Instead you would rather sue the Department of

4    Justice, which is relying on the report transmitted to

5    it by the Visalia Police Department, that's who you

6    choose to sue instead of suing or trying to rectify

7    this with the Visalia Police Department?

8            MR. STATLER:   Counsel, argue --

9            MS. GRANGER:   It's okay, withdrawn.  It's

10   withdrawn.

11           THE WITNESS:   I love the State of California,

12   for the record.

13           MR. STATLER:   Don't, Scott.

14           MS. GRANGER:   I think at this point I'm done.

15   Thank you for your time today.  Send the deposition to

16   Mr. Statler who will transmit to Mr. James for his

17   approval.

18           MR. STATLER:   And 20 days, is that all right?

19           MS. GRANGER:   20 days for review.

20           (Whereupon, the proceedings were concluded at

21   12:25 P.M.)

22

23

24

25

REPORTER'S CERTIFICATION


I, Traci A. Roldan, a Certified Shorthand
Reporter in and for the State of California, holding
Certificate No. 7566, do hereby certify:


That the foregoing witness was by me duly
sworn; that the deposition was then taken before me at
the time and place herein set forth; that the testimony
and proceedings were reported stenographically by me
and later transcribed into typewritten form under my
direction; that the foregoing is a true record of the
testimony and proceedings taken at that time.


IN WITNESS WHEREOF, I have subscribed my name
this ___1ST___ day of ____AUGUST____, 2011.


Traci A. Roldan, CSR #7566

Exhibit "C"

Case 1:13-cv-00983-AWI-SKO   Document 74-3   Filed 11/23/15   Page 14 of 55

KIMBERLY JEAN GRANGER Volume 1
JAMES vs. GRANGER
January 27, 2015
1

1       UNITED STATES DISTRICT COURT

2       EASTERN DISTRICT OF CALIFORNIA

3

4    SCOTT R. JAMES,

5           Plaintiff,

6        vs.                          CASE NO.
                                      1:13-cv-00983-AWI-SKO

7    KIMBERLY GRANGER, an
     individual,

8

9           Defendant.

     ~~~~~~~~~~~~~~~~~~~~~~~~

10

11

12

13

14              DEPOSITION OF

15           KIMBERLY JEAN GRANGER

16                VOLUME 1

17

18             January 27, 2015

19               8:52 a.m.

20

21           2151 River Plaza Drive
                  Suite 300
22           Sacramento, California

23

24       SHARON CABELLO, CSR No. 3080

25



1    what happened?

2        A.   Yes, I told him that I had the official

3    transcript.  I can't remember when that came in, but

4    whenever I did receive it I told him that I had the

5    official one that was signed by the court reporter,

6    verified by the court reporter, and that I could forward

7    him a copy of it, should he need it.

8        Q.   Did you end up forwarding him a copy of it?

9        A.   Yes, I did.

10       Q.   The whole thing?

11       A.   I can't recall.  I think I would have given him

12   the whole thing and told him most likely the page and

13   line numbers that were applicable.

14       Q.   Okay.  And --

15       A.   Because it was a fairly long deposition, so

16   there were only certain parts of it that were applicable

17   with respect to Mr. James' admitted firearm ownership,

18   possession.

19       Q.   Sure.  And do you have an approximate timeframe

20   of how long it was before you got the transcript?

21       A.   I don't recall, Mr. Staler, I'm sorry.

22       Q.   Okay.  I knew you had said that there were no

23   actual dates that you could remember, I just wanted to

24   know if you had the approximate timeframe.

25       A.   The usual timeframe.  I don't think I paid --

Case 1:13-cv-00983-AWI-SKO   Document 74-3   Filed 11/23/15   Page 16 of 55

KIMBERLY JEAN GRANGER Volume 1                    January 27, 2015
JAMES vs. GRANGER                                                31

1    the State of California doesn't normally pay for a rush.

2        Q.  Okay.

3        A.  So it would have been whatever it was on their

4    timeframe.

5        Q.  When you spoke to Agent Powell did you inform

6    him that there was a civil matter pending in which

7    Mr. James' legal ability to own a firearm was the

8    subject?

9        A.  I explained to him the basis upon which I had

10   obtained Mr. James' deposition and his admission that he

11   had firearms.

12       Q.  Can you tell me what that means as far as the

13   basis?

14       A.  I told him that Mr. James had admitted to

15   firearms possession during the deposition that I was

16   taking with respect to his lawsuit against the State of

17   California regarding his ability to own and possess

18   firearms.

19       Q.  So you did tell him that Scott was suing the

20   State for a determination of whether or not he could own

21   guns?

22       A.  Yes.

23       Q.  Are you aware that Agent Powell testified that

24   he didn't, that you did not say that?

25       A.  I'm not aware of that, no.



1    Mr. James' mandamus case?

2        A.   No.  I had his testimony at the deposition,

3    that was all I needed.

4        Q.   So was your presence at the search part of what

5    might be called career development?  I don't know if

6    that term make sense to you, but career development with

7    AG's office?

8        A.   No.  It was just being present for what agents

9    in my section do, in my bureau do, being -- it wasn't

10   a --

11       Q.   I'm sorry, let me ask -- that may have sounded

12   pejorative.  I meant as in training and familiarization

13   with what you were doing.

14       A.   I was on site to provide advice to the agents

15   in the execution of the warrant.  That's what it was.

16   Whether it was -- usually I would be on the phone with

17   them, or whether I was in person, that's why I was

18   there.

19       Q.   So would you be considered a law enforcement

20   officer while you were there?

21       A.   I'm not a peace officer.

22       Q.   Did you advise the agents as to any parts of

23   Mr. James' house that should be searched?

24       A.   No, the search warrant was expressed to what

25   could be served.



Case 1:13-cv-00983-AWI-SKO   Document 74-3   Filed 11/23/15   Page 18 of 55

KIMBERLY JEAN GRANGER Volume 1                          January 27, 2015
JAMES vs. GRANGER                                                    84

REPORTER'S CERTIFICATION

1

2

3      I, SHARON CABELLO, a Certified Shorthand Reporter

4   in and for the State of California, do hereby certify:

5

6      That the foregoing witness was by me duly sworn;

7   that the deposition was then taken before me at the time

8   and place herein set forth; that the testimony and

9   proceedings were reported stenographically by me and

10  later transcribed into typewriting under my direction;

11  that the foregoing is a true record of the testimony and

12  proceedings taken at that time.

13

14     IN WITNESS WHEREOF, I have subscribed my name this

15  February 2, 2015.

16

17

18  _Sharon Cabello_____

19     SHARON CABELLO, CSR No. 3080

20

21

22

23

24

25



Exhibit "D"

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF TULARE

DEPARTMENT 5          HON. JOSEPH A. KALASHIAN, JUDGE

THE PEOPLE OF THE STATE
OF CALIFORNIA,
)
)
)
            Plaintiff,
)
)
        vs.
)
)
SCOTT RAY JAMES,
)
)
            Defendant.
)
_____
)

NO. VCF 260879
1538.5 Motion

Visalia, California

February 8, 2013

REPORTER'S TRANSCRIPT

(Pages 1 through 127)

APPEARANCES:

For the Plaintiff:    TIM WARD
                      DISTRICT ATTORNEY
                      BY: AFREEN KAELBLE, DEPUTY
                      County Civic Center, Rm 224
                      Visalia, CA  93291

For the Defendant:    RICHARD RUMERY
                      Attorney at Law
                      1320 W. Center
                      Visalia, CA  93291

LESIA J. MERVIN, CSR #4753, RMR, CRR
Tulare County Superior Court

1        Q.   Okay.  Did you learn -- how did you

2 learn that Mr. James may have guns at his house?

