# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SCOTT R. JAMES,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**KIMBERLY GRANGER, an individual;**<br>**STEVE LINDLEY, an individual,**<br><br>**Defendants.** | **1:13-CV-0983 AWI SKO**<br><br>**MEMORANDUM OPINION AND**<br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY JUDGMENT**<br><br>Doc. # 73 |

This is an action for damages by plaintiff Scott R. James ("Plaintiff") against defendants Kimberly Granger and Steve Lindley ("Defendants"). The currently-operative Third Amended Complaint ("TAC") alleges violation of the Equal Protection Clause of the Fourteenth Amendment and, arguably, violation of the First Amendment right against retaliation for protected speech, both in violation of 42 U.S.C. § 1983. Currently before the court is Defendants' motion for summary judgment of all claims alleged in the TAC. Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331. Venue is proper in this court.

## PROCEDURAL HISTORY

Plaintiff's original complaint was filed on June 26, 2013, and was dismissed with leave to amend by stipulation. The First Amended Complaint was filed on September 20, 2013. That complaint was dismissed upon Defendants' motion on February 12, 2014. Plaintiff's Second

Amended Complaint was filed on March 13, 2014.  Defendants' motion to dismiss Plaintiff's Second Amended Complaint was denied by the court on May 28, 2014.   Plaintiff moved to further amend the complaint to add Defendant Lindley on April 15, 2015.  The motion to amend was granted and the currently-operative TAC was filed on May 28, 2015.  Defendants' motion to dismiss the TAC and for sanctions was denied on August 6, 2015.  The instant motion for summary judgment was filed on November 4, 2015.  Plaintiff's opposition was filed on November 23, 2015, and Defendants' reply was filed on November 30, 2015.  The matter was taken under submission as of December 7, 2015.

## UNDISPUTED MATERIAL FACTS

The court notes that Plaintiff submitted a statement of non-dispute of Defendants' proffer of Undisputed Material Facts ("UMF's").  The following are facts are taken from Defendants' UMF's and placed in narrative format for purposes of brevity and readability.

In 1996 Plaintiff was convicted by plea of guilty of violation of California Penal Code section 242, a misdemeanor crime of domestic violence.  Federal law prohibits anyone convicted of a misdemeanor crime of domestic violence from owning or possessing a firearm.  Between his conviction in 1996 and January 2011, Plaintiff attempted to purchase a firearm on at least eight occasions.  On seven of the eight occasions on which Plaintiff attempted to purchase a firearm, he was denied purchase because of his battery conviction.  On each of those seven occasions, Plaintiff was issued a letter from the California Department of Justice informing him that he was not allowed to purchase or possess firearms.

At all times relevant to this action, Defendant Lindley was acting Chief and Chief of the State of California Bureau of Firearms (hereinafter, "Department").  At all times relevant to this action Defendant Granger was assigned to Department to act as legal counsel for the Department.  Her duties included defending Department against any lawsuits.  As part of her duties Granger reported to Lindley on the status of litigation against the Department.  Such reporting included the provision of any reports or summaries regarding law and motion and

discovery. Defendant Granger also provided as part of her job duties legal advice to agents when questions arose during the execution of a search warrant.

On February 15, 2011, Plaintiff filed a writ of mandamus in the Tulare County Superior Court challenging his status as being prohibited from the ownership or ability to purchase firearms. The State of California considers Plaintiff a person prohibited from owning or possessing firearms unless and until a court orders otherwise. Defendant Granger was assigned to handle the defense against Plaintiff's writ application on behalf of Department. As part of the litigation process, Granger took Plaintiff's deposition on July 25, 2011. During the deposition, Plaintiff admitted to possessing firearms. Granger provided information obtained from Plaintiff during his deposition to her client, Chief Lindley, including Plaintiff's admission of possession of firearms in violation of federal law.