3        A.   Following a civil deposition I was

4 informed by the deputy attorney general that was

5 involved in that civil deposition that James may be in

6 possession of firearms.

7        Q.   And who was that deputy attorney

8 general?

9        A.   Kimberly Granger.

10       Q.   What was the date that Miss Granger

11 provided you about guns at Mr. James' house?

12       A.   It will be July 26, 2011.

13       Q.   What was the date of the deposition?

14       A.   July 25th, the day before.

15       Q.   Okay.  Now, on July 26th, had you had an

16 opportunity to review the transcript of the deposition?

17       A.   Not in its entirety, no.

18       Q.   Was the transcript prepared on

19 July 26th, the day after the deposition?

20       A.   That, I don't know.

21       Q.   Did you ever review the transcript of

22 the deposition?

23       A.   Not the entire thing, no.

24       Q.   How much of it did you review?

25       A.   Five to ten pages of it.

26       Q.   Was there -- were you keyed in to

1  certain things to review?

2          A.    I just reviewed Mr. James' testimony.

3          Q.    Well, wasn't the whole deposition his

4  testimony?

5          A.    Again, I don't know.  I didn't look at

6  the whole thing.  No idea.

7          Q.    Huh?

8          A.    I have no idea.  I didn't look at the

9  whole thing.

10         Q.    Were you ever provided with a copy of

11  his deposition transcript?

12         A.    No, not the entire thing.

13         Q.    What were you provided with?

14         A.    Five to ten pages.

15         Q.    Who provided that?

16         A.    Deputy Granger.

17         Q.    When did she provide that to you?

18         A.    About the 26th.

19         Q.    You're saying she provided you with

20  pages of the deposition transcript the day after the

21  deposition was heard?

22         A.    About that time, yes.

23         Q.    You say you reviewed it then?

24         A.    Yes, sir.

25         MR. RUMERY:  Your Honor, I'd like to offer as

26  an exhibit the reporter's certification.  I do

LESIA J. MERVIN, CSR #4753, RMR, CRR
Tulare County Superior Court

1    eligibility to own or possess firearms?

2           A.   Just additional apps database which I

3    already stated.

4           Q.   At the time that you reviewed the

5    deposition of Mr. James, were you aware that he had

6    filed a Complaint or not really a lawsuit, but a writ

7    of mandate with the Court?  Were you aware of that?

8           MS. KAELBLE:  Objection; relevance.

9           THE COURT:  Overruled.

10          THE WITNESS:  I was aware of the -- there was

11   a civil case going on, but I wasn't informed of the

12   nature of that civil case, no.

13   BY MR. RUMERY:

14          Q.   Kimberly Granger never told you the

15   nature of the civil case?

16          A.   No.

17          Q.   Did you ever review any documents from

18   that civil case?

19          A.   Just those five to ten pages from the

20   deposition.  That's all.

21          Q.   Anything else?

22          A.   No, sir.

23          Q.   Did you go through the Department of

24   Justice's own records regarding Mr. James during your

25   investigation?

26          A.   Just those databases I told you about.

1          Q.    Okay.  Did you ever come across -- your

2    Honor, I'm referring to Exhibit C of our motion.

3                Did you ever come across an April 18,

4    2008, letter written on Department of Justice

5    stationery to the sheriff's department regarding

6    Mr. James.  Do you remember that?

7          A.    It doesn't sound familiar.

8          Q.    Were you aware that Department of

9    Justice sent a letter, dated April 18, 2008, to Tulare

10   County Sheriff's Department saying Mr. James was

11   eligible to possess firearms?

12         A.    No, sir.

13         Q.    You never saw that?

14         A.    No, never saw it.

15         Q.    Did Miss Granger ever tell you about

16   this letter?

17         A.    Not to my knowledge.

18         Q.    Huh?

19         A.    No.

20         Q.    Not to your knowledge?  Okay.

21         THE COURT:  I'm sorry.  It was April 18,

22   2008?

23         MR. RUMERY:  Yes.

24         THE COURT:  From the Department of Justice?

25         MR. RUMERY:  From the Department of Justice.

26         THE COURT:  Read it.

1 minimum these three that were registered in his name
2 plus during the deposition he explained that he owned
3 between -- or possessed between five and ten long guns
4 as well that don't have to be registered.

5          So we know that he has these firearms in
6 his possession.  And instead of doing something to make
7 sure that they're elsewhere, he's in violation of the
8 law, because under the Brady Act, as the officer
9 explained, clearly from the training, clearly from the
10 document that we entered into evidence as People's 1,
11 it's clear that their definition, if there's a
12 misdemeanor involving domestic violence, if there's a
13 violence, even if it's a 242, if it started out at
14 domestic violence, it will restrict you from having a
15 gun.

16          THE COURT:  But not under the state law.

17          MS. KAELBLE:  Not under the state law.

18          THE COURT:  Why do we have a state law?  Just
19 to confuse citizens so they get trapped with the
20 federal law when the Feds decide they want to?  I mean,
21 isn't it against the law to attempt to and fill out an
22 application for a weapon and it turns out you can't --
23 you gave false information in the application, why all
24 the times that this guy is trying to get a weapon,
25 apparently he wasn't supposed to, so he's committing a
26 violation of federal law seven, eight, nine, ten times,

LESIA J. MERVIN, CSR #4753, RMR, CRR
Tulare County Superior Court

1   eleven times?  Nothing happens to him.  He files a
2   lawsuit against the Department of Justice, bam, all of
3   a sudden the world falls down on this guy.  What's that
4   all about?
5        MS. KAELBLE:  Obviously, I don't work for
6   that agency.  I don't know how those things get
7   investigated.  I don't know how the forms get forwarded
8   typically from a dealer, once there's a denial, to an
9   investigator.  I don't know how that works.  I really
10  can't speak.  All I can say is in this particular case
11  it was brought to law enforcement's attention and as a
12  result they did an investigation and they determined
13  that there was probable cause to believe he was in
14  possession of weapons.
15       THE COURT:  While his lawsuit to try to
16  clarify the situation is ongoing.
17       MS. KAELBLE:  That is true, your Honor;
18  however, it's still a violation of the law.
19       THE COURT:  What about all these other
20  violations of the law for years that were going on
21  every time he attempted to get a gun and he wasn't
22  supposed to?
23       MS. KAELBLE:  Your Honor, like I said, I
24  don't know what was going on with that.  I can't speak
25  to what was happening in 2007 with regards to those
26  attempts to purchase firearms.

1  cite some cases which indicate that even information
2  that's 11 months old, depending on the nature of the
3  property, if it's the type of property that's likely to
4  still be in place, then it's not going to be considered
5  stale.

6          In this particular case we're talking
7  about weapons.  The defendant had already had the
8  weapons for four years.  It's not like it's something
9  that somebody obtains and gets rid of quickly.  So
10 based on that, there's a good likelihood that the
11 evidence would still be in its place and it would not
12 be stale.

13         THE COURT:  Okay.  I don't think the
14 staleness is an issue.  I do think there are material
15 omissions in the affidavit.  Those omissions include
16 that the defendant in February of the year of this
17 search warrant had on his own initiated a lawsuit
18 against the department to clarify whether or not he
19 could possess these weapons and to clarify whether or
20 not he comes under 18 USC 922 (g)(9), a person who has
21 been convicted of a misdemeanor crime of domestic
22 violence.