When Chief Lindley learned that a prohibited person admitted possessing firearms, he notified the Special Agent in Charge John Marsh. Marsh is/was in charge of operation and enforcement for the Northern California area of Department. Department Supervisor Lee Carega requested that Special Agent Luke Powell investigate the matter. Powell searched a variety of law enforcement databases and obtained copies of the 1996 criminal matter, including the police report regarding Plaintiff's 1996 arrest. Agent Powell also obtained a part of the deposition taken by Granger in connection with the mandamus action in which Plaintiff admits ownership or possession of firearms. Agent Powell also obtained Plaintiff's application for purchase of firearms in January 2011. In the January application, Plaintiff failed to identify his residence and failed to state his prior criminal convictions as required by the application process. Agent Powell prepared the request for search warrant for Plaintiff's residence and vehicles.

Defendants assert, and Plaintiff does not dispute that Defendant Granger did not prepare or assist in preparing the request for search warrant, nor did Granger review the request, nor did Granger prepare or assist in the preparation of the search warrant. Similarly, Defendant Lindley did not prepare, assist in preparing or review the request for search warrant. The search warrant was issued by Tulare County Judge Hillman on October 4, 2011. The warrant was executed on

October 13, 2011.  Defendant Granger did not order or direct the search of Plaintiff's home or vehicles or the seizure of his firearms.

The search of Plaintiff's home and vehicles resulted in the seizure of more than 30 firearms and over 4,000 rounds of ammunition.  The search also produced a January 30, 2011, letter from Department to Plaintiff notifying him that he was prohibited from owning or purchasing firearms.  Agent Powell arrested Plaintiff following the search. Neither Granger nor Lindley directed agents of Department to arrest Plaintiff.  Defendants also assert, Plaintiff does not dispute, that at no time did either Defendant single out Plaintiff for disparate treatment.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial."  Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).  A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of production, the moving party must either produce evidence negating

an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

**DISCUSSION**

There are two features of this action that are both unusual and determinative of the outcome of Defendants' motion for summary judgment. First, the court notes that Plaintiff's opposition to Defendants' motion for summary judgment is premised primarily on the contention that Defendants have misconstrued the TAC to have alleged only a single claim for violation of the Equal Protection Clause of the Fourteenth Amendment on a class-of-one theory. Plaintiff's opposition asserts that the single claim for relief Plaintiff alleged in his TAC sets forth two theories of constitutional violation; violation of the Equal Protection Clause on a class-of-one theory *and* a claim for retaliation under the First Amendment. Plaintiff's opposition contends that Defendants failed to address the First Amendment retaliation claim and that the court should consequently deny summary judgment as to that claim.

The court finds that Plaintiff's argument regarding a First Amendment retaliation claim is a result of poor drafting of the complaint[1] at best, and borders on bad faith conduct at worst.

---

[1] Because each iteration of Plaintiff's complaint has worded the section setting forth the claim for relief using wording that is substantially similar to that used in the preceding iteration, the court generalizes its criticism of Plaintiff's complaint to include each iteration of it.

-6-

Plaintiff's TAC unequivocally alleges that "[Plaintiff] is a member of a class of one [or a few], treated differently than others without basis other than his exercise of constitutional right 'to petition the government for redress of grievances.'"  Doc. # 51 at 8:16-18.  While the TAC and previous iterations of the complaint have used the word "retaliation" to describe Defendants' motivation for subjecting Plaintiff to disparate treatment, the court and Defendants have consistently referred to the allegation set forth in Plaintiff's complaints as alleging only the equal protection claim.  See, e.g., Doc. # 23 at 4:20-21 (Defendants' reference to Plaintiff's claim in their motion for dismissal of the Second Amended Complaint), Doc. # 63 at 5:9-25 (court's analysis of claim in Plaintiff's TAC as being a claim for equal protection violation on a class-of-one theory).  Further, Plaintiff's own opposition to the motion to dismiss the first and second amended complaints focused in both instances on the viability of Plaintiffs' equal protection claim and mentions the term "retaliation" only in passing.  See Doc. # 14 at 2:1-4:8 (setting forth a section of argument titled "The factual allegations support an equal protection claim, a claim for violation of the right to be free from unreasonable search, seizure, and arrest, and a claim for retributive state conduct for having sought redress" but arguing in the text only that the equal protection claim was adequately stated).