23         And under People's Exhibit 1, on the
24 second page of that exhibit, "It's anticipated that
25 this issue will be subject to litigation," end of
26 quote, meaning whether or not it includes all

LESIA J. MERVIN, CSR #4753, RMR, CRR
Tulare County Superior Court

1    misdemeanors, including simple assault or simple
2    battery.
3           The search warrant is replete with
4    allegations that defendant is in violation of federal
5    law 18 USC 922(g)(9).  I don't want to belabor the
6    point.  The search warrant affidavit speaks for itself.
7    There's no mention of the fact that in 2007 or 2008 the
8    County of Tulare issued this man a valid concealed
9    weapons permit.  Certainly that would play into whether
10   or not there was a need for this lawsuit filed by
11   Mr. James to clarify his possession of these weapons.
12   He's never, at least from the record, tried to hide the
13   fact that he's possessed these weapons.
14           Then we have the clear conflict with the
15   federal Brady Act law and California law.  This
16   affidavit does not really speak to that conflict.
17   There's one sentence indication that I think it's the
18   ten-year period is lapsed under California law.  Never
19   mentioned again, but the violations of federal law are
20   spread out throughout this affidavit.
21           I just think there's too many material
22   omissions and lack of clarification as to actually what
23   is going on at the time this search warrant was
24   authored, so I'm granting the 1538.5 motion.
25           MR. RUMERY:  Thank you.
26           THE DEFENDANT:  Thank you, your Honor.

127



STATE OF CALIFORNIA )

)   ss.

COUNTY OF TULARE    )

         I, LESIA J. MERVIN, an Official Certified Shorthand Reporter of the Superior Court of the State of California, do hereby certify:

         That the foregoing action was taken down in stenographic shorthand writing and thereafter transcribed into typewriting, pages 1 through 127, and that the foregoing transcript constitutes a full, true, and correct transcript of said proceedings.

         Dated: July 20, 2015.

_Lesia J. Mervin_

LESIA J. MERVIN, CSR #4753
Official, RPR, RMR, CRR, FAPR

LESIA J. MERVIN, CSR #4753, RMR, CRR, FAPR
Tulare County Superior Court

Exhibit "E"

1                    UNITED STATES DISTRICT COURT

2                   EASTERN DISTRICT OF CALIFORNIA

3

4

5   SCOTT R. JAMES,                    )
                                       )
6            Plaintiff,                )
                                       )
7      vs.                             )   CASE NO.:
                                       )     1:13-CV-00983-AWI-SKO
8   KIMBERLY GRANGER, an               )
    individual; STEVE LINDLEY, an      )
9   individual,                        )
                                       )
10           Defendants.               )
    _____)

11

12

13

14

15               DEPOSITION OF LUKE POWELL

16

17        The following deposition was given on the 22nd

18   day of September 2015, commencing at the hour of 12:55

19   p.m., before, Susan C. Stevenson, a Certified Shorthand

20   Reporter, License Number 9760.

21        The witness personally appeared at 80 Garden

22   Court, Suite 270, Monterey, California  93940.

23

24

25

                                                              1

1    court transcripts; I've read the transcripts.  I just

2    confirmed with her that her accounts of what the

3    transcript said were accurate and, I guess, complete.

4         She verified what Mr. James had stated under

5    sworn testimony.  And that was it.

6         Q.    Did she tell you anything about the civil

7    case?

8         A.    She did not.

9         Q.    Were you aware that it was a civil case at

10   the time -- well, it was a deposition so I imagine you

11   might have been -- but were you aware that it was a

12   civil case at the time?

13        A.    No.  I assumed that.  I guess I could figure

14   that out on my own, but we didn't talk about that at

15   all.

16        Q.    So the nature of the case did not -- excuse

17   me.

18        The nature of the case that gave rise to this

19   testimony was not discussed in that first conversation?

20        A.    You are correct.

21        Q.    About how long -- did you ever talk to

22   Ms. Granger about the case again?

23        A.    Not during my investigation, no.  That was

24   it, that one five-minute conversation.

25        Q.    When do you remember speaking to Ms. Granger

                                                          15

1           What the civil suit regarding previously,

2   what that was involving, I have no idea.  I never knew

3   what that was about.

4        Q.    But you did -- you did learn that there was

5   another lawsuit; is that correct?

6        A.    Yes.  That, obviously, there was a civil

7   matter.  And the only other thing I can think is maybe

8   sometime during the criminal court trial it had come up.

9        Q.    So no one had mentioned it to you, that you

10  recall, before the criminal trial, if it even came up

11  then?

12       A.    You are correct.

13       Q.    Okay.  Thank you.

14       A.    Again, it's not -- it's a very specific black

15  line in law enforcement you don't cross and that's the

16  civil line.

17           In the academy, from day one, they tell you

18  do not get involved in civil matters.  You do not have

19  an opinion or a conclusion regarding civil matters.

20           We handle criminal law so we don't get

21  involved.  That's exactly what I've done my entire

22  career.

23       Q.    Okay.

24           I'm going lay some foundational stuff here.

25  It gets a little boring and I apologize.

26

1          MS. GUESS:  Objection.  Calls for a legal

2     opinion.

3          MR. WILSON:  He's not here to give opinion

4     testimony.

5          You can ask him what he said or what he did.

6     That's it.

7          MR. STATLER:  Thank you.

8          Well, actually, I am asking him if he has an

9     opinion, not what his opinion is.

10          MR. WILSON:  It's the same objection.  Yeah.

11          He's not here for any opinion testimony,

12     unless you want the hire him as an expert witness.

13          MR. STATLER:  I'm sorry?

14          MR. WILSON:  Unless you want to hire him as

15     an expert witness.

16          MR. STATLER:  We'll trade cards afterwards.

17     No, that's a joke.  That's a joke.

18     Q.     Did you ever speak to Kimberly -- oh.  Oh.

19     We haven't gotten into the actual search itself.

20          Do you remember if Kimberly Granger was

21     involved in executing the search warrant on Scott

22     James's home?

23     A.     She was present that day.

24     Q.     What role was she fulfilling there?

25     A.     It was -- I like to refer to it in actual

                                                        31

1    uniformed police work, like as a patrol officer like I

2    ride-along.  She was there as a ride-along.

3        Q.    Oh.  Like an ordinary ride-along?

4        A.    Just to observe.

5        Q.    So what -- so she didn't -- I'm trying to ask

6    this in a proper way.

7              Did she serve a purpose with her presence?

8        A.    No.

9              The way that I understood it was she was

10   coming to observe how we serve a search warrant because

11   she had never seen that side of the law enforcement

12   aspect of the job.

13             So we had different bureaus.  At the Bureau

14   of Firearms we have the enforcement side, and then you

15   have the administrative side.  But she had never seen

16   the enforcement side before.

17       Q.    And did she call and ask you or were you told

18   by somebody else that she would be doing this

19   ride-along?

20       A.    I wasn't told.  I was just informed she would

21   be present the day we were serving the search warrant.

22       Q.    Do you remember who told you?

23       A.    Not specifically, but it would have come from

24   the chain of command so it would have been Lee Careaga,

25   my supervisor.