In short, Plaintiff has kept his purported and ambiguously stated First Amendment claim obscured and has declined to clarify his intention to allege a first amendment claim in each instance when the issue would have been appropriate to raise.  Were it not for the fact that the substance of all of Plaintiff's claims undercut by his non-opposition to Defendants' proffer of Undisputed Material Facts as discussed below, the court would give serious consideration to striking the purported First Amendment claim for failure to provide adequate notice to the opposing party of the Plaintiff's theory or theories of recovery in violation of Rule 8 of the Federal Rules of Civil Procedure.  The court admonishes Plaintiff's attorney that in this court there is an expectation that each separate theory of relief will be alleged in a separate claim so that this sort of misunderstanding is avoided.

The second feature of Plaintiff's response to the motion for summary judgment that is determinative of its disposition is the fact that Plaintiff has submitted a statement of non-opposition to *any* of the proffered UMF's submitted by Defendants.  Foremost among these UMF's are the proffered facts that describe the administrative distance between Defendants and the decision to search Plaintiff's residence and to arrest Plaintiff for the unlawful possession of firearms.  In addition, Defendant's proffered UMF's state that the administrative procedure that Plaintiff alleged in his complaints describing the handling of firearms during the pendency of proceedings to determine the legal status of the person in possession of firearms simply does not exist.  At best, Plaintiff's complaints describes a procedure for allowing a party disputing his incapacity to own guns to retain ownership of then during the pendency of the court challenge that would have been a good idea in Plaintiff's estimation.  In terms of Plaintiff's equal protection claim, Defendants' proffered UMF's negate any alleged connection between Defendants and the decisions regarding the criminal investigation of Plaintiff, any connection between Defendants and Plaintiff's arrest and negates any allegation that Plaintiff was treated any differently than any other person similarly situated.  Fundamentally, Plaintiff has failed to carry his burden to show that there remains an issue of material fact as to whether other persons who suffer loss of rights to own firearms as a result of conviction of a misdemeanor crime of domestic violence and maintain ownership of their firearms while they challenge their legal status are treated any differently.  Defendants are therefore entitled to summary judgment as to Plaintiff's claim for violation of his equal protection rights on a class-of-one theory.

Were the court to accept Plaintiff's contention that he has also adequately alleged a claim for retaliation in violation of his First Amendment rights, Plaintiff's claim would fare no better. To show violation of the First Amendment right against retaliation for exercise of protected speech, a plaintiff must show (1) that the conduct or speech that was retaliated against was protected, (2) that the defendant took adverse action against the plaintiff, (3) that there is a causal connection between the protected conduct and the adverse action, (4) that the adverse action would chill or silence a person of ordinary firmness from future First Amendment activities, and

(5) that the adverse action did not advance any legitimate goals of law enforcement.  See <u>Watson v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (setting forth elements of First Amendment retaliation claim in context of prisoner case).  Defendants' proffer of UMF's negates allegations by Plaintiff that the named Defendants took, or were responsible for the decision of others, to take adverse action against Plaintiff.  Defendants' UMF's also negate Plaintiff's allegation that there was any causal connection between his filing of the mandamus action and the adverse action or actions taken by law enforcement officers.  And finally, Defendants' proffered UMF's negate any claim by Plaintiff that the actions that were taken against him by Department in carrying out the search and his arrest were unrelated to, or failed to advance, any legitimate law enforcement interest.

The court has examined Plaintiff's separate statement of disputed material facts, Document Number 74-2 and agrees with Defendants that the proffered facts are irrelevant to either establishing a factual basis for Plaintiff's claims or negating any of Defendants' proffered UMF's.

The court concludes from the foregoing that Defendants are entitled to summary judgment as to all claims alleged or purported to be alleged in Plaintiff's TAC.

THEREFORE, in accordance with the foregoing discussion, it is hereby ORDERED that Defendants' motion for summary judgment is GRANTED.  The Clerk of the Court shall enter judgment in favor of Defendants as to all claims alleged by Plaintiff.  The May 17, 2016, jury trial date and all other dates and orders relating to the trial are hereby VACATED.  The Clerk of the Court shall CLOSE the CASE.

IT IS SO ORDERED.

Dated:   December 31, 2015                    _____
                                              SENIOR DISTRICT JUDGE