1   STATE OF CALIFORNIA    )
                           ) ss.
2   COUNTY OF MONTEREY     )

3

4        The witness in the foregoing deposition

5   appeared before me, SUSAN C. STEVENSON, Certified

6   Shorthand Reporter No. 9760 for the State of California.

7        Said witness then and there at the time and

8   place previously stated testified under penalty of

9   perjury given on said day.

10       The testimony of the witness and all the

11  questions and remarks requested by counsel were taken by

12  me in shorthand at the time and place therein named and

13  thereafter, under my direction, transcribed into

14  longhand.

15       I further certify that I am not of counsel or

16  attorney for either or any of the parties to said

17  deposition, nor in any way interested in the outcome of

18  the cause named in said caption, and that I am not

19  related to any party thereto.

20       IN WITNESS WHEREOF, I have hereunto set my hand

21  this 1ST day of October, 2015

22

23

24       _____
         CERTIFIED SHORTHAND REPORTER
25       FOR THE STATE OF CALIFORNIA

51

SW NO._____

ꜰ－ － ∼ ⊂ ⊃ 5 5 2 7

# STATE OF CALIFORNIA - COUNTY OF TULARE

## SEARCH WARRANT AND AFFIDAVIT
### (AFFIDAVIT)

Your Affiant, <u>Luke Powell</u>, swears under oath that the facts expressed by him in the attached and incorporated Statement of Probable Cause are true and that based thereon (he/she) has probable cause to believe and does believe that the property described below is lawfully seizable pursuant to Penal Code Section 1524, as indicated below, and is now located at the location(s) set forth below. Wherefore, affiant requests that this Search Warrant be issued.

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

NOV 03 2011

_____
(Signature of Affiant)

## (SEARCH WARRANT)

LARA ___ CLEEK, CLERK
BY: _____

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICEMAN, OR PEACE OFFICER IN THE COUNTY OF TULARE:** proof by affidavit having been made before me by <u>Luke Powell</u>, that there is probable cause to believe that the property described herein may be found at the locations set forth herein and that property is lawfully seizable pursuant to Penal Code Section 1524 as indicated below in that:

_____    The property was stolen or embezzled.

__X__    The property or things were used as the means of committing a felony.

_____    The property or things are in the possession of any person with the intent to use them as a means of committing a public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing them from being discovered.

__X__    The property or things to be seized consist of any item or constitute any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony.

_____    The property or things to be seized consist of evidence that tends to show that sexual exploitation of a child, in violation of Section 311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Section 311.11, has occurred or is occurring.

_____    There is a warrant to arrest a person.

## YOU ARE THEREFORE COMMANDED TO SEARCH:

**THE PREMISES AT:**

THE PREMISES at 630 West Cherry Court, Visalia, California, 93277; further described as a single story dwelling house with a tan clay tile roof and tan stucco exterior, and tan wood trim, with the number "630" visible on the front of the house, just west of the garage doors, are brown in color and are approximately eight inches in size; including all rooms, attics, basements, and other parts therein, the surrounding grounds and any garages, storage rooms, trash containers, and outbuildings of any kind located thereon.

The residence at 630 West Cherry Court, Visalia, California, 93277, is depicted in the following photograph:





**THE FOLLOWING VEHICLES:**

Vehicle 1

THE VEHICLE described as a 2011, Chevrolet, model is unknown, color of this vehicle is unknown, bearing California license # 6PMR543 (R/O Scott Ray JAMES II, 4216 South Mooney Boulevard, Visalia, CA 93277), including containers of any kind within the vehicle.

Vehicle 2

THE VEHICLE described as a 2006, Harley Davidson, model is unknown, color of this vehicle is unknown, bearing California license # 18C6022 (R/O Scott JAMES II, 4216 South Mooney Boulevard, Suite 350, Visalia, CA 93277), including containers of any kind within the vehicle.

ANY VEHICLE in the immediate vicinity of address, city, California, zip code, that is in the custody or control of Scott JAMES of person as evidence by ignition keys, or car door keys, or vehicle ownership documents in his/her possession, or on his/her person, or under his/her dominion and control, or by statements of witnesses, or any vehicle within the garages, grounds, or storage areas to be searched. Such search shall include containers of any kind within the vehicle.

**AND THE FOLLOWING PERSONS:**

Person 1

THE PERSON known as Scott Ray JAMES, described as a white male, approximately 40 years of age, approximately 5 ft 8 inches tall, weighing approximately 170 pounds, with brown hair, brown eyes, born on 12/31/1970, with California drivers license #: C7081820.

**FOR THE FOLLOWING PROPERTY:**

Any items tending to establish the identity of persons who have dominion and control of the location, premises, automobiles, or items to be seized, including delivered mail, whether inside the location or in the mail box/s, utility bills, telephone bills, miscellaneous addressed mail, personal letters, personal identification, purchase receipts, rent receipts, sales receipts, tax statements, payroll check stubs, keys and receipts for safe deposit box(s), keys and receipts for rental storage space, keys and receipts for post office box or mail drop rentals, ignition keys, car door and trunk keys, vehicle ownership certificates or "pink slips," and/or vehicle registration slips, recordation of voice transmissions on telephone answering machines, audio tapes and telephone message receipt books, and written phone messages, and photographs tending to show occupation of the residence / business and connection between co-conspirators, whether identified, or unidentified, also digital pagers which will document telephone numbers of co-conspirators, and if found, to activate the digital pagers' display mechanism and to obtain messages from the pagers, answering machines, tape recorders, and any other recording devices, and to play such devices to obtain their messages. Any examples of handwriting including letters, address books, business records, canceled checks, notes, and/or lists.

Any handgun / pistol / revolver / rifle / shotgun / firearm / automatic weapon / of any caliber. In addition to any firearm, Clips / Magazines / Cylinders /Loading Devices, or any paperwork showing the purchase, storage, disposition, and/or dominion and control over any guns, any ammunition, or any of the above items.

Any items of documentation to include but not limited to, Dealer's Record of Sale (DROS) of Firearm or Federal Alcohol, Tobacco and Firearms (ATF) Form 4473. Originals or copies of receipts of purchases or attempt purchases of firearm(s) transactions occurring on or after December 11, 1996.

**AND TO SEIZE IT IF FOUND** and bring it forthwith before me, or this court, at the courthouse of this court. This Search Warrant and incorporated Affidavit was sworn to and subscribed before me this 4ᵗʰ day of _August_, 2011 at 11:36 A.M./P.M. Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

NIGHT SEARCH REQUESTED: YES ☒   NO ☒        NIGHT SEARCH APPROVED: YES ☐   NO ☑

_____
Judge of the Superior, County of Tulare

# DESCRIPTION

## YOU ARE THEREFORE COMMANDED TO SEARCH:

**THE PREMISES AT:**

THE PREMISES at 630 West Cherry Court, Visalia, California, 93277; further described as a single story dwelling house with a tan clay tile roof and tan stucco exterior, and tan wood trim, with the number "630" visible on the front of the house, just west of the garage doors, are brown in color and are approximately eight inches in size; including all rooms, attics, basements, and other parts therein, the surrounding grounds and any garages, storage rooms, trash containers, and outbuildings of any kind located thereon.

The residence at 630 West Cherry Court, Visalia, California, 93277, is depicted in the following photograph:



**THE FOLLOWING VEHICLES:**

Vehicle 1

THE VEHICLE described as a 2011, Chevrolet, model is unknown, color of vehicle is unknown, bearing California license # 6PMR543 (R/O Scott Ray JAMES II, 4216 South Mooney Boulevard, Visalia, CA 93277), including containers of any kind within the vehicle.

Vehicle 2

THE VEHICLE described as a 2006, Harley Davidson, model is unknown, color of this vehicle is unknown, bearing California license # 18C6022 (R/O Scott JAMES II, 4216 South Mooney Boulevard, Suite 350, Visalia, CA 93277), including containers of

any kind within the vehicle.

ANY VEHICLE in the immediate vicinity of address, city, California, zip code, that is in the custody or control of Scott JAMES of person as evidence by ignition keys, or car door keys, or vehicle ownership documents in his/her possession, or on his/her person, or under his/her dominion and control, or by statements of witnesses, or any vehicle within the garages, grounds, or storage areas to be searched. Such search shall include containers of any kind within the vehicle.

## AND THE FOLLOWING PERSONS:

Person 1

THE PERSON known as Scott Ray JAMES, described as a white male, approximately 40 years of age, approximately 5 ft 8 inches tall, weighing approximately 170 pounds, with brown hair, brown eyes, born on 12/31/1970, with California drivers license #: C7081820.

## FOR THE FOLLOWING PROPERTY:

Any items tending to establish the identity of persons who have dominion and control of the location, premises, automobiles, or items to be seized, including delivered mail, whether inside the location or in the mail box/s, bills, utility bills, telephone bills, miscellaneous addressed mail, personal letters, personal identification, purchase receipts, rent receipts, sales receipts, tax statements, payroll check stubs, keys and receipts for safe deposit box(s), keys and receipts for rental storage space, keys and receipts for post office box or mail drop rentals, ignition keys, car door and trunk keys, vehicle ownership certificates or "pink slips," and/or vehicle registration slips, recordation of voice transmissions on telephone answering machines, audio tapes and telephone message receipt books, and written phone messages, and photographs tending to show occupation of the residence / business and connection between co-conspirators, whether identified, or unidentified, also digital pagers which will document telephone numbers of co-conspirators, and if found, to activate the digital pagers' display mechanism and to obtain messages from the pagers, answering machines, tape recorders, and any other recording devices, and to play such devices to obtain their messages. Any examples of handwriting including letters, address books, business records, canceled checks, notes, and/or lists.

Any handgun / pistol / revolver / rifle / shotgun / firearm / automatic weapon / of any caliber. In addition to any firearm, Clips / Magazines / Cylinders /Loading Devices, or any paperwork showing the purchase, storage, disposition, and/or dominion and control over any guns, any ammunition, or any of the above items.

Any items of documentation to include but not limited to, Dealer's Record of Sale (DROS) of Firearm or Federal Alcohol, Tobacco and Firearms (ATF) Form 4473. Originals or copies of receipts of purchases or attempt purchases of firearm(s) transactions occurring on or after December 11, 1996.

# STATE OF CALIFORNIA - COUNTY OF TULARE
# STATEMENT OF PROBABLE CAUSE

### EXPERTISE

I, Luke Powell, am a Special Agent with the California Department of Justice (CA DOJ), Bureau of Firearms (BOF), Fresno Field Office. I have been a full-time peace officer as defined by Penal Code (PC) § 830.1 since December of 1998. I have acquired my Basic, Intermediate and Advanced Police Officers Certificate from California Peace Officer Standards and Training (POST). My current duties entail providing education, regulation and enforcement actions regarding the unlawful manufacture, sales, ownership, safety training and transfer of firearms and/or equipment.

Throughout my peace officer career, I have worked a variety of assignments to include, Field Evidence Technician, Accident Investigator, Auto Theft Investigator, Canine Handler, Special Weapons and Tactics (SWAT), Narcotics Task Force, California Methamphetamine Strategy (CALMS), Diversion, and currently Firearms. In addition to my on the job training, I have received over 1000 hours of formal advanced officer training from local, state and federal law enforcement officials. This training included the following subject matters; Search and Seizure, Drug Abuse Recognition, Narcotics Investigator, Clandestine Laboratory Safety and Indoor Marijuana Cultivation. I have also attended the SWAT Academy, Advanced Entry Gun Techniques, MP-5 Submachine Guns Operators Course, Long Gun Assault Rifle Course and Range master Course.

My experience and training have provided me with the opportunity to write, serve and/or assist in the preparation and execution of more than 100 search warrants, where firearms and various types of illicit and control substances were confiscated; I have spoken with thousands of people engaged in the criminal subculture; I have interviewed no less than one hundred admitted and/or convicted drug users, sellers and manufacturers; I am knowledgeable in the recognition, identification, preparation, sales and use of illicit and controlled substances. I have become proficient in the identification, use and disassembly of various revolvers, semiautomatic pistols, fully automatic submachine guns, fully automatic machine guns, shotguns, and various rifles. I have investigated and arrested individuals for violations involving illegal weapon possession.

### INVESTIGATION

On Tuesday, July 26, 2011, at 0900 hours, I was provided informed regarding a potential crime of Penal Code (PC) section 12076(c)(1), any person knowingly furnish incorrect information for the electronic transfer of a firearm, which appeared to have taken place on Saturday, January 1, 2011, at the Big 5 Sporting Goods, located at 1430 South Mooney Boulevard, Visalia, CA 93277. This information came to light following a civil deposition which took place on Monday, July 25, 2011.

On Monday, July 25, 2011, at 0905 hours, Scott JAMES appeared in the Superior Court of the State of California, County of Tulare, for a civil deposition. During his sworn testimony, JAMES admitted to ownership and possession firearms and falsification or failure to divulge information on both, the federal Alcohol, Tobacco and Firearms (ATF) 4473 and the state Dealer's Record of Sale (DROS) of Firearms licensing forms.

During the course of this deposition JAMES admitted, in his sworn testimony, he currently resided at 630 West Cherry Court, Visalia, CA 93277, was in possession of a "Kimber, .45 caliber," semiautomatic handgun and "more than five and less than ten" rifles and shotguns.

Under federal law, specifically the Federal Brady Act and 18 U.S.C. 922(g)(9), permanent ban disqualifying an individual from possessing, purchasing, or receiving a firearm pursuant to a misdemeanor conviction of domestic violence, JAMES is currently prohibited from firearms possession for life, pursuant to an October 1, 1996, arrest, by the Visalia Police Department (case number A96-14148), for PC section 273.5, inflict corporal injury on spouse, and subsequent conviction, on December 11, 1996, for PC section 242, battery.

Also during his sworn testimony, JAMES admitted to failing to divulge a misdemeanor conviction for domestic battery on the federal ATF 4473 form and failing to provide his street address on both the ATF 4473 and state DROS forms. On both federal and state forms JAMES admitted to providing a mailing address, which is different than his residential address.

JAMES admitted to being informed of his denial to purchase firearms by Big 5 Sporting Goods, after the January 7, 2011, transaction because he was called to the store to obtain his refund of the purchase price of the rifle and the store provided him a

copy of the California (CA) Department of Justice (DOJ) Denial Letter.

On Thursday, July 28, 2011, I conducted computer records checks on JAMES through multiple law enforcement databases. My research revealed the following:

My check through the Automated Firearms System (AFS) showed JAMES has three (3) firearms registered in his name. (AFS is a state wide computer data bank for all handguns sold since 1979 and all assault weapons properly registered in this state as prescribed in California (PC Section 12285) since 1989. Your affiant knows that per California PC Section 11106(b)(1) handgun ownership information is stored in AFS, and rifle and shotgun information is not normally stored in AFS. However the information regarding rifles and shotguns shall be destroyed within five days of the receipt by the Attorney General, unless retention is necessary for use in a criminal prosecution. Your affiant knows all registered handguns and transfers of ownership of handguns, done through a licensed firearms dealer will be recorded and stored in AFS.) AFS records indicate JAMES purchased the following firearms on the provided dates:

1.  Kimber, Team Match, .45 caliber, semiautomatic handgun, serial number K1914, purchased on 02/08/2007;

2.  Sig Sauer, 229, .40 caliber, semiautomatic handgun, serial number AD17242, purchased on 08/22/1994; and

3.  Astra, A80, 9 millimeter, semiautomatic handgun, serial number P4231, purchased on 02/03/1992.

The possession of any firearm or ammunition by JAMES is a violation federal law 18 U.S.C. 922(g)(9), permanent ban disqualifying an individual from possessing, purchasing, or receiving a firearm pursuant to a misdemeanor conviction of domestic violence.

I conducted a DMV check on JAMES and noted he possessed a valid California driver licenses which listed a mailing address of 4216 South Mooney Boulevard, Suite 350, Visalia, CA 93277. (This is the same address JAMES used on both the federal ATF 4473 and state DROS forms.) JAMES also had two vehicles registered under his name:

1.  2011 Chevrolet, model is unknown, color of this vehicle is unknown, bearing California license plate number 6PMR543; and

2.  2006 Harley Davidson, model is unknown, color of this vehicle is unknown, bearing California license plate number 18C6022.

On both of the above vehicles, JAMES listed an address of 4216 South Mooney Boulevard, Suite 350, Visalia, CA 93277.

JAMES' criminal history showed numerous prior arrests for a variety of offenses: assault with a deadly weapon, carrying a concealed weapon in a vehicle, carrying a loaded firearm in public and inflicting corporal injury on spouse. Of these listed arrests, JAMES has two convictions for PC section 12031(a), carrying a loaded firearm in public and PC section 242, battery. Because of these misdemeanor convictions, and per PC sections 12021(c)(1) and 12316(b)(1), JAMES was prohibited from owning, purchasing, receiving or possessing any firearm or ammunition for a period of ten (10) years. JAMES' state prohibition concluded on December 11, 2006. Under federal law, specifically the Federal Brady Act and 18 U.S.C. 922(g)(9), permanent ban disqualifying an individual from possessing, purchasing, or receiving a firearm pursuant to a misdemeanor conviction of domestic violence, JAMES is currently prohibited from firearms and ammunition possession for life.

On Thursday, July 28, 2011, I conducted a query of JAMES through the Armed Prohibited System (APPS) data base. (APPS is a CA DOJ, Bureau of Firearms (BOF) run database that cross-references persons who legally acquired handguns since 1996 or registered assault weapons, and who subsequently become legally prohibited from owning or possessing firearms because of incidents such as felony convictions, specified misdemeanors, domestic violence restraining orders and mental health commitments. Records of handgun sales from the DOJ, DROS and from the Assault Weapons Registry (AWR) populate the APPS database and evaluates data from existing databases such as the Automated Criminal History System (ACHS), Wanted Persons System (WPS), Domestic Violence Restraining Order System (DVROS) and Mental Health Firearms Prohibited System (MHFPS). New DROS and AWR data is added to APPS on a daily basis. Information in AFS about lost, stolen, held for safekeeping and under observation firearms is also added every day. This data adds new firearms owners to APPS, associates newly transferred firearms to existing armed persons in APPS due to transfer of firearms and various status changes.) This query

revealed JAMES has attempted to purchase a firearm through a state licensed Federal Firearms Licensed (FFL) dealer eight (8) times since his 1996 conviction and subsequent prohibition. Seven (7) of these attempts, conducted on September 24, 1999, July 17, 2007, July 17, 2007, December 22, 2007, December 22, 2007, October 21, 2008 and January 7, 2011, were denied with one (1) attempt, conducted on February 8, 2007, succeeding (see Kimber .45 above).

State DROS licensing requirements mandate FFL dealers, operating within California, to keep the original copy of the DROS transactions for a period of three (3) years following the sale or denial of the firearms transaction. Of the eight (8) DROS transactions attempted by JAMES, only two (2) of the transactions fall within this three (3) year time frame. Of these two (2) transactions, only one (1) of the FFL dealers is still in business, Big 5 Sporting Goods, 1430 S. Mooney Boulevard, Visalia, CA 93277.

On Thursday, July 28, 2011, I went to the Big 5 Sporting Goods, located at 1430 S. Mooney Boulevard, Visalia, CA 93277, and obtained copies of the original DROS and ATF 4473 forms. Upon reviewing the original documents, I noted JAMES listed his residential address as 4216 South Mooney Boulevard, Suite 350, Visalia, CA 93277 and failed to divulge a misdemeanor conviction for domestic battery on the federal ATF 4473 form. Both the federal and state forms required a signature by the purchaser and the signature appears to that of JAMES. A signature on both federal and state forms certifies the information provided by the purchaser is true and correct, and any incorrect information can be punishable under state PC section 118(a), perjury.

JAMES' act of falsifying or failing to divulge information on the state DROS form is a violation PC section 12076(c)(1), any person knowingly furnish incorrect information for the electronic transfer of a firearm, and JAMES' falsifying or failing to divulge information on the federal ATF 4473 form is a violation of 18 U.S.C. 922(g)(9), permanent ban disqualifying an individual from possessing, purchasing, or receiving a firearm pursuant to a misdemeanor conviction of domestic violence.

On Thursday, July 28, 2011, I drove by the two addresses JAMES' provided to the DMV (4216 South Mooney Boulevard, Suite 350, Visalia, CA 93277) and during his sworn testimony (630 West Cherry Court, Visalia, CA 93277). The address of 4216 South Mooney Boulevard, Suite 350, Visalia, CA 93277, is a postal box located inside a United Parcel Service (UPS) store. The address of 630 West Cherry Court, Visalia, CA 93277, is a residence and at the time I drove by, there was a 2008 Mercedes, model was unknown, color of this vehicle is silver, bearing California license plate number 7JZBENZ, parked in the driveway of the residence. A record check on the license plate number showed the registered owner to be Tasha TAYIAN, 4216 South Mooney Boulevard, Apartment 350, Visalia, CA 93277. This is the same address JAMES uses on his DMV records. At that time, I obtained a legal description of the residence located at 630 West Cherry Court, Visalia, CA 93277, and took the attached photograph of the residence and vehicle using a digital camera.

OPINION

JAMES' criminal history showed a 1996 conviction for PC section 242, battery. Under the Federal Brady Act and 18 U.S.C. 922(g)(9), JAMES is prohibited from firearms and ammunition possession for life. A record check through the AFS showed JAMES to be the last registered owner of three (3) firearms.

It is the belief of your Affiant that JAMES has intentionally falsified or failed to divulge information on the federal ATF 4473 and state DROS forms with the intent to illegally gain possession of firearms, a violation of PC section 12076(c)(1). To the best of my knowledge, and over the course of fifteen (15) years, JAMES has attempted to purchase firearms eight (8) times and has succeeded at least one (1) time. Proof of his illegal intention is evident on the federal ATF 4473 and state DROS forms obtained from Big 5 Sporting Goods, documenting JAMES' attempted purchase of a rifle on January 7, 2011. These documents show JAMES' willingness to provide false information and intentionally fail to divulge information on the federal ATF 4473 and state DROS forms to obtain firearms by illegal means.

Your Affiant believes JAMES will have retained documentation (federal ATF 4473 and state DROS forms) of the previous seven (7) attempted illegal purchases of firearms at his residence, 630 West Cherry Court, Visalia, CA 93277, further supporting the fact of JAMES' illegal intention to possess firearms. A signature on both federal and state forms certifies the information provided by the purchaser is true and correct, and any incorrect information can be punishable under state PC section 118(a), perjury.

During his sworn testimony on Monday, July 25, 2011, JAMES admitted to being informed of his denial to purchase firearms by Big 5 Sporting Goods, after the January 7, 2011, transaction. After he was called to the store to obtain his refund of the purchase

price of the rifle, the store provided him a copy of the CA DOJ Denial Letter. JAMES would have been provided CA DOJ Denial Letters at each of his prior seven (7) attempts to purchase firearms. Your Affiant believes copies of these CA DOJ Denial Letters will be in JAMES' possession.

Based upon your Affiant's training, experience and conversations that your Affiant had with other Law Enforcement Officers and/or reports that your Affiant has read, your Affiant requests to search for and seize any weapons, ammunition, clips and/or magazines, or any paperwork showing the purchase, storage, disposition, and/or dominion and control over any guns, any ammunition, or any of the above Items.

Your Affiant believes that whether or not the firearm(s) sought are recovered, the above items would tend to show that a firearm(s) existed and may have once been located in a place to which the suspect had access, and that these items would tend to connect the suspect with the weapon(s) sought. The above items are not normally disposed of after the commission of a crime, and they are therefore still likely to be found in any location or vehicles to be searched, and/or on the person of any suspect to be searched pursuant to this Search Warrant.

Based upon your Affiant's training, experience and conversations that your Affiant had with other Law Enforcement Officers and/or reports that your Affiant has read, your Affiant knows that during the service of this Search Warrant there are many articles of personal and/or business property tending to establish the identity of persons who have dominion and control over the premises, business, vehicles, and/or items to be seized. Your Affiant believes that these items will tend to connect the premises, locations, persons, and vehicles to be searched with the items to be seized and the case being investigated. It is your Affiant's opinion that these types of items are usually present at the location sought to be searched by this Search Warrant and that they will therefore likely still be found in the location, and/or the person to be searched.

Affiant Luke Powell

Subscribed and sworn to before me on this 4th day of 07 , 2011 .

Judge of the Superior Court, County of Tulare         Visalia Division,    Dept #8

FF - - 005527

SW No#_____

# STATE OF CALIFORNIA-COUNTY OF TULARE
# RETURN TO SEARCH WARRANT

Luke Powell, being sworn, says that he conducted a search pursuant to the below described search warrant:

Issuing Magistrate:     Judge Hillman

Magistrate's Court:     Tulare Superior Court, Visalia California

Date of Issuance:       October 4, 2011

Date of Service:        October 13, 2011

FILED
TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION
NOV 03 2011
LARAYNE SLEEK, CLERK
BY:_____

and searched the following locations(s), vehicle(s), and person(s):

1.   630 West Cherry Court, Visalia, CA 93277
2.   Scott Ray JAMES, DOB 12/31/1970, White male, 5'08", 170 pounds, brown hair and brown eyes

and seized the following item(s):

__XX__  described in the attached and incorporated inventory.
_____ described below:

I further swear that this is a true and detailed account of all property taken by me pursuant to the search warrant, and that pursuant to Penal Code Sections 1528 and 1536 this property will be retained in my custody, subject to the order of this court of any other court in which the offense in respect to which the seized property is triable.

_____
(Signature of Affiant)

**Sworn to and subscribed before me this** _____ day of _____, **2011.**

_____
(Signature of Magistrate)

Judge of the Tulare Superior Court, Dept_____, California.



California Department of Justice
Division of Law Enforcement
Bureau of Firearms

**PROPERTY RECEIPT**

Page _1_ of _2_
Date _10/13/11_
Inv.# _BOF-FR2011-0146_
Inv. Name _JAMES, SCOTT_

Property Received From:

Name: _S. JAMES, SCOTT_   Address: _630 W. CHERRY CT._
County: _VISALIA, TULARE CA_

| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
|---|---|---|---|---|---|---|---|---|
| 001-001 | Smith & Wesson | 19-4 | 57K0266 | .357 | 6" | R | P | E |
| 001-002 | Sturm, Ruger & Co | P89 | 307-42212 | 9mm | 4.5" | I | P | E |
| 001-003 | Smith & Wesson | SW380 | RAC5230 | .380 | 3" | I | P | E |
| 001-004 | TAURUS | 85 | LG88310 | .38 | 2" | R | P | E |
| 001-005 | Kimber | Team Match II | K191430 | .45 | 5" | I | P | E |
| | | | | | | | | |
| | | | | | | | | |

| Item# | Description | Location Found |
|---|---|---|
| 001-006 | One bag containing twenty (20) handgun and three (3) rifle magazines. | |
| 001-007 | One bag containing approx. 350 rounds of various caliber live ammo | |

\* All above items seized from West Gun safe in garage

_L. Power_
Receiving Individual (print or type)

Receiving Individual (signature)

_Navarro_
Witnessing Individual (print or type)

Witnessing Individual (signature)

BOF 936 (Rev. 5/2010)



California Department of Justice
Division of Law Enforcement
Bureau of Firearms

**PROPERTY RECEIPT**

Page _2_ of _8_

Date _10/13/11_

Inv.# _BOF·FA.2011·00140_

Inv. Name _JAMES, SCOTT_

Property Received From:

Name: _JAMES, SCOTT_

Address: _630 W. CHERRY CT._

County: _VISALIA, TULARE, CA_

| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
|---|---|---|---|---|---|---|---|---|
| 001-008 | Finnwolf | VL63 | 2916 | .243 | 23" | L | R | E |
| 001-009 | Kimber | 8400 | KW23158 | 300win | 24.5" | L | R | E |
| 001-010 | Sturm, Ruger & Co | Ranch Rifle | 19582941 | .223 | 18" | I | R | E |
| 001-011 | Winchester | 94 AE | 5316949 | 30-30 | 20" | L | R | E |
| 001-012 | New SKB Arms | 1 of 300 | NRA018 | 12g | 28" | Top Break | S | E |
| 001-013 | Olympic Arms | PCR99 | KX2139 | .223 | 18" | I | R | E |
| 001-014 | Charles Daly | Unkn. | 6104683 | 12g | 28" | I | S | E |

| Item# | Description | Location Found |
|---|---|---|
| ✱ Above Items located in West gun safe - garage | | |

_L. Powell_
Receiving Individual (print or type)

_Navarro_
Witnessing Individual (print or type)

BOF 936 (Rev. 5/2010)

Receiving Individual (signature)

Witnessing Individual (signature)



California Department of Justice
Division of Law Enforcement
Bureau of Firearms

**PROPERTY RECEIPT**

Page __3__ of __8__

Date __10/13/11__

Inv.# __BOF-FR2011-00140__

Inv. Name __James, Scott__

Property Received From:

Name: __James, Scott__

Address: __630 W. Cherry Ct.__

County: __Visalia, Tulare, CA__

| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
|--------|------|-------|----------|---------|---------------|------|------|------|
| 001-015 | Winchester | 1300 Ranger | L2358693 | 12g | 28" | P | S | E |
| 001-016 | Smith & Wesson | 1020 | UCC5608 | 20g | 28" | I | S | E |
| 001-017 | Benelli (franchi) Arms | Grade I | BF01749 | 12g | 28" | I | S | E |
| 001-018 | Sturm, Ruger & Co | M77 | 75B2985 | 270win | 23" | B | R | E |
| 001-019 | Remington Arms Co. | Unknown | 204222 | .22 | 22" | P | R | E |
| 001-020 | Benelli (franchi) Arms | I/2 | BF05220 | 12g | 28" | I | S | E |
| 001-021 | Benelli (franchi) Arms | ALCIONE | 5221904 | 12g | 28" | Top Break | S | E |

| Item# | Description | Location Found |
|-------|-------------|----------------|
| | * Above items located in West Gun Safe - garage | |

__L. Powell__
Receiving Individual (print or type)

__Navarro__
Witnessing Individual (print or type)

BOF 936 (Rev. 5/2010)

Receiving Individual (signature)

Witnessing Individual (signature)

Page 1 of 2



California Department of Justice
Division of Law Enforcement
Bureau of Firearms

**PROPERTY RECEIPT**

Page ___4___ of ___8___

Date ___10/13/11___

Inv.# ___B2F FR201-00140___

Inv. Name ___JAMES, SCOTT___

Property Received From:

Name: ___JAMES, SCOTT___          Address: ___630 W. CHERRY CT.___

County: ___VISALIA, TULARE, CA___

| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
|--------|------|-------|----------|---------|---------------|------|------|------|
| 001-022 | Winchester | 63 | 1589997A | .22 | 22.5" | I | P | E |
| 001-023 | Marlin Firearms Co | 883 | 10721103 | .22 | 22" | B | R | E |
| 001-024 | Sturm, Ruger & Co | M77 | 78317780 | 22-250 | 27" | B | R | E |
| 001-025 | Kimber | 84M | KM07367 | 22.250 | 26.5" | B | R | E |
| 001-026 | Browning Arms Co | BPS | 11822PW152 | 12g | 28" | P | S | E |
| 001-027 | A. Rossi | Puma M92 | SK114789 | .357 | 20" | L | R | E |
| 001-028 | Remington | 710 | 71290746 | 270 win | 22" | B | R | E |

| Item# | Description | Location Found |
|-------|-------------|----------------|
| | *Above items located in West Gun safe - garage | |

L. Power
Receiving Individual (print or type)

Navarro
Witnessing Individual (print or type)

BOF 936 (Rev. 5/2010)

Receiving Individual (signature)

Witnessing Individual (signature)



California Department of Justice
Division of Law Enforcement
Bureau of Firearms

**PROPERTY RECEIPT**

Page 5 of 6

Date 10/13/11

Inv.# BOF-FR2011-00140

Inv. Name JAMES, SCOTT

Property Received From:

Name: JAMES, SCOTT

Address: 630 W CHERRY CT.

County: VISALIA, TULARE, CA

| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
|---|---|---|---|---|---|---|---|---|
| 001-029 | Remington | 700 | A6824775 | 30-06 | 22" | B | R | E |
| 001-030 | Savage Arms | 110L | 65697 | 270win | 24" | B | R | E |
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| | | | | | | | | |
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| | | | | | | | | |
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| | | | | | | | | |
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| | | | | | | | | |

| Item# | Description | Location Found |
|---|---|---|
| 001-031 | Three (3) paper documents depicting info. for firearm purchases. | |

✱All above items located in West gun safe—garage

L. Powell
Receiving Individual (print or type)

Navarro
Witnessing Individual (print or type)

DOF 936 (Rev. 5/2010)

Receiving Individual (signature)

Witnessing Individual (signature)



California Department of Justice
Division of Law Enforcement
Bureau of Firearms

**PROPERTY RECEIPT**

Page 6 of 8

Date 10/13/11

Inv.# BOF-FA2011-00140

Inv. Name JANES, SCOTT

Property Received From:

Name: JANES, SCOTT

Address: 630 W. CHERRY CT.

County: VISALIA, TULARE CA

| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
|--------|------|-------|----------|---------|---------------|------|------|------|
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |

| Item# | Description | Location Found |
|-------|-------------|----------------|
| 001-032 | One box containing approx 1,500 rounds of various caliber live ammo. | |
| 001-033 | Three (3) high capacity rifle mags. | |
| 001-034 | One (1) DOJ Letter (Purchaser Prohibited Notification) | |
| | * Above items located in East Gun safe - garage | |

L. Power
Receiving Individual (print or type)

Receiving Individual (signature)

Navarro
Witnessing Individual (print or type)

Witnessing Individual (signature)

BOF 936 (Rev. 5/2010)



California Department of Justice
Division of Law Enforcement
Bureau of Firearms

**PROPERTY RECEIPT**

Page _7_ of _8_
Date _10/13/11_
Inv.# _BF·FR2010·00140_
Inv. Name _JAMES, SCOTT_

Property Received From:

Name: _JAMES, SCOTT_          Address: _630 W. CHERRY CT_
                             County: _VISALIA, TULARE CA_

| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
|--------|------|-------|----------|---------|---------------|------|------|------|
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |

| Item# | Description | Location Found |
|-------|-------------|----------------|

_001-035 APPROXIMATELY 300 ROUNDS OF VARIOUS CALIBER AMMUNITION (ITEMS LOCATED INSIDE BLACK DUFFEL BAG ON TOP OF FILING CABINET IN GARAGE)_

_L. Rouze_
Receiving Individual (print or type)

Receiving Individual (signature)

_Navarro_
Witnessing Individual (print or type)

Witnessing Individual (signature)

BOF 936 (Rev. 5/2010)



California Department of Justice
Division of Law Enforcement
Bureau of Firearms

**PROPERTY RECEIPT**

Page _8_ of _8_
Date _10/13/11_
Inv.# _BOF FR2011-00140_
Inv. Name _JAMES, SCOTT_

Property Received From:

Name: _JAMES, SCOTT_            Address: _630 W. CHERRY CT._
County: _VISALIA, TULARE CA_

| Item # | Make | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
|--------|------|-------|----------|---------|---------------|------|------|------|
| 001-038 | Glock | 22 | LEU046 | .40 | 4.5" | I | P | E |
| Item # Make | | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # Make | | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # Make | | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # Make | | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # Make | | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |
| Item # Make | | Model | Serial # | Caliber | Barrel Length | Cat. | Type | Doc. |

| Item# | Description | Location Found |
|-------|-------------|----------------|
| 001-036 | THREE (3), TEN (10) ROUNDS .40 CALIBER GLOCK MAGAZINES | |
| 001-037 | APPROXIMATELY 1883 ROUNDS OF VARIOUS CALIBER AMMUNITION | |
| | (ITEMS LOCATED INSIDE MASTER BEDROOM & MASTER BATHROOM CLOSET) | |
| 001-039 | (1) PANZR SAURUS SLOT MACHINE  A5156712 | |

Receiving Individual (print or type) _L. Parra_         Receiving Individual (signature)

Witnessing Individual (print or type) _Navarro_          Witnessing Individual (signature)

BOF 936 (Rev. 5/2010)

The document to which this certificate is affixed is a full, true and correct copy of the original on file and of record in my office.

*November 8, 2011*

I certify the Clerk/Executive Officer/Clerk of the Superior Court of California, County of Fresno.

By _____ Deputy